# Exhibit F



## ALTA COMMITMENT FOR TITLE INSURANCE
### Issued by
### FIDELITY NATIONAL TITLE INSURANCE COMPANY

### NOTICE

**IMPORTANT-READ CAREFULLY:** THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE. THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

### COMMITMENT TO ISSUE POLICY

Subject to the Notice; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions; and the Commitment Conditions, **Fidelity National Title Insurance Company, a Florida corporation** (the "Company"), commits to issue the Policy according to the terms and provisions of this Commitment. This Commitment is effective as of the Commitment Date shown in Schedule A for each Policy described in Schedule A, only when the Company has entered in Schedule A both the specified dollar amount as the Proposed Amount of Insuranceand the name of the Proposed Insured.

If all of the Schedule B, Part I-Requirements have not been met within 90 Days after the Commitment Date, this Commitment terminates and the Company's liability and obligation end.

1. DEFINITIONS
    a. "Discriminatory Covenant": Any covenant, condition, restriction, or limitation that is unenforceable under applicable law because it illegally discriminates against a class of individuals based on personal characteristics such as race, color, religion, sex, sexual orientation, gender identity, familial status, disability, national origin, or other legally protected class.
    b. "Knowledge" or "Known": Actual knowledge or actual notice, but not constructive notice imparted by the Public Records.
    c. "Land": The land described in Item 5 of Schedule A and improvements located on that land that by State law constitute real property. The term "Land" does not include any property beyond that described in Schedule A, nor any right, title, interest, estate, or easement in any abutting street, road, avenue, alley, lane, right-of-way, body of water, or waterway, but does

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by **FIDELITY NATIONAL TITLE INSURANCE COMPANY**. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

27C165B  **ALTA Commitment for Title Insurance 7-1-2021**

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



Commitment No. 20240165CTN

      not modify or limit the extent that a right of access to and from the Land is to be insured by the Policy.

d. "Mortgage": A mortgage, deed of trust, trust deed, security deed, or other real property security instrument, including one evidenced by electronic means authorized by law.

e. "Policy": Each contract of title insurance, in a form adopted by the American Land Title Association, issued or to be issued by the Company pursuant to this Commitment.

f. "Proposed Amount of Insurance": Each dollar amount specified in Schedule A as the Proposed Amount of Insurance of each Policy to be issued pursuant to this Commitment.

g. "Proposed Insured": Each person identified in Schedule A as the Proposed Insured of each Policy to be issued pursuant to this Commitment.

h. "Public Records": The recording or filing system established under State statutes in effect at the Commitment Date under which a document must be recorded or filed to impart constructive notice of matters relating to the Title to a purchaser for value without Knowledge. The term "Public Records" does not include any other recording or filing system, including any pertaining to environmental remediation or protection, planning, permitting, zoning, licensing, building, health, public safety, or national security matters.

i. "State": The state or commonwealth of the United States within whose exterior boundaries the Land is located. The term "State" also includes the District of Columbia, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, and Guam.

j. "Title": The estate or interest in the Land identified in Item 3 of Schedule A.

2. If all of the Schedule B, Part I-Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and the Company's liability and obligation end.

3. The Company's liability and obligation is limited by and this Commitment is not valid without:
   a. the Notice;
   b. the Commitment to Issue Policy;
   c. the Commitment Conditions;
   d. Schedule A;
   e. Schedule B, Part I-Requirements;
   f. Schedule B, Part II-Exceptions.

4. COMPANY'S RIGHT TO AMEND
   The Company may amend this Commitment at any time. If the Company amends this Commitment to add a defect, lien, encumbrance, adverse claim, or other matter recorded in the Public Records prior to the Commitment Date, any liability of the Company is limited by Commitment Condition 5. The Company is not liable for any other amendment to this Commitment.

5. LIMITATIONS OF LIABILITY
   a. The Company's liability under Commitment Condition 4 is limited to the Proposed Insured's actual expense incurred in the interval between the Company's delivery to the Proposed Insured of the Commitment and the delivery of the amended Commitment, resulting from the Proposed Insured's good faith reliance to:
   i. comply with the Schedule B, Part I-Requirements;
   ii. eliminate, with the Company's written consent, any Schedule B, Part II-Exceptions; or
   iii. acquire the Title or create the Mortgage covered by this Commitment.
   b. The Company is not liable under Commitment Condition 5.a. if the Proposed Insured requested the amendment or had Knowledge of the matter and did not notify the Company about it in writing.

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by* **FIDELITY NATIONAL TITLE INSURANCE COMPANY** *This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

27C165B                                        **ALTA Commitment for Title Insurance 7-1-2021**

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

 

Commitment No. 20240165CTN

c. The Company is only liable under Commitment Condition 4 if the Proposed Insured would not have incurred the expense had the Commitment included the added matter when the Commitment was first delivered to the Proposed Insured.

d. The Company's liability does not exceed the lesser of the Proposed Insured's actual expense incurred in good faith and described in Commitment Condition 5.a. or the Proposed Amount of Insurance.

e. The Company is not liable for the content of the Transaction Identification Data, if any.

f. The Company is not obligated to issue the Policy referred to in this Commitment unless all of the Schedule B, Part I-Requirements have been met to the satisfaction of the Company.

g. The Company's liability is further limited by the terms and provisions of the Policy to be issued to the Proposed Insured.

