# EXHIBIT A

Docusign Envelope ID: 905B52D6-2D42-439D-A239-0FC8E1A741A4



# STANDARD OFFER, AGREEMENT AND ESCROW INSTRUCTIONS
# FOR PURCHASE OF REAL ESTATE
(Non-Residential)

Dated: July 15, 2024

**1. Buyer.**

1.1 Chris Loughridge, or Assignee , ("**Buyer**") hereby offers to purchase the real property, hereinafter described, from the owner thereof ("**Seller**") (collectively, the "**Parties**" or individually, a "**Party**"), through an escrow ("**Escrow**") to close 30 or 10 days after the waiver or satisfaction of the Buyer's Contingencies, ("**Expected Closing Date**") to be held by Old Republic Title ATTN: Cheryl Springer Lentz, LPO ("**Escrow Holder**") whose address is ____ , Phone No. (503) 219-2322 , Facsimile No. ____ upon the terms and conditions set forth in this agreement ("**Agreement**"). Buyer shall have the right to assign Buyer's rights hereunder, but any such assignment shall not relieve Buyer of Buyer's obligations herein unless Seller expressly releases Buyer.

1.2 The term "**Date of Agreement**" as used herein shall be the date when by execution and delivery (as defined in paragraph 20.2) of this document or a subsequent counteroffer thereto, Buyer and Seller have reached agreement in writing whereby Seller agrees to sell, and Buyer agrees to purchase, the Property upon terms accepted by both Parties.

**2. Property.**

2.1 The real property ("**Property**") that is the subject of this offer consists of (insert a brief physical description) two freestanding multi-tenant buildings totaling approximately 20,808 square feet situated on approximately 1.53 acres of land is located in the County of San Diego , is commonly known as (street address, city, state, zip) 530 Opper Street, Escondido, CA 92029 and is legally described as: LOT 4 LOT 3 & TR 006396 (APN: 228-420-35-00 ).

2.2 If the legal description of the Property is not complete or is inaccurate, this Agreement shall not be invalid and the legal description shall be completed or corrected to meet the requirements of Old Republic Title ("**Title Company**"), which shall issue the title policy hereinafter described.

2.3 The Property includes, at no additional cost to Buyer, the permanent improvements thereon, including those items which pursuant to applicable law are a part of the property, as well as the following items, if any, owned by Seller and at present located on the Property: electrical distribution systems (power panel, bus ducting, conduits, disconnects, lighting fixtures); telephone distribution systems (lines, jacks and connections only); space heaters; heating, ventilating, air conditioning equipment ("**HVAC**"); air lines; fire sprinkler systems; security and fire detection systems; carpets; window coverings; wall coverings; and ____ (collectively, the "**Improvements**").

2.4 The fire sprinkler monitor: ☐ is owned by Seller and included in the Purchase Price, ☐ is leased by Seller, and Buyer will need to negotiate a new lease with the fire monitoring company, ☐ ownership will be determined during Escrow, or ☐ there is no fire sprinkler monitor.

2.5 Except as provided in Paragraph 2.3, the Purchase Price does not include Seller's personal property, furniture and furnishings, and ____ all of which shall be removed by Seller prior to Closing.

**3. Purchase Price.**

3.1 The purchase price ("**Purchase Price**") to be paid by Buyer to Seller for the Property shall be $4,750,000.00 , payable as follows:

*(Strike any not applicable)*

(a) Cash down payment, including the Deposit as defined in paragraph 4.3 (or if an all cash transaction, the Purchase Price):

$4,750,000.00

~~(b) Amount of "New Loan" as defined in paragraph 5.1, if any:~~

~~(c) Buyer shall take title to the Property subject to and/or assume the following existing deed(s) of trust ("Existing Deed(s) of Trust") securing the existing promissory note(s) ("Existing Note(s)"):~~
~~(i) An Existing Note ("First Note") with an unpaid principal balance as of the Closing of approximately:~~

~~Said First Note is payable at ____ per month, including interest at the rate of ____ % per annum until paid (and/or the entire unpaid balance is due on ____ ).~~
~~(ii) An Existing Note ("Second Note") with an unpaid principal balance as of the Closing of approximately:~~

~~Said Second Note is payable at ____ per month, including interest at the rate of ____ % per annum until paid (and/or the entire unpaid balance is due on ____ ).~~
~~(d) Buyer shall give Seller a deed of trust ("Purchase Money Deed of Trust") on the property, to secure the promissory note of Buyer to Seller described in paragraph 6 ("Purchase Money Note") in the amount of:~~

Total Purchase Price: $4,750,000.00

~~3.2 If Buyer is taking title to the Property subject to, or assuming, an Existing Deed of Trust and such deed of trust permits the beneficiary to demand payment of fees including, but not limited to, points, processing fees, and appraisal fees as a condition to the transfer of the Property, Buyer agrees to pay such fees up to a maximum of 1.5% of the unpaid principal balance of the applicable Existing Note.~~

INITIALS       INITIALS

© 2019 AIR CRE. All Rights Reserved.                                   Last Edited: 7/15/2024 10:01 AM
OFA-20.30, Revised 10-13-2022                                          Page 1 of 11

4. **Deposits.**

    4.1 ☐ Buyer has delivered to Broker a check in the sum of ____, payable to Escrow Holder, to be delivered by Broker to Escrow Holder within 2 or ____ business days after both Parties have executed this Agreement and the executed Agreement has been delivered to Escrow Holder, or ☑ within 2 or ____ business days after both Parties have executed this Agreement and the executed Agreement has been delivered to Escrow Holder Buyer shall deliver to Escrow Holder a check in the sum of  $250,000.00 . If said check is not received by Escrow Holder within said time period then Seller may elect to unilaterally terminate this transaction by giving written notice of such election to Escrow Holder whereupon neither Party shall have any further liability to the other under this Agreement. Should Buyer and Seller not enter into an agreement for purchase and sale, Buyer's check or funds shall, upon request by Buyer, be promptly returned to Buyer.

    ~~4.2 Additional deposits:~~
        ~~(a) Within 5 business days after the Date of Agreement, Buyer shall deposit with Escrow Holder the additional sum of ____ to be applied to the Purchase Price at the Closing.~~
        ~~(b) Within 5 business days after the contingencies discussed in paragraph 9.1 (a) through (m) are approved or waived, Buyer shall deposit with Escrow Holder the additional sum of ____ to be applied to the Purchase Price at the Closing.~~
        ~~(c) If an Additional Deposit is not received by Escrow Holder within the time period provided then Seller may notify Buyer, Escrow Holder, and Brokers, in writing that, unless the Additional Deposit is received by Escrow Holder within 2 business days following said notice, the Escrow shall be deemed terminated without further notice or instructions.~~

    4.3 Escrow Holder shall deposit the funds deposited with it by Buyer pursuant to paragraphs 4.1 and 4.2 (collectively the "**Deposit**"), in a State or Federally chartered bank in an interest bearing account whose term is appropriate and consistent with the timing requirements of this transaction. The interest therefrom shall accrue to the benefit of Buyer, who hereby acknowledges that there may be penalties or interest forfeitures if the applicable instrument is redeemed prior to its specified maturity. Buyer's Federal Tax Identification Number is  to be furnished by Buyer at close of escrow . NOTE: Such interest bearing account cannot be opened until Buyer's Federal Tax Identification Number is provided.

    4.4 Notwithstanding the foregoing, within 5 days after Escrow Holder receives the monies described in paragraph 4.1 above, Escrow Holder shall release $100 of said monies to Seller as and for independent consideration for Seller's' execution of this Agreement and the granting of the contingency period to Buyer as herein provided. Such independent consideration is non-refundable to Buyer but shall be credited to the Purchase Price in the event that the purchase of the Property is completed.

    4.5 Upon waiver of all of Buyer's contingencies the Deposit shall become non-refundable but applicable to the Purchase Price except in the event of a Seller breach, or in the event that the Escrow is terminated pursuant to the provisions of Paragraph 9.1(n) (Destruction, Damage or Loss) or 9.1(o) (Material Change).

~~5. Financing Contingency. *(Strike if not applicable)*~~
    ~~5.1 This offer is contingent upon Buyer obtaining from an insurance company, financial institution or other lender, a commitment to lend to Buyer a sum equal to at least ____ % of the Purchase Price, on terms acceptable to Buyer. Such loan ("New Loan") shall be secured by a first deed of trust or mortgage on the Property. If this Agreement provides for Seller to carry back junior financing, then Seller shall have the right to approve the terms of the New Loan. Seller shall have 7 days following receipt of the commitment setting forth the proposed terms of the New Loan to approve or disapprove of such proposed terms. If Seller fails to notify Escrow Holder, in writing, of the disapproval within said 7 days it shall be conclusively presumed that Seller has approved the terms of the New Loan.~~
    ~~5.2 If Buyer shall fail to notify its Broker, Escrow Holder and Seller, in writing within ____ days following the Date of Agreement, that the New Loan has not been obtained, it shall be conclusively presumed that Buyer has either obtained said New Loan or has waived this New Loan contingency.~~
    ~~5.3 If Buyer shall notify its Broker, Escrow Holder and Seller, in writing, within the time specified in paragraph 5.2 hereof, that Buyer has not obtained said New Loan, this Agreement shall be terminated, and Buyer shall be entitled to the prompt return of the Deposit, plus any interest earned thereon, less only Escrow Holder and Title Company cancellation fees and costs, which Buyer shall pay.~~