6. LIABILITY OF THE COMPANY MUST BE BASED ON THIS COMMITMENT; CHOICE OF LAW AND CHOICE OF FORUM

a. Only a Proposed Insured identified in Schedule A, and no other person, may make a claim under this Commitment.

b. Any claim must be based in contract under the State law of the State where the Land is located and is restricted to the terms and provisions of this Commitment. Any litigation or other proceeding brought by the Proposed Insured against the Company must be filed only in a State or federal court having jurisdiction.

c. This Commitment, as last revised, is the exclusive and entire agreement between the parties with respect to the subject matter of this Commitment and supersedes all prior commitment negotiations, representations, and proposals of any kind, whether written or oral, express or implied, relating to the subject matter of this Commitment.

d. The deletion or modification of any Schedule B, Part II-Exception does not constitute an agreement or obligation to provide coverage beyond the terms and provisions of this Commitment or the Policy.

e. Any amendment or endorsement to this Commitment must be in writing.

f. When the Policy is issued, all liability and obligation under this Commitment will end and the Company's only liability will be under the Policy.

7. IF THIS COMMITMENT IS ISSUED BY AN ISSUING AGENT
The issuing agent is the Company's agent only for the limited purpose of issuing title insurance commitments and policies. The issuing agent is not the Company's agent for closing, settlement, escrow, or any other purpose.

8. PRO-FORMA POLICY
The Company may provide, at the request of a Proposed Insured, a pro-forma policy illustrating the coverage that the Company may provide. A pro-forma policy neither reflects the status of Title at the time that the pro-forma policy is delivered to a Proposed Insured, nor is it a commitment to insure.

9. CLAIMS PROCEDURES
This Commitment incorporates by reference all Conditions for making a claim in the Policy to be issued to the Proposed Insured. Commitment Condition 9 does not modify the limitations of liability in Commitment Conditions 5 and 6.

10. CLASS ACTION
ALL CLAIMS AND DISPUTES ARISING OUT OF OR RELATING TO THIS COMMITMENT, INCLUDING ANY SERVICE OR OTHER MATTER IN CONNECTION WITH ISSUING THIS COMMITMENT, ANY BREACH OF A COMMITMENT PROVISION, OR ANY OTHER CLAIM OR DISPUTE ARISING OUT OF OR RELATING TO THE TRANSACTION GIVING RISE TO THIS COMMITMENT, MUST BE BROUGHT IN AN INDIVIDUAL CAPACITY. NO PARTY MAY SERVE AS PLAINTIFF, CLASS MEMBER, OR PARTICIPANT IN ANY CLASS OR REPRESENTATIVE

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by* **FIDELITY NATIONAL TITLE INSURANCE COMPANY**
*This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

27C165B                                                  **ALTA Commitment for Title Insurance 7-1-2021**

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



Commitment No. 20240165CTN

PROCEEDING. ANY POLICY ISSUED PURSUANT TO THIS COMMITMENT WILL CONTAIN A CLASS ACTION CONDITION.

11. ARBITRATION

The Policy contains an arbitration clause. All arbitrable matters when the Proposed Amount of Insurance is $2,000,000 or less may be arbitrated at the election of either the Company or the Proposed Insured as the exclusive remedy of the parties. A Proposed Insured may review a copy of the arbitration rules at http://www.alta.org/arbitration.

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by* **FIDELITY NATIONAL TITLE INSURANCE COMPANY** *This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

27C165B         **ALTA Commitment for Title Insurance 7-1-2021**

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



Commitment No. 20240165CTN

*Transaction Identification Data, which the Company assumes no liability as set forth in Commitment Condition 5.e.:*

Issuing Agent: N/A
Issuing Office: Fidelity National Title Insurance Company
Issuing Office's ALTA® Registry ID: 1159766
Loan ID Number:
Commitment Number: 20240165CTN
Issuing Office File Number: 20240165CTN
Property Address:     730 Middle Tennessee Blvd, Murfreesboro, TN 37129

Revision Number:  Rev2

## SCHEDULE A

1. **Commitment Date:** May 09, 2024, at 08:00 AM

2. **Policy or Policies to be issued:**

   **2021 ALTA® Owner's Policy**

   **Proposed Insured:**      S. Bennett Maxwell

   **Proposed Amount of Insurance:**  $3,900,000.00
   The estate or interest to be insured: Fee Simple

3. **The estate or interest in the land at the Commitment date is:**

   Fee Simple

4. **The Title is, at the Commitment Date, vested in:**

   Ideal Murfreesboro, LLC, a Wyoming limited liability company

5. **The land referred is described as follows:**

   **See Exhibit "A" attached hereto and made part hereof.**

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by* **FIDELITY NATIONAL TITLE INSURANCE COMPANY**
*This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

27C165B      **ALTA Commitment for Title Insurance 7-1-2021**

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



## SCHEDULE A (Continued)

**Commitment No.:** 20240165CTN

**FIDELITY NATIONAL TITLE INSURANCE COMPANY**

By: _____

                          Authorized Signatory

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by* **FIDELITY NATIONAL TITLE INSURANCE COMPANY**
*This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

27C165B                                          **ALTA Commitment for Title Insurance 7-1-2021**

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



Commitment No. 20240165CTN

**SCHEDULE B, PART I**
**Requirements**

**Commitment No.:** 20240165CTN

All of the following Requirements must be met:

1.     The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

2.     Pay the agreed amount for the estate or interest to be insured.

3.     Pay the premiums, fees, and charges for the Policy to the Company.

4.     Pay all taxes, charges, assessments, levied and assessed against subject premises, which are due and payable.

5.     Satisfactory evidence should be had that improvements and/or repairs or alterations thereto are completed; that contractor, subcontractors, labor and materialmen are all paid.

6.     Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

    Deed from Ideal Murfreesboro, LLC, a Wyoming limited liability company, to S. Bennett Maxwell describing the property set out in Schedule A.

7.     Furnish proof of payment of taxes as follows, or cause the same to be satisfied at closing:

    Taxes for the year 2023: Map/Parcel 102-045.13 SI009,
    Rutherford County: $1,287.00 PAID on February 28, 2024.
    City of Murfreesboro: $653.00 PAID on December 29, 2023.