~~6. Seller Financing. (Purchase Money Note). *(Strike if not applicable)*~~
    ~~6.1 If Seller approves Buyer's financials (see paragraph 6.5) the Purchase Money Note shall provide for interest on unpaid principal at the rate of ____ % per annum, with principal and interest paid as follows: ____ . The Purchase Money Note and Purchase Money Deed of Trust shall be on the current forms commonly used by Escrow Holder, and be junior and subordinate only to the Existing Note(s) and/or the New Loan expressly called for by this Agreement.~~
    ~~6.2 The Purchase Money Note and/or the Purchase Money Deed of Trust shall contain provisions regarding the following (see also paragraph 10.3 (b)):~~
        ~~(a) *Prepayment.* Principal may be prepaid in whole or in part at any time without penalty, at the option of the Buyer.~~
        ~~(b) *Late Charge.* A late charge of 6% shall be payable with respect to any payment of principal, interest, or other charges, not made within 10 days after it is due.~~
        ~~(c) *Due On Sale.* In the event the Buyer sells or transfers title to the Property or any portion thereof, then the Seller may, at Seller's option, require the entire unpaid balance of said Note to be paid in full.~~
    ~~6.3 If the Purchase Money Deed of Trust is to be subordinate to other financing, Escrow Holder shall, at Buyer's expense prepare and record on Seller's behalf a request for notice of default and/or sale with regard to each mortgage or deed of trust to which it will be subordinate.~~
    ~~6.4 WARNING: CALIFORNIA LAW DOES NOT ALLOW DEFICIENCY JUDGEMENTS ON SELLER FINANCING. IF BUYER ULTIMATELY DEFAULTS ON THE LOAN, SELLER'S SOLE REMEDY IS TO FORECLOSE ON THE PROPERTY.~~
    ~~6.5 Seller's obligation to provide financing is contingent upon Seller's reasonable approval of Buyer's financial condition. Buyer to provide a current financial statement and copies of its Federal tax returns for the last 3 years to Seller within 10 days following the Date of Agreement. Seller has 10 days following receipt of such documentation to satisfy itself with regard to Buyer's financial condition and to notify Escrow Holder as to whether or not Buyer's financial condition is acceptable. If Seller fails to notify Escrow Holder, in writing, of the disapproval of this contingency within said time period, it shall be conclusively presumed that Seller has approved Buyer's financial condition. If Seller is not satisfied with Buyer's financial condition or if Buyer fails to deliver the required documentation then Seller may notify Escrow Holder in writing that Seller Financing will not be available, and Buyer shall have the option, within 10 days of the receipt of such notice, to either terminate this transaction or to purchase the Property without Seller~~

~~financing. If Buyer fails to notify Escrow Holder within said time period of its election to terminate this transaction then Buyer shall be conclusively presumed to have elected to purchase the Property without Seller financing. If Buyer elects to terminate, Buyer's Deposit shall be refunded less Title Company and Escrow Holder cancellation fees and costs, all of which shall be Buyer's obligation.~~

**7. Real Estate Brokers.**

  7.1 Each Party acknowledges receiving a Disclosure Regarding Real Estate Agency Relationship, confirms and consents to the following agency relationships in this transaction with the following real estate broker(s) ("**Brokers**") and/or their agents ("**Agent(s)**"):

  Seller's Brokerage Firm _NAI San Diego_ License No. _01222019_ is the broker of (check one): ☑ the Seller; or ☐ both the Buyer and Seller (dual agent).

  Seller's Agent _Jason Smithson_ License No. _01477835_ is (check one): ☑ the Seller's Agent (salesperson or broker associate); or ☐ both the Seller's Agent and the Buyer's Agent (dual agent).

  Buyer's Brokerage Firm _Lee & Associates - San Diego, Inc._ License No. _01772022_ is the broker of (check one): ☑ the Buyer; or ☐ both the Buyer and Seller (dual agent).

  Buyer's Agent _Brent Bohlken_ License No. _01022607_ is (check one): ☑ the Buyer's Agent (salesperson or broker associate); or ☐ both the Buyer's Agent and the Seller's Agent (dual agent).

The Parties acknowledge that other than the Brokers and Agents listed above, there are no other brokers or agents representing the Parties or due any fees and/or commissions under this Agreement. Buyer shall use the services of Buyer's Broker exclusively in connection with any and all negotiations and offers with respect to the Property for a period of 1 year from the date inserted for reference purposes at the top of page 1.

  7.2 Buyer and Seller each represent and warrant to the other that he/she/it has had no dealings with any person, firm, broker, agent or finder in connection with the negotiation of this Agreement and/or the consummation of the purchase and sale contemplated herein, other than the Brokers and Agents named in paragraph 7.1, and no broker, agent or other person, firm or entity, other than said Brokers and Agents is/are entitled to any commission or finder's fee in connection with this transaction as the result of any dealings or acts of such Party. Buyer and Seller do each hereby agree to indemnify, defend, protect and hold the other harmless from and against any costs, expenses or liability for compensation, commission or charges which may be claimed by any broker, agent, finder or other similar party, other than said named Brokers and Agents by reason of any dealings or act of the indemnifying Party.

**8. Escrow and Closing.**

  8.1 Upon acceptance hereof by Seller, this Agreement, including any counteroffers incorporated herein by the Parties, shall constitute not only the agreement of purchase and sale between Buyer and Seller, but also instructions to Escrow Holder for the consummation of the Agreement through the Escrow. Escrow Holder shall not prepare any further escrow instructions restating or amending the Agreement unless specifically so instructed by the Parties or a Broker herein. Subject to the reasonable approval of the Parties, Escrow Holder may, however, include its standard general escrow provisions. In the event that there is any conflict between the provisions of the Agreement and the provisions of any additional escrow instructions the provisions of the Agreement shall prevail as to the Parties and the Escrow Holder.

  8.2 As soon as practical after the receipt of this Agreement and any relevant counteroffers, Escrow Holder shall ascertain the Date of Agreement as defined in paragraphs 1.2 and 20.2 and advise the Parties and Brokers, in writing, of the date ascertained.

  8.3 Escrow Holder is hereby authorized and instructed to conduct the Escrow in accordance with this Agreement, applicable law and custom and practice of the community in which Escrow Holder is located, including any reporting requirements of the Internal Revenue Code. In the event of a conflict between the law of the state where the Property is located and the law of the state where the Escrow Holder is located, the law of the state where the Property is located shall prevail.

  8.4 Subject to satisfaction of the contingencies herein described, Escrow Holder shall close this escrow (the "**Closing**") by recording a general warranty deed (a grant deed in California) and the other documents required to be recorded, and by disbursing the funds and documents in accordance with this Agreement.

  8.5 Buyer and Seller shall each pay one-half of the Escrow Holder's charges and Seller shall pay the usual recording fees and any required documentary transfer taxes. Seller shall pay the premium for a standard coverage owner's or joint protection policy of title insurance. (See also paragraph 11.)

  8.6 Escrow Holder shall verify that all of Buyer's contingencies have been satisfied or waived prior to Closing. The matters contained in paragraphs 9.1 subparagraphs (b), (c), (d), (e), (g), (i), (n), and (o), 9.4, 12, 13, 14, 16, 18, 20, 21, 22, and 24 are, however, matters of agreement between the Parties only and are not instructions to Escrow Holder.

  8.7 If this transaction is terminated for non-satisfaction and non-waiver of a Buyer's Contingency, as defined in paragraph 9.2 or disapproval of any other matter subject to Buyer's approval, then neither of the Parties shall thereafter have any liability to the other under this Agreement, except to the extent of a breach of any affirmative covenant or warranty in this Agreement. In the event of such termination, Buyer shall, subject to the provisions of paragraph 8.10, be promptly refunded all funds deposited by Buyer with Escrow Holder, less only the $100 provided for in paragraph 4.4 and the Title Company and Escrow Holder cancellation fees and costs, all of which shall be Buyer's obligation. If this transaction is terminated as a result of Seller's breach of this Agreement then Seller shall pay the Title Company and Escrow Holder cancellation fees and costs.

  8.8 The Closing shall occur on the Expected Closing Date, or as soon thereafter as the Escrow is in condition for Closing; provided, however, that if the Closing does not occur by the Expected Closing Date and said Date is not extended by mutual instructions of the Parties, a Party not then in default under this Agreement may notify the other Party, Escrow Holder, and Brokers, in writing that, unless the Closing occurs within 5 business days following said notice, the Escrow shall be deemed terminated without further notice or instructions.

  8.9 Except as otherwise provided herein, the termination of Escrow shall not relieve or release either Party from any obligation to pay Escrow Holder's fees and costs or constitute a waiver, release or discharge of any breach or default that has occurred in the performance of the obligations, agreements, covenants or warranties contained therein.

  8.10 If this Escrow is terminated for any reason other than Seller's breach or default, then as a condition to the return of Buyer's deposit, Buyer shall within 5 days after written request deliver to Seller, at no charge, copies of all surveys, engineering studies, soil reports, maps, master plans, feasibility studies and other similar items prepared by or for Buyer that pertain to the Property.

**9. Contingencies to Closing.**



INITIALS                                         INITIALS

9.1 IF, BEFORE EXPIRATION OF THE APPLICABLE TIME, BUYER FAILS TO PROVIDE ESCROW HOLDER WRITTEN NOTICE OF BUYER'S DISAPPROVAL OF ANY OF BUYER'S CONTINGENCIES OR ANY OTHER MATTER THAT IS SUBJECT TO BUYER'S APPROVAL IN THIS AGREEMENT, THEN BUYER SHALL BE CONCLUSIVELY DEEMED TO HAVE SATISFIED SUCH BUYER'S CONTINGENCIES AND/OR APPROVED OF SUCH OTHER MATTERS. If a number of days is completed in any of the optional spaces in subparagraphs 9.1 (a) through (m), then such number shall apply and override the pre-printed number, even if the pre-printed number is not stricken. The Closing of this transaction is contingent upon the satisfaction or waiver of the following contingencies:

(a) *Disclosure.* Seller shall make to Buyer, through Escrow, all of the applicable disclosures required by law (See AIR CRE ("AIR") standard form entitled **"Seller's Mandatory Disclosure Statement"**) and provide Buyer with a completed Property Information Sheet (**"Property Information Sheet"**) concerning the Property, duly executed by or on behalf of Seller in the current form or equivalent to that published by the AIR within 10 or ____ days following the Date of Agreement. Buyer has 10 20 days from the receipt of said disclosures to approve or disapprove the matters disclosed.

(b) *Physical Inspection.* Buyer has 10 or __20__ days following the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the physical aspects and size of the Property.