    Taxes for the year 2023: Map/Parcel 102-045.13 SI010,
    Rutherford County: $6,198.00 PAID on February 28, 2024.
    City of Murfreesboro: $3,147.00 PAID on December 29, 2023.

    Taxes for the year 2023: Map/Parcel 102-045.13 SI012,
    Rutherford County: $3,034.00 PAID on February 28, 2024.
    City of Murfreesboro: $1,541.00 PAID on December 29, 2023.

    Taxes for the year 2023: Map/Parcel 102-045.13 SI013,
    Rutherford County: $2,398.00 PAID on February 28, 2024.
    City of Murfreesboro: $1,217.00 PAID on December 29, 2023.

    Taxes for the year 2023: Map/Parcel 102-045.13 SI014,
    Rutherford County: $2,523.00 PAID on February 28, 2024.
    City of Murfreesboro: $1,281.00 PAID on December 29, 2023.

---

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by* **FIDELITY NATIONAL TITLE INSURANCE COMPANY**
*This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

27C165B                                   **ALTA Commitment for Title Insurance 7-1-2021**

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



### SCHEDULE B, PART I
### Requirements (Continued)

**Commitment No.:** 20240165CTN

       Taxes for the year 2023: Map/Parcel 102-045.13 SI015,
       Rutherford County: $2,604.00 PAID on February 28, 2024.
       City of Murfreesboro: $1,322.00 PAID on December 29, 2023.

       Taxes for the year 2023: Map/Parcel 102-045.13 SI018,
       Rutherford County: $2,655.00 PAID on February 28, 2024.
       City of Murfreesboro: $1,348.00 PAID on December 29, 2023.

       Taxes for the year 2023: Map/Parcel 102-045.13 SI019,
       Rutherford County: $2,376.00 PAID on February 28, 2024.
       City of Murfreesboro: $1,206.00 PAID on December 29, 2023.

       Taxes for the year 2023: Map/Parcel 102-045.13 SI020
       Rutherford County: $2,302.00 PAID on February 28, 2024.
       City of Murfreesboro: $1,169.00 PAID on December 29, 2023.

8.      Release, satisfaction or termination of Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement by Ideal Murfreesboro, LLC, a Wyoming limited liability company, trustor, to Fidelity National Title Insurance Company, trustee, for the benefit of REIT I LLC, beneficiary, to secure a note in the original amount of $2,562,000.00 secured thereby, dated March 9, 2022, and recorded on March 22, 2022, of record in Book 2222, Page 1711, Register's Office for Rutherford County, Tennessee.

       NOTE: An Appointment of Substitute Trustee has been filed related to the foregoing security instrument at Book 2426, Page 2696, in the Register's Office for Rutherford County, Tennessee.

9.      Release, satisfaction or termination of Deed of Trust, Assignment of Leases and Rents, and Security Agreement by Ideal Murfreesboro, LLC, a Wyoming limited liability company, trustor, to Fidelity National Title Insurance Company, trustee, for the benefit of First Fed Bank, beneficiary, to secure a note in the original amount of $1,793,074.75 secured thereby, dated March 28, 2023, and recorded on April 13, 2023, of record in Book 2333, Page 2006, Register's Office for Rutherford County, Tennessee.

10.     We must be furnished with a copy of the Articles of Organization and Operating Agreement for Ideal Murfreesboro, LLC, a Wyoming limited liability company, all amendments thereto, and proper resolutions authorizing the proposed transaction and appointing signatories authorized to legally bind the company. Any conveyance or encumbrance must be made in compliance with the terms of said instruments.

11.     We must be furnished with a Certificate of Existence issued by the office of the Secretary of State of the state of formation of Ideal Murfreesboro, LLC, a Wyoming limited liability company.

12.     If construction, demolition, or the delivery of materials therefore has occurred on the land within the last 120 days, we require satisfactory compliance with the Tennessee Notice of Completion statute, including the recordation of a proper Notice of Completion, notice to appropriate parties, the running of the applicable claim period, and the satisfactory resolution of any claims submitted in

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by* **FIDELITY NATIONAL TITLE INSURANCE COMPANY**
*This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

27C165B                                  **ALTA Commitment for Title Insurance 7-1-2021**

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



**SCHEDULE B, PART I**
**Requirements (Continued)**

**Commitment No.:** 20240165CTN

accordance therewith, prior to closing.

13.     We must be furnished with a standard Company Owner's Affidavit. We reserve the right to make additional requirements and exceptions upon review of said Affidavit.

14.     In the event that the subject property is purchased in association with a foreclosure sale, the Company must be furnished satisfactory proof that the foreclosure sale was held in accordance with the terms and provisions of the Deed of Trust recorded in Book 2222, Page 1711, said Register's Office, and in accordance with T.C.A. Section 35-5-101 et. seq., including but not limited to provision of proper and statutory notice of the foreclosure to junior lienholders, including the Deed of Trust of record in Book 2333, Page 2006, said Register's Office.

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by* **FIDELITY NATIONAL TITLE INSURANCE COMPANY**
*This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

27C165B                                                    **ALTA Commitment for Title Insurance 7-1-2021**

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



Commitment No. 20240165CTN

**SCHEDULE B, PART II**
**Exceptions**

Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This Commitment and the Policy treat any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document will be excepted from coverage

The Policy will not insure against loss or damage resulting from the terms and conditions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1. Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attaches, or is disclosed between the Commitment Date and the date on which all of the Schedule B, Part I-Requirements are met.

2. Rights or claims of parties in possession not shown by the public records.

3. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land.

4. Easements, or claims of easements, not shown by the public records.

5. Any lien, or right to a lien, for services, labor, or material heretofore or hereafter furnished, imposed by law and not shown by the public records.