(c) *Hazardous Substance Conditions Report.* Buyer has 30 or __20__ days following the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the environmental aspects of the Property. Seller recommends that Buyer obtain a Hazardous Substance Conditions Report concerning the Property and relevant adjoining properties. Any such report shall be paid for by Buyer. A **"Hazardous Substance"** for purposes of this Agreement is defined as any substance whose nature and/or quantity of existence, use, manufacture, disposal or effect, render it subject to Federal, state or local regulation, investigation, remediation or removal as potentially injurious to public health or welfare. A **"Hazardous Substance Condition"** for purposes of this Agreement is defined as the existence on, under or relevantly adjacent to the Property of a Hazardous Substance that would require remediation and/or removal under applicable Federal, state or local law.

(d) *Soil Inspection.* Buyer has 30 or __20__ days following the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the condition of the soils on the Property. Seller recommends that Buyer obtain a soil test report. Any such report shall be paid for by Buyer. Seller shall provide Buyer copies of any soils report that Seller may have within 10 days following the Date of Agreement.

(e) *Governmental Approvals.* Buyer has 30 or __20__ days following the Date of Agreement to satisfy itself with regard to approvals and permits from governmental agencies or departments which have or may have jurisdiction over the Property and which Buyer deems necessary or desirable in connection with its intended use of the Property, including, but not limited to, permits and approvals required with respect to zoning, planning, building and safety, fire, police, handicapped and Americans with Disabilities Act requirements, transportation and environmental matters.

(f) *Conditions of Title.* Escrow Holder shall cause a current commitment for title insurance (**"Title Commitment"**) concerning the Property issued by the Title Company, as well as legible copies of all documents referred to in the Title Commitment (**"Underlying Documents"**), and a scaled and dimensioned plot showing the location of any easements to be delivered to Buyer within 10 or ____ days following the Date of Agreement. Buyer has 10 20 days from the receipt of the Title Commitment, the Underlying Documents and the plot plan to satisfy itself with regard to the condition of title. The disapproval by Buyer of any monetary encumbrance, which by the terms of this Agreement is not to remain against the Property after the Closing, shall not be considered a failure of this contingency, as Seller shall have the obligation, at Seller's expense, to satisfy and remove such disapproved monetary encumbrance at or before the Closing.

(g) *Survey.* Buyer has 30 or __20__ days following the receipt of the Title Commitment and Underlying Documents to satisfy itself with regard to any ALTA title supplement based upon a survey prepared to American Land Title Association ("ALTA") standards for an owner's policy by a licensed surveyor, showing the legal description and boundary lines of the Property, any easements of record, and any improvements, poles, structures and things located within 10 feet of either side of the Property boundary lines. Any such survey shall be prepared at Buyer's direction and expense. If Buyer has obtained a survey and approved the ALTA title supplement, Buyer may elect within the period allowed for Buyer's approval of a survey to have an ALTA extended coverage owner's form of title policy, in which event Buyer shall pay any additional premium attributable thereto.

(h) *Existing Leases and Tenancy Statements.* Seller shall within 10 or ____ days following the Date of Agreement provide both Buyer and Escrow Holder with legible copies of all leases, subleases or rental arrangements (collectively, **"Existing Leases"**) affecting the Property, and with a tenancy statement (**"Estoppel Certificate"**) in the latest form or equivalent to that published by the AIR, executed by Seller and/or each tenant and subtenant of the Property. Seller shall use its best efforts to have each tenant complete and execute an Estoppel Certificate. If any tenant fails or refuses to provide an Estoppel Certificate then Seller shall complete and execute an Estoppel Certificate for that tenancy. Buyer has 10 20 days from the receipt of said Existing Leases and Estoppel Certificates to satisfy itself with regard to the Existing Leases and any other tenancy issues.

(i) *Owner's Association.* Seller shall within 10 or ____ days following the Date of Agreement provide Buyer with a statement and transfer package from any owner's association servicing the Property. Such transfer package shall at a minimum include: copies of the association's bylaws, articles of incorporation, current budget and financial statement. Buyer has 10 20 days from the receipt of such documents to satisfy itself with regard to the association.

(j) *Other Agreements.* Seller shall within 10 or ____ days following the Date of Agreement provide Buyer with legible copies of all other agreements (**"Other Agreements"**) known to Seller that will affect the Property after Closing. Buyer has 10 20 days from the receipt of said Other Agreements to satisfy itself with regard to such Agreements.

(k) *Financing.* If paragraph 5 hereof dealing with a financing contingency has not been stricken, the satisfaction or waiver of such New Loan contingency.

(l) *Existing Notes.* If paragraph 3.1(c) has not been stricken, Seller shall within 10 or ____ days following the Date of Agreement provide Buyer with legible copies of the Existing Notes, Existing Deeds of Trust and related agreements (collectively, "Loan Documents") to which the Property will remain subject after the Closing. Escrow Holder shall promptly request from the holders of the Existing Notes a beneficiary statement ("Beneficiary Statement") confirming: (1) the amount of the unpaid principal balance, the current interest rate, and the date to which interest is paid, and (2) the nature and amount of any impounds held by the beneficiary in connection with such loan. Buyer has 10 or ____ days following the receipt of the Loan Documents and Beneficiary Statements to satisfy itself with regard to such financing. Buyer's obligation to close is conditioned upon Buyer being able to purchase the Property without acceleration or change in the terms of any Existing Notes or charges to Buyer except as otherwise provided in this Agreement or approved by Buyer, provided, however, Buyer shall pay the transfer fee referred to in paragraph 3.2 hereof. Likewise if Seller is to carry back a Purchase Money Note then Seller shall within 10 or ____ days following the Date of

~~Agreement provide Buyer with a copy of the proposed Purchase Money Note and Purchase Money Deed of Trust. Buyer has 10 or~~
~~____ days following the receipt of such documents to satisfy itself with regard to the form and content thereof.~~

(m) *Personal Property.* In the event that any personal property is included in the Purchase Price, Buyer has ~~10 or~~ 20 days following the Date of Agreement to satisfy itself with regard to the title condition of such personal property. Seller recommends that Buyer obtain a UCC-1 report. Any such report shall be paid for by Buyer. Seller shall provide Buyer copies of any liens or encumbrances affecting such personal property that it is aware of within 10 ~~or~~ ____ days following the Date of Agreement.

(n) *Destruction, Damage or Loss.* Subsequent to the Date of Agreement and prior to Closing there shall not have occurred a destruction of, or damage or loss to, the Property or any portion thereof, from any cause whatsoever, which would cost more than $10,000.00 to repair or cure. If the cost of repair or cure is $10,000.00 or less, Seller shall repair or cure the loss prior to the Closing. Buyer shall have the option, within 10 days after receipt of written notice of a loss costing more than $10,000.00 to repair or cure, to either terminate this Agreement or to purchase the Property notwithstanding such loss, but without deduction or offset against the Purchase Price. If the cost to repair or cure is more than $10,000.00, and Buyer does not elect to terminate this Agreement, Buyer shall be entitled to any insurance proceeds applicable to such loss. Unless otherwise notified in writing, Escrow Holder shall assume no such destruction, damage or loss has occurred prior to Closing.

(o) *Material Change.* Buyer shall have 10 days following receipt of written notice of a Material Change within which to satisfy itself with regard to such change. **"Material Change"** shall mean a substantial adverse change in the use, occupancy, tenants, title, or condition of the Property that occurs after the date of this offer and prior to the Closing. Unless otherwise notified in writing, Escrow Holder shall assume that no Material Change has occurred prior to the Closing.

(p) *Seller Performance.* The delivery of all documents and the due performance by Seller of each and every undertaking and agreement to be performed by Seller under this Agreement.

(q) *Brokerage Fee.* Payment at the Closing of such brokerage fee as is specified in this Agreement or later written instructions to Escrow Holder executed by Seller and Brokers (**"Brokerage Fee"**). It is agreed by the Parties and Escrow Holder that Brokers are a third party beneficiary of this Agreement insofar as the Brokerage Fee is concerned, and that no change shall be made with respect to the payment of the Brokerage Fee specified in this Agreement, without the written consent of Brokers.

9.2 The contingencies specified in subparagraphs 9.1(a) through (m) and entry of the Order referred to in the Receiver's Addendum paragraph 4 are for the benefit of, and may be waived by, Buyer, and are referred to collectively as **"Buyer's Contingencies"** and individually as a **"Buyer's Contingency."**

9.3 Buyer's timely and written disapproval or conditional approval of a Buyer's Contingency or any other matter that is subject to Buyer's approval in this Agreement shall constitute disapproval thereof (**"Disapproved Item(s)"**). Concurrent with notice of a Disapproved Item, Buyer may make a request to Seller regarding such Disapproved Item (**"Buyer's Request"**). If Buyer fails to make a timely and written Buyer's Request, then this Agreement shall terminate due to the non-satisfaction and non-waiver of a contingency. Seller may respond to a Buyer's Request within 10 days following Seller's receipt thereof (**"Seller's Response"**). Seller's acceptance of a Buyer's Request shall amend this Agreement accordingly. If Seller fails to provide a timely and written Seller's Response, then Seller's Response shall be deemed to be a rejection of Buyer's Request. Buyer may, within 10 days following the earlier of Buyer's receipt of a Seller's Response (which is not an acceptance of Buyer's Request) or the date of Seller's deemed rejection of a Buyer's Request (**"Buyer's Reply Period"**), reply to a Seller's Response (**"Buyer's Reply"**) and elect to (i) terminate this Agreement due to the non-satisfaction and non-waiver of the applicable contingency, (ii) accept the Seller's Response in which event this Agreement shall be amended accordingly, or (iii) withdraw Buyer's Request and waive the Disapproved Item in which event Buyer shall accept the Property subject to the Disapproved Item. If Buyer fails to provide a timely and written Buyer's Reply, then Buyer shall be deemed to have elected to terminate this Agreement as of the end of the Buyer's Reply Period. The date Buyer accepts a Seller's Response or withdraws a Buyer's Request and waives a Disapproved Item shall be the date of Buyer's approval of the Disapproved Item. A Party shall provide to Escrow Holder copy of all notices of a Disapproved Item, Buyer's Request, Seller's Response and Buyer's Reply and Escrow Holder shall promptly provide copies thereof to the other Party. Unless the Parties in writing agree otherwise, if the Expected Closing Date is a specific calendar date and a Buyer's Reply Period expires after such specific calendar date, then notwithstanding paragraph 1.1, the Expected Closing Date shall be extended to be 3 business days after the earlier of the date Buyer withdraws a Buyer's Request and waives the applicable Disapproved Item or Buyer accepts the applicable Seller's Response.