6. Taxes or special assessments which are not shown as existing liens by the public records.

7. If improvements are completed after January 1 of any year, and the law, pursuant to TCA 67-5-509 and TCA 67-5-603, requires supplemental assessment for the year in which improvements are completed, the company assumes no liability for taxes assessed by correction or supplemental assessment.

8. Intentionally deleted.

9. Taxes for the year 2024, a lien not yet due and payable.

10. Subject to all matters shown on the Plan of record in Plat Book 29, Page 90, and Surveyors Certificate of Correction in Record Book 948, Page 1308, Register's Office for Rutherford County, Tennessee.

11. Subject to all matters shown on the Plan of record in Plat Book 27, Page 162, and Surveyor's Certificate of Correction in Record Book 398, Page 134 and Record Book 442, Page 2294, Register's Office for Rutherford County, Tennessee.

12. Subject to all matters shown on the Plan of record in Plat Book 27, Page 54, Register's Office for Rutherford County, Tennessee.

13. Terms, provisions, covenants, conditions, restrictions, easements, charges, assessments and liens provided in the Declaration of Easements and Restrictive Covenants of record in Book 215, Page

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by **FIDELITY NATIONAL TITLE INSURANCE COMPANY** This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

27C165B                                    **ALTA Commitment for Title Insurance 7-1-2021**

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



**SCHEDULE B, PART II**
**Exceptions (Continued)**

**Commitment No.:** 20240165CTN

1847, Register's Office for Rutherford County, Tennessee, but omitting any covenant, condition or restriction, if any, based on race, color, religion, sex, handicap, familial status or national origin unless and only to the extent that the covenant, condition or restriction (a) is exempt under Title 42 of the United States Code, or (b) relates to handicap but does not discriminate against handicapped persons.

14. Restrictions of record in Book 215, Page 1843, in the Register's Office for Rutherford County, Tennessee.

15. Master Deed for Samsonite Business Center, Phase I, Condominium of record in Book 398, Page 136, in the Register's Office for Rutherford County, Tennessee.

16. Inspection and Maintenance Agreement for Private Stormwater Management Facilities of record in Book 1833, Page 2353 and Record Book 2065, Page 2640, in the Register's Office for Rutherford County, Tennessee.

17. Sewer Line Easement of record in Book 157, Page 523, in the Register's Office for Rutherford County, Tennessee.

18. Waterline Easement of record in Book 174, Page 1284, in the Register's Office for Rutherford County, Tennessee.

19. Release and Indemnity Agreement of record in Book 2062, Page 2616, in the Register's Office for Rutherford County, Tennessee.

20. Subject to rights of others in and to the common areas and/or elements.

21. Easement for party walls and interests of adjoining landowners in appurtenant improvements.

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by* **FIDELITY NATIONAL TITLE INSURANCE COMPANY**
*This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

27C165B | **ALTA Commitment for Title Insurance 7-1-2021**

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.


**EXHIBIT A**

Land in Rutherford County, Tennessee, being Unit Nos. 9, 10, 12, 13, 14, 15, 18, 19 and 20 of Revision Plat of Middle Tennessee Business Center Condominiums, Phase I, of record in Plat Book 29, Page 90, and as corrected by Surveyors Certificate of Correction, Revised Plat, Middle Tennessee Business Center Condominiums, Phase I, in record Book 948, Page 1308, in the Register's Office for Rutherford County, Tennessee, to which Plan reference is hereby made for a more complete description of the property.

Being the same property conveyed to Ideal Murfreesboro, LLC, a Wyoming limited liability company, by the Special Warranty Deed of record in Record Book 2222, Page 1340, and the Special Warranty Deed of record in Record Book 2222, Page 1706, in the Register's Office for Rutherford County, Tennessee.

 

# WIRE FRAUD ALERT
## IMPORTANT! YOUR FUNDS MAY BE AT RISK

*This notice is not intended to provide legal or professional advice. If you have any questions, please consult with a lawyer.*

Realtors®, Real Estate Brokers, Closing Attorneys, Buyers and Sellers are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification.

A fraudster will hack into a participant's email account to obtain information about upcoming real estate transactions. After monitoring the account to determine the likely timing of a closing, the fraudster will send an email to the Buyer purporting to be the escrow agent or another party to the transaction. The fraudulent email will contain new wiring instructions or routing information, and will request that the Buyer send funds to a fraudulent account.

<div style="border: 2px solid red; color: red;">

**PLEASE BE ADVISED THAT WE ONLY PROVIDE WIRE INSTRUCTIONS THROUGH VERBAL VERIFICATION. If funds are to be wired in conjunction with this transaction, call us at 615-224-7400 to obtain our wire information. If you receive another email or unsolicited call purporting to alter these instructions, please immediately call us at 615-224-7400.**

</div>

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

 **NEVER RELY** on emails or other communications purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the courses of a transaction.

 **DO NOT FORWARD** wire instructions to other parties without first verbally verifying the instructions from the sending party.

 **ALWAYS VERIFY WIRE INSTRUCTIONS, specifically the ABA routing number and account number, by calling the party who is receiving the funds. DO NOT RELY on other parties calling you.**

**Obtain the number of your Realtor®, Real Estate Broker and your escrow officer as soon as an escrow account is opened.**

DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

*Federal Bureau of Investigation: http://www.fbi.gov*      *Internet Crime Complaint Center: http://www.ic3.gov*

### ACKNOWLEDGEMENT OF RECEIPT
Your signature below acknowledges receipt of this Wire Fraud Alert.

**Buyer 1**                                                            **Buyer 2**

_____                    _____
**Signature**                                                          **Signature**

S. Bennett Maxwell
_____                    _____
**Printed Name**                                                    **Printed name**

_____                    _____
**Address**                                                            **Address**

_____                    _____
**Date**              **Phone Number**                  **Date**              **Phone Number**

<div align="center">

**FIDELITY NATIONAL FINANCIAL**
**PRIVACY NOTICE**

</div>

Effective December 1, 2023

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy. This Privacy Notice explains how we collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of that information.