9.4 The Parties acknowledge that extensive local, state and Federal legislation establish broad liability upon owners and/or users of real property for the investigation and remediation of Hazardous Substances. The determination of the existence of a Hazardous Substance Condition and the evaluation of the impact of such a condition are highly technical and beyond the expertise of Brokers. The Parties acknowledge that they have been advised by Brokers to consult their own technical and legal experts with respect to the possible presence of Hazardous Substances on the Property or adjoining properties, and Buyer and Seller are not relying upon any investigation by or statement of Brokers with respect thereto. The Parties hereby assume all responsibility for the impact of such Hazardous Substances upon their respective interests herein.

**10. Documents and Other Items Required at or Before Closing.**

10.1 Five days prior to the Closing date Escrow Holder shall obtain an updated Title Commitment concerning the Property from the Title Company and provide copies thereof to each of the Parties.

10.2 Seller shall deliver to Escrow Holder in time for delivery to Buyer at the Closing:

(a) Grant ~~or general warranty~~ deed, duly executed and in recordable form, conveying fee title to the Property to Buyer.

~~(b) If applicable, the Beneficiary Statements concerning Existing Note(s).~~

(c) If applicable, the Existing Leases and Other Agreements together with duly executed assignments thereof by Seller and Buyer. The assignment of Existing Leases shall be on the most recent Assignment and Assumption of Lessor's Interest in Lease form published by the AIR or its equivalent.

(d) An affidavit executed by Seller to the effect that Seller is not a "foreign person" within the meaning of Internal Revenue Code Section 1445 or successor statutes. If Seller does not provide such affidavit in form reasonably satisfactory to Buyer at least 3 business days prior to the Closing, Escrow Holder shall at the Closing deduct from Seller's proceeds and remit to the Internal Revenue Service such sum as is required by applicable Federal law with respect to purchases from foreign sellers.

(e) If the Property is located in California, an affidavit executed by Seller to the effect that Seller is not a "nonresident" within the meaning of California Revenue and Tax Code Section 18662 or successor statutes. If Seller does not provide such affidavit in form reasonably satisfactory to Buyer at least 3 business days prior to the Closing, Escrow Holder shall at the Closing deduct from Seller's proceeds and remit to the Franchise Tax Board such sum as is required by such statute.

INITIALS     INITIALS

(f) If applicable, a bill of sale, duly executed, conveying title to any included personal property to Buyer.
(g) If the Seller is a corporation, a duly executed corporate resolution authorizing the execution of this Agreement and the sale of the Property.
10.3 Buyer shall deliver to Seller through Escrow:
(a) The cash portion of the Purchase Price and such additional sums as are required of Buyer under this Agreement shall be deposited by Buyer with Escrow Holder, by federal funds wire transfer, or any other method acceptable to Escrow Holder in immediately collectable funds, no later than 2:00 P.M. on the business day prior to the Expected Closing Date provided, however, that Buyer shall not be required to deposit such monies into Escrow if at the time set for the deposit of such monies Seller is in default or has indicated that it will not perform any of its obligations hereunder. Instead, in such circumstances in order to reserve its rights to proceed Buyer need only provide Escrow with evidence establishing that the required monies were available.
(b) If a Purchase Money Note and Purchase Money Deed of Trust are called for by this Agreement, the duly executed originals of those documents, the Purchase Money Deed of Trust being in recordable form, together with evidence of fire insurance on the improvements in the amount of the full replacement cost naming Seller as a mortgage loss payee, and a real estate tax service contract (at Buyer's expense), assuring Seller of notice of the status of payment of real property taxes during the life of the Purchase Money Note.
(c) The Assignment and Assumption of Lessor's Interest in Lease form specified in paragraph 10.2(c) above, duly executed by Buyer.
(d) Assumptions duly executed by Buyer of the obligations of Seller that accrue after Closing under any Other Agreements.
(e) If applicable, a written assumption duly executed by Buyer of the loan documents with respect to Existing Notes.
(f) If the Buyer is a corporation, a duly executed corporate resolution authorizing the execution of this Agreement and the purchase of the Property.
10.4 At Closing, Escrow Holder shall cause to be issued to Buyer a standard coverage (or ALTA extended, if elected pursuant to 9.1(g)) owner's form policy of title insurance effective as of the Closing, issued by the Title Company in the full amount of the Purchase Price, insuring title to the Property vested in Buyer, subject only to the exceptions approved by Buyer. In the event there is a Purchase Money Deed of Trust in this transaction, the policy of title insurance shall be a joint protection policy insuring both Buyer and Seller.
**IMPORTANT: IN A PURCHASE OR EXCHANGE OF REAL PROPERTY, IT MAY BE ADVISABLE TO OBTAIN TITLE INSURANCE IN CONNECTION WITH THE CLOSE OF ESCROW SINCE THERE MAY BE PRIOR RECORDED LIENS AND ENCUMBRANCES WHICH AFFECT YOUR INTEREST IN THE PROPERTY BEING ACQUIRED. A NEW POLICY OF TITLE INSURANCE SHOULD BE OBTAINED IN ORDER TO ENSURE YOUR INTEREST IN THE PROPERTY THAT YOU ARE ACQUIRING.**

**11. Prorations and Adjustments.**
11.1 *Taxes.* Applicable real property taxes and special assessment bonds shall be prorated through Escrow as of the date of the Closing, based upon the latest tax bill available. The Parties agree to prorate as of the Closing any taxes assessed against the Property by supplemental bill levied by reason of events occurring prior to the Closing. Payment of the prorated amount shall be made promptly in cash upon receipt of a copy of any supplemental bill.
11.2 *Insurance.* **WARNING:** Any insurance which Seller may have maintained will terminate on the Closing. Buyer is advised to obtain appropriate insurance to cover the Property.
11.3 *Rentals, Interest and Expenses.* Scheduled rentals, interest on Existing Notes, utilities, and operating expenses shall be prorated as of the date of Closing. The Parties agree to promptly adjust between themselves outside of Escrow any rents received after the Closing.
11.4 *Security Deposit.* Security Deposits held by Seller shall be given to Buyer as a credit to the cash required of Buyer at the Closing.
11.5 *Post Closing Matters.* Any item to be prorated that is not determined or determinable at the Closing shall be promptly adjusted by the Parties by appropriate cash payment outside of the Escrow when the amount due is determined.
11.6 *Variations in Existing Note Balances.* In the event that Buyer is purchasing the Property subject to an Existing Deed of Trust(s), and in the event that a Beneficiary Statement as to the applicable Existing Note(s) discloses that the unpaid principal balance of such Existing Note(s) at the closing will be more or less than the amount set forth in paragraph 3.1(c) hereof ("Existing Note Variation"), then the Purchase Money Note(s) shall be reduced or increased by an amount equal to such Existing Note Variation. If there is to be no Purchase Money Note, the cash required at the Closing per paragraph 3.1(a) shall be reduced or increased by the amount of such Existing Note Variation.
11.7 *Variations in New Loan Balance.* In the event Buyer is obtaining a New Loan and the amount ultimately obtained exceeds the amount set forth in paragraph 5.1, then the amount of the Purchase Money Note, if any, shall be reduced by the amount of such excess.
11.8 *Owner's Association Fees.* Escrow Holder shall: (i) bring Seller's account with the association current and pay any delinquencies or transfer fees from Seller's proceeds, and (ii) pay any up front fees required by the association from Buyer's funds.

**12. Representations and Warranties of Seller and Disclaimers.**
12.1 Seller's warranties and representations shall survive the Closing and delivery of the deed for a period of 3 years, and any lawsuit or action based upon them must be commenced within such time period. Seller's warranties and representations are true, material and relied upon by Buyer and Brokers in all respects. Seller hereby makes the following warranties and representations to Buyer and Brokers:
(a) *Authority of Seller.* Seller is the owner of the Property and/or has the full right, power and authority to sell, convey and transfer the Property to Buyer as provided herein, and to perform Seller's obligations hereunder.
(b) *Maintenance During Escrow and Equipment Condition At Closing.* Except as otherwise provided in paragraph 9.1(n) hereof, Seller shall maintain the Property until the Closing in its present condition, ordinary wear and tear excepted.
(c) *Hazardous Substances/Storage Tanks.* Seller has no knowledge, except as otherwise disclosed to Buyer in writing, of the existence or prior existence on the Property of any Hazardous Substance, nor of the existence or prior existence of any above or below ground storage tank.
(d) *Compliance.* Except as otherwise disclosed in writing, Seller has no knowledge of any aspect or condition of the Property which violates applicable laws, rules, regulations, codes or covenants, conditions or restrictions, or of improvements or alterations made to the Property without a permit where one was required, or of any unfulfilled order or directive of any applicable governmental agency or casualty insurance company requiring any investigation, remediation, repair, maintenance or improvement

INITIALS    INITIALS

Docusign Envelope ID: 905B52D6-2D42-439D-A239-0FC8E1A741A4

be performed on the Property.

(e) *Changes in Agreements.* Prior to the Closing, Seller will not violate or modify any Existing Lease or Other Agreement, or create any new leases or other agreements affecting the Property, without Buyer's written approval, which approval will not be unreasonably withheld.

(f) *Possessory Rights.* Seller has no knowledge that anyone will, at the Closing, have any right to possession of the Property, except as disclosed by this Agreement or otherwise in writing to Buyer.