A limited number of FNF subsidiaries have their own privacy notices. If a subsidiary has its own privacy notice, the privacy notice will be available on the subsidiary's website and this Privacy Notice does not apply.

<u>**Collection of Personal Information**</u>

FNF may collect the following categories of Personal Information:
- contact information (*e.g.*, name, address, phone number, email address);
- demographic information (*e.g.*, date of birth, gender, marital status);
- identity information (*e.g.* Social Security Number, driver's license, passport, or other government ID number);
- financial account information (*e.g.* loan or bank account information); and
- other personal information necessary to provide products or services to you.

We may collect Personal Information about you from:
- information we receive from you or your agent;
- information about your transactions with FNF, our affiliates, or others; and
- information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

<u>**Collection of Browsing Information**</u>

FNF automatically collects the following types of Browsing Information when you access an FNF website, online service, or application (each an "FNF Website") from your Internet browser, computer, and/or device:
- Internet Protocol (IP) address and operating system;
- browser version, language, and type;
- domain name system requests; and
- browsing history on the FNF Website, such as date and time of your visit to the FNF Website and visits to the pages within the FNF Website.

Like most websites, our servers automatically log each visitor to the FNF Website and may collect the Browsing Information described above. We use Browsing Information for system administration, troubleshooting, fraud investigation, and to improve our websites. Browsing Information generally does not reveal anything personal about you, though if you have created a user account for an FNF Website and are logged into that account, the FNF Website may be able to link certain browsing activity to your user account.

<u>**Other Online Specifics**</u>

<u>Cookies</u>. When you visit an FNF Website, a "cookie" may be sent to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. Information gathered using cookies helps us improve your user experience. For example, a cookie can help the website load properly or can customize the display page based on your browser type and user preferences. You can choose whether or not to accept cookies by changing your Internet browser settings. Be aware that doing so may impair or limit some functionality of the FNF Website.

<u>Web Beacons</u>. We use web beacons to determine when and how many times a page has been viewed. This information is used to improve our websites.

<u>Do Not Track</u>. Currently our FNF Websites do not respond to "Do Not Track" features enabled through your browser.

Effective December 1, 2023.                    Copyright © 2023. Fidelity National Financial, Inc. All Rights Reserved.

<u>Links to Other Sites</u>. FNF Websites may contain links to unaffiliated third-party websites. FNF is not responsible for the privacy practices or content of those websites. We recommend that you read the privacy policy of every website you visit.

### Use of Personal Information

FNF uses Personal Information for these main purposes:

- To provide products and services to you or in connection with a transaction involving you.
- To improve our products and services.
- To communicate with you about our, our affiliates', and others' products and services, jointly or independently.
- To provide reviews and testimonials about our services, with your consent.

### When Information Is Disclosed

We may disclose your Personal Information and Browsing Information in the following circumstances:

- to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure ;
- to affiliated or nonaffiliated service providers who provide or perform services or functions on our behalf and who agree to use the information only to provide such services or functions;
- to affiliated or nonaffiliated third parties with whom we perform joint marketing, pursuant to an agreement with them to jointly market financial products or services to you;
- to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order; or
- in the good-faith belief that such disclosure is necessary to comply with legal process or applicable laws, or to protect the rights, property, or safety of FNF, its customers, or the public.

The law does not require your prior authorization and does not allow you to restrict the disclosures described above. Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure. We do not otherwise share your Personal Information or Browsing Information with nonaffiliated third parties, except as required or permitted by law.

We reserve the right to transfer your Personal Information, Browsing Information, and any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of bankruptcy, reorganization, insolvency, receivership, or an assignment for the benefit of creditors. By submitting Personal Information and/or Browsing Information to FNF, you expressly agree and consent to the use and/or transfer of the foregoing information in connection with any of the above described proceedings.

### Security of Your Information

We maintain physical, electronic, and procedural safeguards to protect your Personal Information.

### Choices With Your Information

Whether you submit Personal Information or Browsing Information to FNF is entirely up to you. If you decide not to submit Personal Information or Browsing Information, FNF may not be able to provide certain services or products to you.

For California Residents: We will not share your Personal Information or Browsing Information with nonaffiliated third parties, except as permitted by California law. For additional information about your California privacy rights, please visit the "California Privacy" link on our website (https://fnf.com/pages/californiaprivacy.aspx) or call (888) 413-1748.

For Connecticut Residents: For additional information about your Connecticut consumer privacy rights, or to make a consumer privacy request, or to appeal a previous privacy request, please email privacy@fnf.com or call (888) 714-2710.

For Colorado Residents: For additional information about your Colorado consumer privacy rights, or to make a consumer privacy request, or appeal a previous privacy request, please email privacy@fnf.com or call (888) 714-2710.

For Nevada Residents: We are providing this notice pursuant to state law. You may be placed on our internal Do Not Call List by calling FNF Privacy at (888) 714-2710 or by contacting us via the information set forth at the end of this Privacy Notice. For further information concerning Nevada's telephone solicitation law, you may contact: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number: (702) 486-3132; email: aginquiries@ag.state.nv.us.

For Oregon Residents:  We will not share your Personal Information or Browsing Information with nonaffiliated third parties for marketing purposes, except after you have been informed by us of such sharing and had an opportunity to indicate that you do not want a disclosure made for marketing purposes.