(g) *Mechanics' Liens.* There are no unsatisfied mechanics' or materialmens' lien rights concerning the Property.

(h) *Actions, Suits or Proceedings.* Seller has no knowledge of any actions, suits or proceedings pending or threatened before any commission, board, bureau, agency, arbitrator, court or tribunal that would affect the Property or the right to occupy or utilize same.

(i) *Notice of Changes.* Seller will promptly notify Buyer and Brokers in writing of any Material Change (see paragraph 9.1(o)) affecting the Property that becomes known to Seller prior to the Closing.

(j) *No Tenant Bankruptcy Proceedings.* Seller has no notice or knowledge that any tenant of the Property is the subject of a bankruptcy or insolvency proceeding.

(k) *No Seller Bankruptcy Proceedings.* Seller is not the subject of a bankruptcy, insolvency or probate proceeding.

(l) *Personal Property.* Seller has no knowledge that anyone will, at the Closing, have any right to possession of any personal property included in the Purchase Price nor knowledge of any liens or encumbrances affecting such personal property, except as disclosed by this Agreement or otherwise in writing to Buyer.

12.2 Buyer hereby acknowledges that, except as otherwise stated in this Agreement, Buyer is purchasing the Property in its existing condition and will, by the time called for herein, make or have waived all inspections of the Property Buyer believes are necessary to protect its own interest in, and its contemplated use of, the Property. The Parties acknowledge that, except as otherwise stated in this Agreement, no representations, inducements, promises, agreements, assurances, oral or written, concerning the Property, or any aspect of the occupational safety and health laws, Hazardous Substance laws, or any other act, ordinance or law, have been made by either Party or Brokers, or relied upon by either Party hereto.

12.3 In the event that Buyer learns that a Seller representation or warranty might be untrue prior to the Closing, and Buyer elects to purchase the Property anyway then, and in that event, Buyer waives any right that it may have to bring an action or proceeding against Seller or Brokers regarding said representation or warranty.

12.4 Any environmental reports, soils reports, surveys, and other similar documents which were prepared by third party consultants and provided to Buyer by Seller or Seller's representatives, have been delivered as an accommodation to Buyer and without any representation or warranty as to the sufficiency, accuracy, completeness, and/or validity of said documents, all of which Buyer relies on at its own risk. Seller believes said documents to be accurate, but Buyer is advised to retain appropriate consultants to review said documents and investigate the Property.

### 13. Possession.

Possession of the Property shall be given to Buyer at the Closing subject to the rights of tenants under Existing Leases.

### 14. Buyer's Entry.

At any time during the Escrow period, Buyer, and its agents and representatives, shall have the right at reasonable times and subject to rights of tenants, to enter upon the Property for the purpose of making inspections and tests specified in this Agreement. No destructive testing shall be conducted, however, without Seller's prior approval which shall not be unreasonably withheld. Following any such entry or work, unless otherwise directed in writing by Seller, Buyer shall return the Property to the condition it was in prior to such entry or work, including the re-compaction or removal of any disrupted soil or material as Seller may reasonably direct. All such inspections and tests and any other work conducted or materials furnished with respect to the Property by or for Buyer shall be paid for by Buyer as and when due and Buyer shall indemnify, defend, protect and hold harmless Seller and the Property of and from any and all claims, liabilities, losses, expenses (including reasonable attorneys' fees), damages, including those for injury to person or property, arising out of or relating to any such work or materials or the acts or omissions of Buyer, its agents or employees in connection therewith.

### 15. Further Documents and Assurances.

The Parties shall each, diligently and in good faith, undertake all actions and procedures reasonably required to place the Escrow in condition for Closing as and when required by this Agreement. The Parties agree to provide all further information, and to execute and deliver all further documents, reasonably required by Escrow Holder or the Title Company.

### 16. Attorneys' Fees.

If any Party or Broker brings an action or proceeding (including arbitration) involving the Property whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees and costs. Such fees may be awarded in the same suit or recovered in a separate suit, whether or not such action or proceeding is pursued to decision or judgment. The term **"Prevailing Party"** shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense. The attorneys' fees award shall not be computed in accordance with any court fee schedule, but shall be such as to fully reimburse all attorneys' fees reasonably incurred.

### 17. Prior Agreements/Amendments.

17.1 This Agreement supersedes any and all prior agreements between Seller and Buyer regarding the Property.

17.2 Amendments to this Agreement are effective only if made in writing and executed by Buyer and Seller.

### 18. Broker's Rights.

18.1 If this sale is not consummated due to the default of either the Buyer or Seller, the defaulting Party shall be liable to and shall pay to Brokers the Brokerage Fee that Brokers would have received had the sale been consummated. If Buyer is the defaulting party, payment of said Brokerage Fee is in addition to any obligation with respect to liquidated or other damages.

18.2 Upon the Closing, Brokers are authorized to publicize the facts of this transaction.

### 19. Notices.

19.1 Whenever any Party, Escrow Holder or Brokers herein shall desire to give or serve any notice, demand, request,

INITIALS INITIALS

Docusign Envelope ID: 905B52D6-2D42-439D-A239-0FC8E1A741A4

approval, disapproval or other communication, each such communication shall be in writing and shall be delivered personally, by messenger, or by mail, postage prepaid, to the address set forth in this agreement or by facsimile transmission, electronic signature, digital signature, or email.

19.2    Service of any such communication shall be deemed made on the date of actual receipt if personally delivered, or transmitted by facsimile transmission, electronic signature, digital signature, or email. Any such communication sent by regular mail shall be deemed given 48 hours after the same is mailed. Communications sent by United States Express Mail or overnight courier that guarantee next day delivery shall be deemed delivered 24 hours after delivery of the same to the Postal Service or courier. If such communication is received on a Saturday, Sunday or legal holiday, it shall be deemed received on the next business day.

19.3    Any Party or Broker hereto may from time to time, by notice in writing, designate a different address to which, or a different person or additional persons to whom, all communications are thereafter to be made.

### 20. Duration of Offer.

20.1    If this offer is not accepted by Seller on or before 5:00 P.M. according to the time standard applicable to the city of  San Diego, CA  on the date of  Tuesday, July 16, 2024 , it shall be deemed automatically revoked.

20.2    The acceptance of this offer, or of any subsequent counteroffer hereto, that creates an agreement between the Parties as described in paragraph 1.2, shall be deemed made upon delivery to the other Party or either Broker herein of a duly executed writing unconditionally accepting the last outstanding offer or counteroffer.

### 21. LIQUIDATED DAMAGES.  (This Liquidated Damages paragraph is applicable only if initialed by both Parties).
THE PARTIES AGREE THAT IT WOULD BE IMPRACTICABLE OR EXTREMELY DIFFICULT TO FIX, PRIOR TO SIGNING THIS AGREEMENT, THE ACTUAL DAMAGES WHICH WOULD BE SUFFERED BY SELLER IF BUYER FAILS TO PERFORM ITS OBLIGATIONS UNDER THIS AGREEMENT. THEREFORE, IF, AFTER THE SATISFACTION OR WAIVER OF ALL CONTINGENCIES PROVIDED FOR THE BUYER'S BENEFIT, BUYER BREACHES THIS AGREEMENT, SELLER SHALL BE ENTITLED TO LIQUIDATED DAMAGES IN THE AMOUNT OF  $250,000.00 . UPON PAYMENT OF SAID SUM TO SELLER, BUYER SHALL BE RELEASED FROM ANY FURTHER LIABILITY TO SELLER, AND ANY ESCROW CANCELLATION FEES AND TITLE COMPANY CHARGES SHALL BE PAID BY SELLER.



Buyer's Initials          Seller's Initials

### 22. ARBITRATION OF DISPUTES. (This Arbitration of Disputes paragraph is applicable only if initialed by both Parties.)

22.1    ANY CONTROVERSY AS TO WHETHER SELLER IS ENTITLED TO LIQUIDATED DAMAGES AND/OR BUYER IS ENTITLED TO THE RETURN OF THE DEPOSIT SHALL BE DETERMINED BY BINDING ARBITRATION ADMINISTERED BY THE JUDICIAL ARBITRATION & MEDIATION SERVICES, INC. ("JAMS") IN ACCORDANCE WITH ITS COMMERCIAL ARBITRATION RULES ("COMMERCIAL RULES"). ARBITRATION HEARINGS SHALL BE HELD IN THE COUNTY WHERE THE PROPERTY IS LOCATED. SUCH CONTROVERSY SHALL BE ARBITRATED BY A SINGLE ARBITRATOR, APPOINTED UNDER THE COMMERCIAL RULES WHO HAS HAD AT LEAST 5 YEARS OF EXPERIENCE IN THE TYPE OF REAL ESTATE THAT IS THE SUBJECT OF THIS AGREEMENT. THE ARBITRATOR SHALL HEAR AND DETERMINE SAID CONTROVERSY IN ACCORDANCE WITH APPLICABLE LAW OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED, THE INTENTION OF THE PARTIES AS EXPRESSED IN THIS AGREEMENT AND ANY AMENDMENTS THERETO, AND UPON THE EVIDENCE PRODUCED AT AN ARBITRATION HEARING. PRE-ARBITRATION DISCOVERY SHALL BE PERMITTED IN ACCORDANCE WITH THE COMMERCIAL RULES OR STATE LAW APPLICABLE TO ARBITRATION PROCEEDINGS. THE ARBITRATOR SHALL RENDER AN AWARD WITHIN 30 DAYS AFTER THE CONCLUSION OF THE HEARING, WHICH MAY INCLUDE ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY PER PARAGRAPH 16 HEREOF AND SHALL BE ACCOMPANIED BY A REASONED OPINION. THE FAILURE OR REFUSAL OF A PARTY TO PAY SUCH PARTY'S REQUIRED SHARE OF THE DEPOSITS FOR ARBITRATOR COMPENSATION OR ADMINISTRATIVE CHARGES SHALL CONSTITUTE A WAIVER BY SUCH PARTY TO PRESENT EVIDENCE OR CROSS-EXAMINE WITNESSES, BUT SUCH WAIVER SHALL NOT ALLOW FOR A DEFAULT JUDGMENT AGAINST THE NON-PAYING PARTY IN THE ABSENCE OF EVIDENCE AND LEGAL ARGUMENT AS THE ARBITRATOR MAY REQUIRE FOR MAKING AN AWARD. JUDGMENT MAY BE ENTERED ON THE AWARD IN ANY COURT OF COMPETENT JURISDICTION NOTWITHSTANDING THE FAILURE OF A PARTY DULY NOTIFIED OF THE ARBITRATION HEARING TO APPEAR THEREAT.