For Utah Residents:  For additional information about your Utah consumer privacy rights, or to make a consumer privacy request, please call (888) 714-2710.

For Vermont Residents: We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.

For Virginia Residents: For additional information about your Virginia consumer privacy rights, please email privacy@fnf.com or call (888) 714-2710.

## Information From Children
The FNF Websites are not intended or designed to attract persons under the age of eighteen (18).We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian.

## International Users
FNF's headquarters is located within the United States. If you reside outside the United States and choose to provide Personal Information or Browsing Information to us, please note that we may transfer that information outside of your country of residence. By providing FNF with your Personal Information and/or Browsing Information, you consent to our collection, transfer, and use of such information in accordance with this Privacy Notice.

## FNF Website Services for Mortgage Loans
Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites"). The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice. The sections of this Privacy Notice titled When Information is Disclosed, Choices with Your Information, and Accessing and Correcting Information do not apply to the Service Websites. The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Personal Information. FNF does not share Personal Information collected through the Service Websites, except as required or authorized by contract with the mortgage loan servicer or lender, or as required by law or in the good-faith belief that such disclosure is necessary: to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

## Your Consent To This Privacy Notice; Notice Changes
By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of the information in accordance with this Privacy Notice. We may change this Privacy Notice at any time. The Privacy Notice's effective date will show the last date changes were made. If you provide information to us following any change of the Privacy Notice, that signifies your assent to and acceptance of the changes to the Privacy Notice.

## Accessing and Correcting Information; Contact Us
If you have questions or would like to correct your Personal Information, visit FNF's Privacy Inquiry Website or contact us by phone at (888) 714-2710, by email at privacy@fnf.com, or by mail to:

<div align="center">

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Attn: Chief Privacy Officer

</div>

# Exhibit G

Heather Dawbarn, Register
Rutherford County Tennessee
Rec #: 1212035     Instrument #: 2491219
Rec'd:    160.00           Recorded
State:   2059.74     4/13/2023 at 8:01 AM
Clerk:     1.00         in Record Book
Other:     2.00           2333
Total:   2222.74
                    Pages 2006-2037

**This Instrument was Prepared By**
**After Recording Return To:**

Gregory R. Fox
Lane Powell PC
1420 Fifth Avenue, Suite 4200
Seattle, WA 98101

MAXIMUM PRINCIPAL INDEBTEDNESS FOR TENNESSEE RECORDING TAX
PURPOSES IS $1,793,074.75

---

**Document Title(s)** (or transactions contained therein): (all areas applicable to your document must be filled in)

Deed of Trust, Assignment of Leases and Rents, and Security Agreement

---

**Reference Number(s) of Documents assigned or released:**

Additional reference #'s on page _____ of document

---

**Grantor(s)** (Last name first, then first name and initials)
1.   Ideal Murfreesboro, LLC
2.

☐ Additional names on page _____ of document

---

**Grantee(s)** (Last name first, then first name and initials)
1.   First Fed Bank, Beneficiary
2.   Fidelity National Title Insurance Company, Trustee

☐ Additional names on page _____ of document

---

**Legal Description** (abbreviated: i.e., lot, block, plat or section, township, range)


☒ Additional legal is on page A-1 of document

---

**Assessor's Property Tax Parcel/Account Number**
102 045.13 SI009; 102 045.13 SI010; 102 045.13 SI012; 102 045.13 SI013; 102 045.13 SI014; 102 045.13
SI015; 102 045.13 SI018; 102 045.13 SI019; 102 045.13 SI020

---

PURSUANT TO TENNESSEE CODE ANNOTATED ("*T.C.A.*") § 47-9-502, NOTICE IS HEREBY
GIVEN THAT THIS DEED OF TRUST AND SECURITY AGREEMENT IS ALSO A FIXTURE FILING
IN ACCORDANCE WITH T.C.A. § 47-9-334 AND T.C.A. § 47-9-502(c) AND COVERS GOODS WHICH
ARE OR ARE TO BECOME FIXTURES AND THIS INSTRUMENT SHALL BE FILED IN THE REAL
ESTATE RECORDS OF THE REGISTER'S OFFICE OF RUTHERFORD COUNTY, TENNESSEE. THE

1

134777.0001/9294714.3 730 Middle Tennessee Blvd. Murfreesboro, TN

**This Instrument was Prepared By**
**After Recording Return To:**

Gregory R. Fox
Lane Powell PC
1420 Fifth Avenue, Suite 4200
Seattle, WA 98101

---

DEBTOR (AS "GRANTOR" HEREIN) IS THE RECORD OWNER OF THE LAND. THE NAME AND ADDRESS OF THE DEBTOR, THE TRUSTEE AND THE SECURED PARTY (AS "BENEFICIARY" HEREIN) ARE AS SET FORTH IN THE FIRST PARAGRAPH HEREIN.

---

PURSUANT TO TENNESSEE CODE ANNOTATED § 47-28-104(b), NOTICE IS HEREBY GIVEN THAT THIS DEED OF TRUST AND SECURITY AGREEMENT SECURES OBLIGATORY ADVANCES AND IS FOR COMMERCIAL PURPOSES. THIS INSTRUMENT SECURES NOT ONLY EXISTING INDEBTEDNESS OR ADVANCES MADE CONTEMPORANEOUSLY WITH THE EXECUTION HEREOF, BUT ALSO FUTURE ADVANCES, WHETHER SUCH ADVANCES ARE OBLIGATORY OR OPTIONAL, OR BOTH, AND WHETHER MADE UNDER A REVOLVING CREDIT AGREEMENT OR OTHERWISE, TO THE SAME EXTENT AS IF SUCH FUTURE ADVANCES WERE MADE CONTEMPORANEOUSLY WITH THE EXECUTION OF THIS INSTRUMENT, EVEN THOUGH NO ADVANCE IS MADE AT THE TIME OF THE EXECUTION HEREOF AND EVEN THOUGH NO INDEBTEDNESS IS OUTSTANDING AT THE TIME ANY ADVANCE IS MADE, AS PROVIDED IN T.C.A. § 47-28-102. NOTWITHSTANDING THE REDUCTION OF THE AMOUNTS SECURED HEREBY AT ANY TIME TO ZERO, THIS INSTRUMENT SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL SUCH TIME AS RELEASE OR SATISFACTION HEREOF IS FILED OR RECORDED BY BENEFICIARY.