22.2    BUYER'S RESORT TO OR PARTICIPATION IN SUCH ARBITRATION PROCEEDINGS SHALL NOT BAR SUIT IN A COURT OF COMPETENT JURISDICTION BY THE BUYER FOR DAMAGES AND/OR SPECIFIC PERFORMANCE UNLESS AND UNTIL THE ARBITRATION RESULTS IN AN AWARD TO THE SELLER OF LIQUIDATED DAMAGES, IN WHICH EVENT SUCH AWARD SHALL ACT AS A BAR AGAINST ANY ACTION BY BUYER FOR DAMAGES AND/OR SPECIFIC PERFORMANCE.

22.3    NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS SUCH RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.

Buyer's Initials          Seller's Initials

### 23. Miscellaneous.

23.1    **Binding Effect.** This Agreement shall be binding on the Parties without regard to whether or not paragraphs 21 and 22 are initialed by both of the Parties. Paragraphs 21 and 22 are each incorporated into this Agreement only if initialed by both Parties at the time that the Agreement is executed. Signatures to this Agreement accomplished by means of electronic signature or similar technology shall be legal and binding.

23.2    **Applicable Law.** This Agreement shall be governed by, and paragraph 22.3 is amended to refer to, the laws of the state in which the Property is located. Any litigation or arbitration between the Parties hereto concerning this Agreement shall be initiated

INITIALS          INITIALS

Docusign Envelope ID: 905B52D6-2D42-439D-A239-0FC8E1A741A4

in the county in which the Property is located.

23.3 **Time of Essence.** Time is of the essence of this Agreement.

23.4 **Counterparts.** This Agreement may be executed by Buyer and Seller in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Escrow Holder, after verifying that the counterparts are identical except for the signatures, is authorized and instructed to combine the signed signature pages on one of the counterparts, which shall then constitute the Agreement.

23.5 **Waiver of Jury Trial.** THE PARTIES HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING INVOLVING THE PROPERTY OR ARISING OUT OF THIS AGREEMENT.

23.6 **Conflict.** Any conflict between the printed provisions of this Agreement and the typewritten or handwritten provisions shall be controlled by the typewritten or handwritten provisions. **Seller and Buyer must initial any and all handwritten provisions.**

23.7 **1031 Exchange.** Both Seller and Buyer agree to cooperate with each other in the event that either or both wish to participate in a 1031 exchange. Any party initiating an exchange shall bear all costs of such exchange. The cooperating Party shall not have any liability (special or otherwise) for damages to the exchanging Party in the event that the sale is delayed and/or that the sale otherwise fails to qualify as a 1031 exchange.

23.8 **Days.** Unless otherwise specifically indicated to the contrary, the word "days" as used in this Agreement shall mean and refer to calendar days.

**24. Disclosures Regarding the Nature of a Real Estate Agency Relationship.**

24.1 The Parties and Brokers agree that their relationship(s) shall be governed by the principles set forth in the applicable sections of the California Civil Code, as summarized in paragraph 24.2.

24.2 When entering into a discussion with a real estate agent regarding a real estate transaction, a Buyer or Seller should from the outset understand what type of agency relationship or representation it has with the agent or agents in the transaction. Buyer and Seller acknowledge being advised by the Brokers in this transaction, as follows:

(a) *Seller's Agent.* A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or subagent has the following affirmative obligations: (1) *To the Seller:* A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Seller. (2) *To the Buyer and the Seller:* a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.

(b) *Buyer's Agent.* A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations. (1) *To the Buyer:* A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Buyer. (2) *To the Buyer and the Seller:* a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.

(c) *Agent Representing Both Seller and Buyer.* A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer. (1) In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer: a. A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either Seller or the Buyer. b. Other duties to the Seller and the Buyer as stated above in their respective sections (a) or (b) of this paragraph 24.2. (2) In representing both Seller and Buyer, the agent may not, without the express permission of the respective Party, disclose to the other Party confidential information, including, but not limited to, facts relating to either Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including Seller's willingness to accept a price less than the listing price or Buyer's willingness to pay a price greater than the price offered. (3) The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect their own interests. Buyer and Seller should carefully read all agreements to assure that they adequately express their understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional. Buyer has the duty to exercise reasonable care to protect Buyer, including as to those facts about the Property which are known to Buyer or within Buyer's diligent attention and observation. Both Seller and Buyer should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

(d) *Further Disclosures.* Throughout this transaction Buyer and Seller may receive more than one disclosure, depending upon the number of agents assisting in the transaction. Buyer and Seller should each read its contents each time it is presented, considering the relationship between them and the real estate agent in this transaction and that disclosure. Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer representation agreement or separate document. Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties that may be of interest to this Buyer. Brokers have no responsibility with respect to any default or breach hereof by either Party. The Parties agree that no lawsuit or other legal proceeding involving any breach of duty, error or omission relating to this transaction may be brought against Broker more than one year after the Date of Agreement and that the liability (including court costs and attorneys' fees), of any Broker with respect to any breach of duty, error or omission relating to this Agreement shall not exceed the fee received by such Broker pursuant to this Agreement; provided, however, that the foregoing limitation on each Broker's liability shall not be applicable to any gross negligence or willful misconduct of such Broker.

24.3 *Confidential Information.* Buyer and Seller agree to identify to Brokers as "Confidential" any communication or information given Brokers that is considered by such Party to be confidential.

**25. Construction of Agreement.** In construing this Agreement, all headings and titles are for the convenience of the Parties only and shall not be considered a part of this Agreement. Whenever required by the context, the singular shall include the plural and vice versa. This Agreement shall not be construed as if prepared by one of the Parties, but rather according to its fair meaning as a whole, as if both Parties had prepared it.

INITIALS    INITIALS

Docusign Envelope ID: 905B52D6-2D42-439D-A239-0FC8E1A741A4

**26. Additional Provisions.**
Additional provisions of this offer, if any, are ~~as follows or are~~ attached hereto by ~~an addendum or addenda~~ a Receiver's Addendum consisting of paragraphs  1  through  8 . (If there are no additional provisions write "NONE".)

---

ATTENTION: NO REPRESENTATION OR RECOMMENDATION IS MADE BY AIR CRE OR BY ANY BROKER AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS AGREEMENT OR THE TRANSACTION TO WHICH IT RELATES. THE PARTIES ARE URGED TO:
1. SEEK ADVICE OF COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS AGREEMENT.
2. RETAIN APPROPRIATE CONSULTANTS TO REVIEW AND INVESTIGATE THE CONDITION OF THE PROPERTY. SAID INVESTIGATION SHOULD INCLUDE BUT NOT BE LIMITED TO: THE POSSIBLE PRESENCE OF HAZARDOUS SUBSTANCES, THE ZONING OF THE PROPERTY, THE INTEGRITY AND CONDITION OF ANY STRUCTURES AND OPERATING SYSTEMS, AND THE SUITABILITY OF THE PROPERTY FOR BUYER'S INTENDED USE.

WARNING: IF THE PROPERTY IS LOCATED IN A STATE OTHER THAN CALIFORNIA, CERTAIN PROVISIONS OF THIS AGREEMENT MAY NEED TO BE REVISED TO COMPLY WITH THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED.

---

**NOTE:**
1. THIS FORM IS NOT FOR USE IN CONNECTION WITH THE SALE OF RESIDENTIAL PROPERTY.
2. IF EITHER PARTY IS A CORPORATION, IT IS RECOMMENDED THAT THIS AGREEMENT BE SIGNED BY TWO CORPORATE OFFICERS.

The undersigned Buyer offers and agrees to buy the Property on the terms and conditions stated and acknowledges receipt of a copy hereof.

Date: 2024-Jul-15 | 10:34 PDT

**BROKER**

Lee & Associates - San Diego, Inc.

Attn:  Brent Bohlken 
Title:  Senior Vice President / Principal 

Address:  6310 Greenwich Drive, Ste 240 
San Diego, CA 92122 
Phone:  (858) 453-9990 
Fax:  (858) 453-9965 
Email: ___
Federal ID No.: ___
Broker DRE License #:  01772022 
Agent DRE License #:  01022607 

**BUYER**

 Chris Loughridge, or Assignee 
By: *Chris Loughridge* (DocuSigned)
Name Printed:  Chris Loughridge 
Title: ___
Phone: ___
Fax: ___
Email: ___

By: ___
Name Printed: ___
Title: ___
Phone: ___
Fax: ___
Email: ___

Address: ___
Federal ID No.:  to be furnished by Buyer at close of escrow 

**27. Acceptance.**
27.1  Seller accepts the foregoing offer to purchase the Property and hereby agrees to sell the Property to Buyer on the terms and conditions therein specified.
27.2  In consideration of real estate brokerage service rendered by Brokers, Seller agrees to pay Brokers a real estate Brokerage Fee in a sum equal to  five (5)  % of the Purchase Price to be divided between the Brokers as follows: Seller's Broker  three (3)  % and Buyer's Broker  two (2)  %. This Agreement shall serve as an irrevocable instruction to Escrow Holder to pay such Brokerage Fee to Brokers out of the proceeds accruing to the account of Seller at the Closing.
27.3  Seller acknowledges receipt of a copy hereof and authorizes Brokers to deliver a signed copy to Buyer.

NOTE: A PROPERTY INFORMATION SHEET IS REQUIRED TO BE DELIVERED TO BUYER BY SELLER UNDER THIS AGREEMENT.