134777.0001/9294714.3 730 Middle Tennessee Blvd. Murfreesboro, TN

24-01421-FPC11    Doc 70-2    Filed 09/19/24    Entered 09/19/24 12:06:52    Pg 20 of 24

Record Book 2333 Page 2007

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, AND SECURITY AGREEMENT

THIS DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, AND SECURITY AGREEMENT (this "***Deed of Trust***") is made as of March 28, 2023, by and among IDEAL MURFREESBORO, LLC, a Wyoming limited liability company, as grantor ("***Grantor***"), whose address is 2732 Grand Ave., Ste. 122, Everett, WA 98201; FIDELITY NATIONAL TITLE INSURANCE COMPANY., as trustee ("***Trustee***"), whose address is 6840 Carothers Parkway, Suite 200, Franklin, TN 37067; and FIRST FED BANK, a Washington bank corporation, as beneficiary ("***Beneficiary***"), whose address is 105 W. 8th Street, P.O. Box 351, Port Angeles, WA 98362.

Grantor represents, warrants, covenants and agrees as follows:

1. <u>Definitions</u>. As used in this instrument the following terms shall mean:

    1.1. "***Attorneys' Fees***," "***Attorneys' Fees and Costs***," "attorneys' fees" and "attorneys' fees and costs" means the fees and expenses of counsel to the Beneficiary or Trustee, which may include, without limitation, printing, copying, duplicating and other expenses, air freight/courier/messenger charges, and fees billed for paralegals, librarians and others not admitted to the bar but performing services under the supervision of an attorney. The terms "attorneys' fees" or "attorneys' fees and costs" shall also include, without limitation, all such reasonable fees and expenses incurred with respect to any default, modification, workout, enforcement action, appeals, arbitrations, bankruptcy proceedings and any post-judgment proceedings to collect any judgment, and whether or not any action or proceeding is brought with respect to the matter for which such fees and expenses were incurred. The provisions allowing for the recovery of post-judgment fees, costs and expenses are separate and several and shall survive the merger of this Deed of Trust into any judgment.

    1.2. "***Collateral***" shall mean the collateral identified in Paragraph 2 hereof.

    1.3. "***Credit Documents***" shall mean the x0613 Note, x0678 Note, x0759 Note, x0858 Note, and WSM Agreement, as amended from time to time, and any other documents, instruments, amendments, modifications, and agreements executed in connection therewith or otherwise related thereto; provided, however, that this Deed of Trust shall not secure any environmental indemnity or guaranty executed in connection with the obligations secured hereby.

    1.4. "***Obligations***" shall mean the indebtedness and obligations identified in Paragraph 3 hereof.

    1.5. "***Obligor***" or "***Obligors***" shall mean Grantor, Creative, Ideal Property Investments, LLC, 8825 and WSM, individually and collectively, each as defined in Paragraph 3 hereof.

3

1.6. "*Property*" shall mean the Land and any buildings, structures and/or improvements now or hereafter existing thereon.

2. Collateral. Grantor hereby irrevocably grants, bargains, sells and conveys to Trustee in trust, for the benefit of Beneficiary, with power of sale and right of entry and possession, and to and for their respective successors and assigns, all of Grantor's estate, right, title, interest, claim and demand, now owned or hereafter acquired, in and to the real property located in Rutherford County, Tennessee, and described on Exhibit A attached hereto and incorporated by this reference (the "*Land*"), together with the following described estate, property and rights of Grantor (collectively, the "*Collateral*"), whether the same is now owned or hereafter created, acquired or arising, all as security for the performance of each covenant and agreement of Grantor contained herein and the payment and performance of the Obligations and all other sums of money secured hereby:

2.1. Improvements. All buildings, structures, improvements, and property now or hereafter attached to or used in the operation of the Land and any buildings, structures and/or improvements now or hereafter existing thereon (collectively, the "*Property*"). All property mentioned in this Paragraph 2.1 shall be deemed part of the realty and not severable wholly or in part without material injury to the Property.

2.2. Access. All land lying in streets and roads now or hereafter adjoining the Property, all access rights and easements pertaining to the Property and any and all sidewalks, alleys and strips of land adjacent to or used in connection with the Property.

2.3. Water, Air and Mineral Rights. All of the lands, tenements, privileges, reversions, remainders, irrigation and water rights and stock, air rights, oil and gas rights, royalties, minerals and mineral rights, hereditaments and appurtenances belonging or in any way pertaining to the Property, including without limitation, all wells, canals, ditches and reservoirs of any nature and all rights thereto, appurtenant to or associated with the Land, whether decreed or undecreed, tributary or non-tributary, surface or underground, appropriated or unappropriated, together with all water stock relating to the Property, all shares of stock or other evidence of ownership of any part of the Property that is owned by Grantor in common with others, all documents of membership in any owners' or members' association or similar group having responsibility for managing or operating any part of the Property, and all rights as declarant under any such documents, and all well permits, water service contracts, drainage rights and other evidences of any such rights.