Date: 2024-Jul-16 | 00:33 PDT

**BROKER**

 NAI San Diego 

Attn:  Jason Smithson 
Title:  Senior Vice President 

Address:  9820 Willow Creek Road, Ste 100 
San Diego, CA 92131 
Phone: ___
Fax: ___
Email:  jsmithson@naisandiego.com 
Federal ID No.: ___

[INITIALS]

**SELLER**

 TurningPointe, LLC d/b/a Turning Point Strategic Advisors, ("Receiver") acting solely in its capacity as General Receiver for Ideal Property Investments, LLC ("Debtor", and together with Receiver, ("Seller") 
By: *ERIC CAMM* (DocuSigned)
Name Printed:  Eric Camm 
Title: ___
Phone:  (206) 697-0416 
Fax: ___
Email:  Ericc@Turning-Point.com 

[INITIALS]

© 2019 AIR CRE. All Rights Reserved.
OFA-20.30, Revised 10-13-2022

Last Edited: 7/15/2024 10:01 AM
Page 10 of 11

Docusign Envelope ID: 905B52D6-2D42-439D-A239-0FC6E1A741A4

Broker DRE License #: 01222019
Agent's DRE License #: 01477835

By: _____
Name Printed: _____
Title: _____
Phone: _____
Fax: _____
Email: _____

Address: _____
Federal ID No.: _____

AIR CRE * https://www.aircre.com * 213-687-8777 * contracts@aircre.com
NOTICE: No part of these works may be reproduced in any form without permission in writing.

INITIALS
© 2019 AIR CRE. All Rights Reserved.
OFA-20.30, Revised 10-13-2022

INITIALS
Last Edited: 7/15/2024 10:01 AM
Page 11 of 11

## RECEIVER'S ADDENDUM

This Receiver's Addendum ("**Addendum**") is entered into by and between TurningPointe, LLC d/b/a Turning Point Strategic Advisors, ("**Receiver**") acting solely in its capacity as General Receiver for Ideal Property Investments, LLC ("**Debtor**", and together with Receiver, ("**Seller**"), and Chirs Loughridge, or Assignee ("**Buyer**").

This Addendum modifies, amends, and supersedes where conflicts arise between that certain Standard Offer, Agreement and Escrow Instructions for Purchase of Real Estate (Non-Residential) entered into by Debtor and Buyer dated as July 15, 2024 ("**Purchase Agreement**").

Unless otherwise specifically defined herein, each defined term used herein that is defined in the Purchase Agreement shall have the meaning assigned to such term in the Purchase Agreement.

Pursuant to that certain Order Appointing General Receiver entered on May 3, 2024, in the matter of *First Fed Bank v. Ideal Property Investments LLC*, King County, Washington, Superior Court Case No. 24-2-08418-5 SEA, in the Superior Court of King County, Washington ("**Court**") has appointed TurningPointe, LLC d/b/a Turning Point Strategic Advisors as the general receiver to take exclusive possession and control of Debtor and all assets of Debtor, including the real property that is the subject of the Purchase Agreement ("**Property**"), with authority to sell the Property. In its capacity as general receiver, Receiver has authority to seek the Court's approval of a sale pursuant to the Purchase Agreement, subject to the modifications and amendments set forth in this Addendum.

1.  Buyer hereby acknowledges that the Court has appointed Receiver to control the affairs of Debtor and to control, market, and sell the assets of Debtor, including the Property. Buyer further acknowledges and agrees that Receiver is acting solely in its capacity as receiver for Debtor. Receiver does not have access to all information regarding the Property, including the condition of the improvements, if any, potential code violations, prior projects developed by Debtor, and litigation involving Debtor or its affiliates. Any disclosures are limited to the actual knowledge of Receiver, and Receiver has no duty to investigate further. The sale of the Property by Receiver is being made pursuant to court orders appointing the Receiver and authorizing this sale. Buyer is receiving the Property "AS-IS, WHERE-IS, WITH ALL FAULTS," and without any warranties, express or implied. Buyer is encouraged to consult with an independent attorney before signing a binding agreement to purchase the Property.

2.  Buyer on behalf of itself, and any person or entity claiming by, through, or under Buyer ("**Releasing Parties**"), hereby waives all right to recover from and fully and irrevocably releases and holds harmless Seller and its respective employees, officers, directors, members, shareholders, representatives, agents, servants, attorneys, affiliates, parents, subsidiaries, successors and assigns ("**Released Parties**") from any and all claims of any kind whatsoever that Releasing Parties may now have or hereafter acquire against any of the Released Parties, including, without limitation for any costs, loss, liability, damage, expenses (including attorney fees and costs), demand, action or cause of action arising from or related to the Property, documents associated therewith, any latent or patent construction defects or physical conditions, presence or release of hazardous substances, violation of laws, errors, omissions or other conditions, latent or otherwise, including any improvements made by or on behalf of Seller. This release includes claims of which Buyer is presently unaware or which Buyer does not presently suspect to exist which, if known by Buyer, would materially affect Buyer's release of the Released Parties.

3.  **AS-IS SALE; NO WARRANTIES OR REPRESENTATIONS.** BUYER HEREBY ACKNOWLEDGES AND AGREES THAT BUYER WILL PURCHASE AND TAKE TITLE TO THE PROPERTY "AS -IS," WITH ALL FAULTS," AND WITHOUT ANY WARRANTIES, EXPRESS OR IMPLIED. SELLER MAKES NO REPRESENTATIONS OR WARRANTIES AND SHALL NOT IN ANY WAY BE LIABLE FOR OR WITH RESPECT TO: (1) THE CONDITION OF THE PROPERTY OR ANY BUILDINGS, STRUCTURES OR IMPROVEMENTS THEREON, (II) ANY INCOMPLETE OR DEFECTIVE CONSTRUCTION, WHETHER LATENT OR PATENT, AND THE CONFORMANCE OF THE IMPROVEMENTS WITH ANY PLANS OR SPECIFICATION FOR THE PROPERTY; (III) THE SUITABILITY OF THE PROPERTY FOR HABITATION OR FOR BUYER'S INTENDED USE OR FOR ANY USE WHATSOEVER; (IV) ANY APPLICABLE LAWS, ORDINANCES, REGULATIONS, OR ORDERS OF ANY GOVERNMENTAL, QUASI-GOVERNMENTAL, OR OTHER AUTHORITY HAVING JURISDICTION OVER THE PROPERTY; BUILDING, ZONING, OR FIRE LAWS OR REGULATIONS; ANY CONDITIONS OF APPROVAL OR ANY ENTITLEMENTS OR PERMITS OR LACK THEREOF FOR BUYER'S INTENDED USE; OR WITH RESPECT TO THE COMPLIANCE OF THE PROPERTY WITH ANY OF THE FOREGOING; (V) THE EXISTENCE OF SOIL INSTABILITY, SOIL REPAIRS, AND ANY

Docusign Envelope ID: 905B52D6-2D42-439D-A239-0FC8E1A741A4

OTHER SOIL CONDITIONS, SUFFICIENCY OF UNDERSHORING AND DRAINAGE, THE EXISTENCE OF ANY FLOOD PLAINS, WETLANDS OR FLOOD HAZARDS OR SIMILAR CONDITIONS, AND EVERY OTHER MATTER AFFECTING THE STABILITY OR INTEGRITY OF THE PROPERTY AND PROJECT, SOILS, WATER, GEOLOGY, OR THE ENVIRONMENTAL CONDITION OF THE PROPERTY; (VI) THE AVAILABILITY OR EXISTENCE OF ANY WATER, SEWER, GAS, OR OTHER UTILITIES; (VII) THE STATE OF TITLE TO THE PROPERTY, INCLUDING ACCESS TO THE PROPERTY; (VIII) THE VALUE OF THE PROPERTY; (IX) THE PRESENCE OF HAZARDOUS MATERIALS IN, ON, UNDER, OR ABOUT THE PROPERTY; (IX) COMPLIANCE WITH LAWS; AND (X) TRUTH, ACCURACY, OR COMPLETENESS OF ANY OFFERING MEMORANDUM, PROPERTY INFORMATION, OR OF ANY INFORMATION CONTAINED IN THE PROPERTY INFORMATION OR ANY FUTURE OR SUPPLEMENTAL INFORMATION RELATED TO THE PROPERTY INFORMATION OR ANY WORK DONE IN CONNECTION THEREWITH. BUYER ASSUMES THE RESPONSIBILITY AND RISKS OF ALL DEFECTS AND CONDITIONS, INCLUDING SUCH DEFECTS AND CONDITIONS, IF ANY, THAT CANNOT BE OBSERVED BY CASUAL INSPECTION. IN PARTICULAR, BUT WITHOUT LIMITATION, BUYER SHALL BE RESPONSIBLE FOR ANY AND ALL COSTS, LIABILITIES, AND OBLIGATIONS ASSOCIATED WITH HAZARDOUS SUBSTANCES ON OR ABOUT THE PROPERTY. BUYER ACKNOWLEDGES THAT BUYER WILL HAVE THE OPPORTUNITY TO INSPECT THE PROPERTY AND WILL BE RELYING ENTIRELY THEREON AND ON ANY CONSULTANT OR CONSULTANTS BUYER MAY RETAIN. BUYER ACKNOWLEDGES THAT BUYER HAS PERFORMED BUYER'S INVESTIGATIONS OF THE PROPERTY, THAT ANY INFORMATION PROVIDED OR MADE AVAILABLE OR TO BE PROVIDED OR MADE AVAILABLE TO BUYER BY SELLER OR ITS AGENTS, BROKERS, REPRESENTATIVES, OR OTHERS WAS PROVIDED OR MADE AVAILABLE SOLELY AS A COURTESY, AND THAT BUYER HAS THE SOLE RESPONSIBILITY FOR DETERMINING THE EXISTENCE OR NONEXISTENCE OF ANY FACT MATERIAL TO BUYER'S DECISION TO PURCHASE THE PROPERTY.