2.4. Leases and Rents. All rents, issues and profits of the Collateral, all existing and future leases of the Collateral (including extensions, renewals and subleases) all agreements for use and occupancy of the Property or other Collateral (all such leases and agreements whether written or oral, are hereafter referred to as the "*Leases*"), and all guaranties of lessees' performance under the Leases, together with the immediate and continuing right to collect and receive all of the rents, income, receipts, revenues, issues, profits and other income of any nature now or hereafter due (including any income of any nature coming due during any redemption period) under the Leases or from or arising out

4

of the Property or other Collateral including minimum rents, additional rents, percentage rents, parking or common area maintenance contributions, tax and insurance contributions, deficiency rents, liquidated damages following default in any Lease, all proceeds payable under any policy of insurance covering loss of rents resulting from untenantability caused by destruction or damage to the Property or other Collateral, all proceeds payable as a result of a lessee's exercise of an option to purchase the Property or other Collateral, all proceeds derived from the termination or rejection of any Lease in a bankruptcy or other insolvency proceeding, and all proceeds from any rights and claims of any kind which Grantor may have against any lessee under the Leases or any occupants of the Property (all of the above are hereafter collectively referred to as the "***Rents***").

2.5. <u>Rights and Proceeds</u>. All compensation, awards, damages, rights of action, warranties, and proceeds (including insurance proceeds and any interest on any of the foregoing) arising out of or relating to a taking or damaging of the Collateral by reason of any public or private improvement, condemnation proceeding (including change of grade), fire, earthquake or other casualty, injury or decrease in the value of the Collateral.

2.6. <u>Insurance; Taxes</u>. All insurance policies and returned premiums or other payments on any insurance policies pertaining to the Collateral and any refunds or rebates of taxes or assessments on the Collateral.

2.7. <u>Plans, Specifications and Contracts</u>. All plans, specifications, contracts, agreements and purchase orders pertaining or incidental to the design or construction of any improvements on the Property, Grantor's rights under any payment, performance, or other bond in connection with construction of improvements on the Property, including but not limited to all site plans, plats, architectural plans, specifications, work drawings, surveys engineering reports, test borings, market surveys, and other similar work products.

2.8. <u>Other Contracts</u>. All contracts and agreements pertaining to or affecting the Collateral, including management, operating and franchise agreements and licenses.

2.9. <u>Development Rights</u>. All general intangibles, licenses, permits or approvals, zoning rights and other similar rights or interests which relate to the development, use or operation of, or that benefit or are appurtenant to the Property or any improvements thereon, including but not limited to (i) all assignable privately-created or governmentally-created development rights in and to the Property, (ii) all assignable rights, as a result of any governmental decision involving the Property, to transfer "development rights" in the Property to other real property, any "density transfer" entitlements, or similar land use entitlement related directly to the Property, and (iii) all assignable government licenses, permits or approvals relating to construction on the Property.

2.10. <u>Declarant Rights</u>. All rights as declarant (including, but not limited to, any reservation of development rights by declarant) under any declaration of covenants, conditions and restrictions or condominium or planned unit development declaration (or similar instrument, whether recorded or unrecorded) which may now or hereafter

5

24-01421-FPC11    Doc 70-2    Filed 09/19/24    Entered 09/19/24 12:06:58    Pg 23 of 24
Record Book 2333 Page 2010

encumber or purport to affect use of the Property or improvements or the conduct of owners of any of the Property or improvements with respect to said use.

2.11. <u>Names</u>. All names under or by which the Property or any of the improvements may at any time be operated or known and all rights to carry on business under any such names or any variant thereof, and all trademarks and good will in any way relating to the Property or improvements.

2.12. <u>Reserves, Deposits and Unadvanced Funds</u>. All reserves, deferred payments, deposits, unadvanced loan funds, refunds, cost savings and payments of any kind relating to the construction of any improvements on the Land, together with all bank or securities accounts or other repositories of any such amounts and all funds contained therein.

2.13. <u>Additions and Replacements</u>. All additions, accessions, replacements, substitutions, proceeds and products of the property described in this Paragraph 2 and of any of the Collateral which is personal property.

For the avoidance of doubt, and notwithstanding anything to the contrary contained herein, the term, "Collateral," shall not include any of Grantor's right, title and interest in tangible personal property.

TO HAVE AND TO HOLD the above granted and described Land and Collateral unto and to Trustee for and on behalf of Beneficiary for the use and benefit of Beneficiary and Trustee, and for their successors and assigns, forever;

PROVIDED, HOWEVER, these presents are upon the express condition that, upon payment and performance of all of the Obligations and all other sums of money secured hereby, these presents and the estate hereby granted shall cease, terminate and be void.

3. <u>Obligations Secured</u>. This Deed of Trust is for the purpose of securing the following obligations (the "***Obligations***"):

3.1. <u>x0613 Note</u>. Payment to Beneficiary of all sums at any time owing and performance of all other obligations arising under or in connection with that certain Promissory Note dated as of December 10, 2020 (as amended, restated or otherwise modified from time to time, the "***x0613 Note***"), executed by Creative Technologies, L.L.C., a Washington limited liability company ("***Creative***"), and payable to Beneficiary or its order, in the stated principal amount of Twenty-One Million Dollars ($21,000,000.00), with interest as provided therein, together with the payment and performance of any other indebtedness or obligations incurred in connection with the loan evidenced by the x0613 Note, whether or not specifically referenced therein and whenever arising.

3.2. <u>x0678 Note</u>. Payment to Beneficiary of all sums at any time owing and performance of all other obligations arising under or in connection with that certain Promissory Note dated as of March 12, 2021 (as amended, restated or otherwise modified

6

24-01421-FPC11    Doc 70-2    Filed 09/19/24    Entered 09/19/24 12:06:53    Pg 24 of 24

Record Book 2333 Page 2011