4. Buyer acknowledges that, as a condition to either party incurring any obligation to close the sale of the Property, the Court must enter an Order approving the sale of the Property to Buyer. The Closing Date is hereby extended and may occur any time that is 10 days after Court approval. Buyer further acknowledges and agrees that the Purchase Agreement and the transaction(s) contemplated thereby may be subject to objections by interested parties who may request that the Court not approve such transaction. If the Court declines to enter an Order approving a sale of the Property to Buyer, this transaction shall automatically terminate, and, other than with regard to Buyer's surviving indemnification obligations, if any, Seller and Buyer shall be relieved of any liability or obligation under the Purchase Agreement.

Seller to deliver (1) income and expense statement if available and (2) copies of the order appointing the Receiver and authorizing the Receiver's sale of the Property.

5. Buyer acknowledges that the Court may require the sale of the Property to be subject to higher and better offers, and that the Court may authorize bidding in excess of Buyer's proposed purchase price. In the event of any such overbid scenario, Buyer shall have the right, but not the obligation, to participate in any further bid proceeding. In the event that the Court-ordered bidding procedures result in award of the sale to a party other than Buyer, Seller shall return the Earnest Money to Buyer and may thereafter terminate the Purchase Agreement with written notice to Buyer. In the event of such termination, Seller shall not be deemed in default, and Buyer shall have no claim or cause of action against Seller other than for return of the Earnest Money.

6. Buyer hereby acknowledges that neither it nor any of its members are related to nor does Buyer or any of its members have any interest in Seller or Receiver or any of their respective employees, officers, directors, member, shareholders, representative, agents, servants, attorneys, affiliates, parents, subsidiaries, successors and assigns.

7. Notwithstanding anything in the Purchase Agreement to the contrary, Seller shall convey title to the Property by Receiver's Deed.

8. Except to the extent amended hereby, all terms, provisions, and conditions of the Purchase Agreement and all documents executed in connection therewith, shall continue in full force and effect and shall remain enforceable and binding in accordance with their respective terms.

[SIGNATURES ON FOLLOWING PAGE]

**TurningPointe, LLC** in its capacity as general receiver for Ideal Property Investments, LLC

**Chris Loughridge, or Assignee**

―DocuSigned by:
*ERIC CAMM*
Eric Camm, Director

Date: 2024-Jul-16 | 00:33 PDT

―DocuSigned by:
*Chris Loughridge*
Chris Loughridge

Date: 2024-Jul-15 | 10:34 PDT

Docusign Envelope ID: 905B52D6-2D42-439D-A239-0FC8E1A741A4

## EXHIBIT "A"
## LEGAL DESCRIPTION

LOT 4 LOT 3& TR 006396 (APN: 228-420-35-00) commonly known as 530 Opper Street, Escondido, CA 92029.



## NOTICE TO OWNERS, BUYERS AND TENANTS REGARDING
## ENVIRONMENTAL MATTERS, AMERICANS WITH DISABILITIES ACT & TAX MATTERS

### ENVIRONMENTAL MATTERS

It is essential that all parties to real estate transactions be aware of the health, liability and economic impact of environmental factors on real estate. LEE & ASSOCIATES does not conduct investigations or analyses of environmental matters and, accordingly, urges the parties to a real estate transaction to retain qualified environmental professionals to determine whether hazardous or toxic wastes or substances (such as asbestos, PCBs and other contaminants or petro-chemical products stored in underground tanks) or other undesirable materials or conditions are present at the property and, if so, whether any health danger or other liability exists. Such substances may have been used in the property.

Various laws and regulations have been enacted at the federal, state and local levels dealing with the use, storage, handling, removal, transport and disposal of toxic or hazardous wastes and substances. Depending upon past, current and proposed uses of the property, it may be prudent to retain an environmental expert to conduct a site investigation and/or building inspection. If hazardous or toxic substances exist or are contemplated to be used at the property, special governmental approvals or permits may be required. In addition, the cost of removal and disposal of such materials may be substantial. Consequently, legal counsel and technical experts should be consulted where there substances are or may be present.

### AMERICANS WITH DISABILITIES ACT

Please be advised that, as an owner or tenant of real property, you may be subject to the Americans with Disabilities Act (the ADA), a Federal law codified at 42 USC Section 12101 et seq. Among other requirements of the ADA that could apply to your property, Title III of the ADA requires owners and tenants of "public accommodations" to remove barriers to access by disabled persons and provide auxiliary aids and services for hearing, vision or speech impaired persons by January 26, 1992. The regulations under Title III of the ADA are codified at 28 CFR Part 36.

We recommend that you and your attorney review the ADA and the regulations, and, if appropriate, your proposed lease or purchase agreement, to determine if this law would apply to you, and the nature of the requirements. These are legal issues. LEE & ASSOCIATES, cannot give you legal advice on these issues.

### ADA ACCESSIBILITY ADDENDUM

☒ has not undergone an inspection by a Certified Access Specialist (CASp); or

☐ has undergone an inspection by a Certified Access Specialist (CASp) and as determined by the CASp, the premises met all applicable construction related accessibility standards pursuant to California Civil Code Section 55.51 et seq.

☐ has undergone an inspection by a Certified Access Specialist (CASp) and as determined by the CASp, the premises did not meet all applicable construction related accessibility standards pursuant to California Civil Code Section 55.51 et seq.

### TAX MATTERS

LEE & ASSOCIATES is not qualified to assist you in this matter or provide you with other legal or tax advice. Sale, lease and other transactions can have local, state and federal tax consequences for the Seller/Lessor and/or Buyer/Tenant. In the event of a sale, Internal Revenue Code Section 1445 requires that all buyers of an interest in any real property located in the United States must withhold and pay over to the Internal Revenue Service (IRS) an amount equal to ten percent (10%) of the gross sales price within ten (10) days of the date of the sale unless the buyer can adequately establish that the seller was not a foreigner, generally by having the seller sign a Non-Foreign Seller Certificate. Note that depending upon the structure of the transaction, the tax withholding liability could exceed the net cash proceeds to be paid to the seller at closing. California poses an additional withholding requirement equal to three and one-third percent (3- 1/3%) of the gross sales price on all individuals (California residents and non-residents alike) and on entities with a last known street address outside of the State of California if the sale price exceeds $100,000.00. Consult your tax and legal advisor. Real estate brokers are not qualified to give legal or tax advice or to determine whether any other person is properly qualified to provide legal or tax advice.

**SELLER**
TurningPointe, LLC d/b/a Turning Point Strategic Advisors, ("**Receiver**") acting solely in its capacity as General Receiver for Ideal Property Investments, LLC ("**Debtor**", and together with Receiver, ("**Seller**"),

**BUYER**
Chris Loughridge, or Assignee

By: _ERIC CAMM_ 2024-Jul-16 | 00:33 PDT
    Eric Camm            Date

By: _Chris Loughridge_ 2024-Jul-15 | 10:34 PDT
    Chris Loughridge      Date



**LEE & ASSOCIATES**
COMMERCIAL REAL ESTATE SERVICES

## DISCLOSURE REGARDING
## REAL ESTATE AGENCY RELATIONSHIP
(As required by the Civil Code)

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

### SELLER'S AGENT ("Seller" includes both a vendor and a lessor)
A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.
An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

### BUYER'S AGENT ("Buyer" includes both a purchaser and a lessee)
A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.
An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

### AGENT REPRESENTING BOTH SELLER AND BUYER
A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer. In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a) A fiduciary duty of utmost care, integrity, honesty, and loyalty in the dealings with either the Seller or the Buyer.
    (b) Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

### SELLER AND BUYER RESPONSIBILITIES
Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.
The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.
If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.
Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.
Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction.

**This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

☒ Buyer ☐ Seller ☐ Lessor ☐ Lessee _Chris Loughridge_ (Chris Loughridge)  Date: 2024-Jul-15 | 10:34 PDT

☐ Buyer ☐ Seller ☐ Lessor ☐ Lessee _____  Date: _____

Real Estate Broker (Firm): LEE & ASSOCIATES COMMERCIAL REAL ESTATE SERVICES, INC., - SAN DIEGO.
BRE Lic. # 01772022

Salesperson or Broker-Associate: Brent Bohlken     BRE Lic. # 01022607
Salesperson or Broker-Associate: _____     BRE Lic. # _____

Docusign Envelope ID: 905B52D6-2D42-439D-A239-0FC8E1A741A4

## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP
## CIVIL CODE SECTIONS 2079.13 THROUGH 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13.** As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings: **(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobile home, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobile home as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(n)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.

**2079.14.** A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.

**2079.15.** In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16.** Reproduced on Page 1 of this form.

**2079.17.** **(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.

**(c)** The confirmation required by subdivisions (a) and (b) shall be the following form:

(Name of Seller's Agent, Brokerage firm and license number) _____ is the broker of (check one): [ ] the Seller; or [ ] both the Buyer and Seller (dual agent).

(Name of Seller's Agent and license number) __ is (check one): [ ] the Seller's Agent (salesperson or broker associate); or [ ] both the Buyer's and Seller's Agent (dual agent).

(Name of Buyer's Agent, Brokerage firm and license number) _____ is the broker of (check one): [ ] the Buyer; or [ ] both the Buyer and Seller (dual agent).

(Name of Buyer's Agent and license number) __ is (check one): [ ] the Buyer's Agent (salesperson or broker associate); or [ ] both the Buyer's and Seller's Agent (dual agent).

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.

**2079.18.** Omitted per added Stats. 2018, Ch. 907, Sec. 46. (AB 1289) Effective January 1, 2019.

**2079.19.** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20.** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21.** **(a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22.** Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.

**2079.23.** **(a)** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship. **(b)** A lender or an auction company retained by a lender to control aspects of a transaction of real property subject to this part, including validating the sales price, shall not require, as a condition of receiving the lender's approval of the transaction, the homeowner or listing agent to defend or indemnify the lender or auction company from any liability alleged to result from the actions of the lender or auction company. Any clause, provision, covenant, or agreement purporting to impose an obligation to defend or indemnify a lender or an auction company in violation of this subdivision is against public policy, void, and unenforceable.

**2079.24.** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.