UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

In re

IDEAL PROPERTY INVESTMENTS LLC.

Debtor.

CASE NO. 24-01421-FPC11

DEBTOR'S MOTION FOR ORDER
ESTABLISHING PROCEDURES FOR
INTERIM PAYMENT OF FEES AND
COSTS TO PROFESSIONALS

Ideal Property Investments, LLC (the "Debtor"), debtor-in-possession in the above-captioned chapter 11 bankruptcy case, moves the Court for entry of an order establishing procedures for interim payment of fees and costs to professionals whose retention by the Debtor and/or Committee of Unsecured Creditors (the "Committee"), has been approved by the court (individually, "Professional" and collectively, "Professionals") (the "Motion"). This Motion is based on the files in this case and is supported by the accompanying Declaration of Daniel J. Bugbee (the "Declaration").

**JURISDICTION, VENUE AND AUTHORITY**

This Court has jurisdiction to hear this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408-09. This is a core proceeding



A Professional Limited Liability Company
155 NE 100ᵗʰ Street, Suite 205   Seattle, WA 98125
p: 206.489.3802 | f: 206.973.8737

pursuant to 28 U.S.C. §§ 157(b)(2). The statutory basis for the relief sought in this Motion is 11 U.S.C. §§ 105(a), 330 and 331, as well as Federal Rules of Bankruptcy Procedure 2016 and Local Bankruptcy Rules 4001-2 and 9013-1 for the United States Bankruptcy Court for the Eastern District of Washington.

**FACTUAL BACKGROUND**

A. <u>The Debtor and the Bankruptcy</u>

Details of the events leading up to the bankruptcy filing by the Debtor are provided in the First Day Declaration. To summarize for purposes of this Motion, the Debtor was placed in a state court receivership on May 3, 2024, at the request of creditor First Federal Bank ("First Fed"). The Debtor owns at least twenty-one parcels of real property (the "Real Property"), and additional parcels are owned by the Debtor's subsidiaries. At the inception of the receivership, the Debtor's former manager and principal actor, Ryan Wear ("Wear"), did not disclose all of the Real Property, and the Debtor is engaged in an ongoing effort to identify all properties owned by the Debtor and its subsidiaries. There are currently at least two federal lawsuits and several state lawsuits alleging that Wear engaged in a massive fraud and Ponzi scheme, and further alleging that the Debtor's Real Property may have been obtained using funds involved in the fraud. The Debtor filed this bankruptcy proceeding because the state-court receivership was inadequate to allow for orderly liquidation of the Real Property, as title companies were unwilling to insure the receivership sales. The petition also provided a much-needed nationwide automatic stay that will be recognized by all creditors.

As indicated in Exhibit A to the First Day Declaration, each parcel of Real Property has a senior secured creditor, and in some cases, a junior secured creditor. The junior secured creditor on nearly all the Real Properties is First Fed, who is also in first position on several of the Real Properties. First Fed

DEBTOR'S MOTION FOR ORDER ESTABLISHING PROCEDURES
FOR INTERIM PAYMENT OF FEES AND COSTS TO
PROFESSIONALS - 2



A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
p: 206.489.3802 | f: 206.973.8737

appears to have taken a blanket lien on Debtor's Real Properties in 2023 to secure loans made to an entity related to Debtor, Creative Technologies LLC, in 2020 and 2021, which totaled over $24,148,034.80 as of May 2024. Putting aside the blanket second-position lien, based on the values of the Real Properties, each first position lien besides one is well protected by an equity cushion behind it on every property but one and this case is expected to be administratively solvent, with an anticipated hoped-for distribution to unsecured creditors of a couple million.

B. The Professionals

As the Debtor was previously in receivership, with limited finances and chaotic books and records, its ability to retain and fully pay counsel pre-petition was limited. DBS Law was retained to provide advice to the Receiver about bankruptcy options and provided representation until September 4, 2024. However, the Receiver was only able to pay DBS Law a retainer of $10,000 from available funds in the estate. As the need for the bankruptcy filing became urgent very quickly, due to title issues, involuntary bankruptcy proceedings commenced in the Southern District of Texas, the lack of a nationwide automatic stay and concerns over continued efforts by Debtor's former principal, Ryan Wear, to control and leverage the Debtor's assets despite the Receivership, DBS Law was never able to be compensated for its pre-petition work and continues to hold the initial $10,000 advanced fee retainer in its trust account. DBS Law waived its pre-petition fees and jumped into this large case with a complicated creditor constituency all demanding immediate action, with a very small retainer to cover the expected fees.

DBS Law is comprised of four attorneys, three of whom have appeared in and are dedicated to this case: Daniel J. Bugbee, Laurie M. Thornton, and Dominique R. Scalia. Between them, there is over 50 years of bankruptcy experience – covering nearly every aspect of the code, including



A Professional Limited Liability Company
155 NE 100ᵗʰ Street, Suite 205  Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737

substantial work on behalf of creditors, committees, trustees, and other interested parties in Chapter 11 cases. DBS Law has taken swift action to stabilize the estate, begin the process of selling the real properties to fund recoveries for creditors, get a budget formalized and approved (on an interim basis for now), and get the Debtor on track for confirmation of a Plan of Reorganization. But as a small firm, DBS now has seventy-five percent of its attorneys committed to this case and has a substantial amount of its resources working on this singular case. In the first month after filing, approximately half the firm's billings were related to the Ideal matter. As a result of the workload of this case, DBS has turned away new engagements.

Similarly, Debtor's chosen Chief Restructuring Firm, J. Fanelli Properties LLC, is an experienced and knowledgeable firm in real estate management and liquidation. Fanelli Properties was retained by the Debtor post-petition without any retainer. Fanelli Properties' staff is also dedicating a substantial portion of its time to this case, and immediately began working to analyze the Debtor's real estate portfolio and assist in stabilizing and protecting the Debtor's assets and positioning them for sale to ensure recoveries to creditors.

## I.     RELIEF REQUESTED

The Debtor respectfully requests entry of an order pursuant to 11 U.S.C. §§ 105(a), 330, and 331, as well as Federal Rule of Bankruptcy Procedure 2016 and Local Bankruptcy Rule 2016-1, establishing procedures for the interim payments of fees and costs to professionals retained by the Debtor or any committee appointed pursuant to 11 U.S.C. § 1102 and approved by the court.

## II.     LEGAL ARGUMENT

This is a complex case with many moving parts, a large number of real properties to be stabilized and eventually marketed and sold, and active secured and unsecured creditors. As a result,



A Professional Limited Liability Company
155 NE 100ᵗʰ Street, Suite 205   Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737

DBS Law anticipates that itself and the Debtor's other Professionals (including any counsel for an Unsecured Creditors Committee) will devote substantial amounts of time and energy to this bankruptcy case and incur, collectively, a substantial amount of fees and costs each month. DBS Law further anticipates that the Professionals will forgo other work that would pay on a monthly basis. The Professionals generally depend on monthly cash flow to pay ongoing salaries and expenses. Accordingly, Debtor brings this motion on behalf of all Professionals so that they will not have to wait for a protracted period of time to receive any partial payment for their services.

A. Proposed Payment Procedures

The Debtor requests that Professionals be authorized to obtain, on a monthly basis, reimbursement for their costs and payment of eighty percent (80%) of their fees as described in the declarations submitted in support of the professionals' applications for employment (the "*Employment Applications*"). Each Professional would be authorized to receive reimbursement for all its costs and payment for eighty percent (80%) of its fees ten (10) days after sending a billing statement to the (a) Debtor; (b) the office of the U.S. Trustee; (c) the members of the Committee, or to counsel for the Committee once counsel has been employed; and (d) counsel who have requested electronic notice (collectively, "Notified Parties"). If a Notified Party objects, the objection must state the specific fees or costs objected to, and the Professional would be authorized to seek an order approving payment of those fees and costs on ten (10) days' notice to the Notified Parties. All un-objected fees and costs may be paid as set forth in the billing statement. The Professionals will submit a § 330 fee application to the Court for hearing not more often than once every one-hundred twenty (120) days.

DBS | LAW
A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
p: 206.489.3802 | f: 206.973.8737

B.  Analysis

In *United States Trustee v. Knudsen Corp.*, 84 B.R. 668 (B.A.P. 9th Cir. 1988), the Ninth Circuit Bankruptcy Appellate Panel held that it is appropriate to approve a fee payment and application procedure that permits periodic post-petition payments where the following four conditions are met:

1.  The case is an unusually large one where an exceptionally large amount of fees accrues each month;

2.  An undue hardship would be placed on the professional if he or she were forced to wait an extended period of time for payment;

3.  The professional has the ability to respond to any reassessment; and

4.  The payment procedure is the subject of a noticed hearing prior to any payment under the procedure.

*Id.* at 672.

Courts in the Ninth Circuit have acknowledged that the *Knudsen* interim payment procedures may often be necessary today, whereas this was not the case when the Bankruptcy Code was enacted in 1978 with its schedule of fee applications only once every four months. As one court explained:

> The provision for hearings every 120 days was intended to – and did – put bankruptcy counsel on essentially the same payment schedule as other lawyers. In 1978, when the Code was enacted, attorneys customarily billed their clients on a quarterly basis. Times have changed. Lawyers now run their practices in a more business-like fashion. Computerization has simplified and speeded the billing process. As widely documented in the legal press, the billing cycle has shifted to monthly statements. The 120-day provision of Section 331, intended to be a help to lawyers in 1978, has become a straitjacket for the lawyers of the '90s. Thus, even payments every 120 days no longer compensate bankruptcy attorneys on a fully equivalent basis with their non-bankruptcy colleagues.



A Professional Limited Liability Company
155 NE 100ᵗʰ Street, Suite 205   Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737

*In re Commercial Consortium of California*, 135 B.R. 120, 123-124 (Bankr. C.D. Cal. 1991). Here, the establishment of the proposed interim payment procedures will ensure that the Professionals will not have to wait for quarterly payments and that all Professionals will be treated equally.

Since *Knudsen*, courts in the Ninth Circuit have, in large and complex cases, allowed professionals to be compensated on an interim basis provided that fees and costs are subject to final review and a hearing. For example, in *In re County of Orange*, 179 B.R. 195, 198-99 (Bankr. C.D. Cal. 1995), interim payment procedures similar to those in *Knudsen* were implemented in a Chapter 9 setting, whereby certain committee and subcommittee professionals would be paid more frequently than every 120 days. *See also, In re Home Express, Inc.*, 213 B.R. 162 (Bankr. N.D. Cal. 1997) (court approved payment procedure whereby chapter 11 professionals were paid fees on a monthly basis by the debtor-in-possession, assuming the fees were acceptable); *In re Lotus Properties, LP*, 200 B.R. 288, 398 (Bankr. C.D. Cal. 1996) (finding that the message behind *Knudsen* and the intent of the U.S. Trustee Guidelines were satisfied by allowing counsel to utilize the proposed fee statement procedure during the initial post petition period); and *In re Commercial Consortium of California*, 135 B.R. 120 (Bankr. C.D. Cal. 1991) (interim Chapter 7 trustee fees appropriate where funds are available and closing is not imminent).

The procedures proposed in this Motion meet each of the *Knudsen* requirements. First, as described above, this is a large case that will require substantial work by the Professionals employed by the Debtor and the Committee. Professionals' fees and costs, including fees and costs that will be incurred by any Committee counsel, have been taken into account and incorporated into the Debtor's cash collateral budget.



A Professional Limited Liability Company
155 NE 100ᵗʰ Street, Suite 205   Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737

Second, forcing the Professionals to wait a prolonged period of time for payment would create an undue hardship on them. While the hardship may vary with respect to each Professional, it would be appropriate to treat all Professionals in an equal manner, including those employed by a Committee. Due to the size of this case, the Professionals will likely be required to devote substantial time and energy to the case and forgo other work that would pay on a monthly basis.

Third, the Professionals have the ability to respond to a potential reassessment by the court. In *Knudsen*, the BAP held that "[i]f the funds are recoverable and if adequate opportunity for review of detailed fee requests is provided, the court's control over the funds is not diminished." Here, the Professionals' submission of monthly reports and fee applications for hearing by the court not less frequently than every one-hundred twenty (120) days would provide adequate opportunity to review.

Fourth, this Motion and the payment and noticing procedures it proposes to establish will ultimately be subject to a noticed hearing for approval of all fees and costs by Professionals.

## CONCLUSION

The proposed interim fee procedures comply with the *Knudsen* requirements and are reasonable and appropriate. Based on the foregoing, the Debtor respectfully requests that the court enter an order authorizing monthly reimbursement of costs and payment of fees to Professionals as described in this motion.



DBS│LAW

A Professional Limited Liability Company
155 NE 100ᵗʰ Street, Suite 205   Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737

DATED this 8th day October 2024.

DBS LAW

By /s/ Daniel J. Bugbee
        Daniel J. Bugbee, WSBA # 42412
        Laurie M. Thornton, WSBA # 35030
        Dominique Scalia, WSBA # 47313
        *Attorneys for Debtor*



## CERTIFICATE OF SERVICE

I hereby certify on the date set forth below, I caused to be electronically filed the foregoing Motion, the supporting Declaration of Daniel J. Bugbee, and the Proposed Order with the Clerk of the Court using the CM/ECF system which causes parties who are registered ECF participants to be served by electronic means.

Dated this 8th day of October 2024 at Seattle, Washington.

By /s/ Daniel J. Bugbee
Daniel J. Bugbee, WSBA # 42412



DBS | LAW

A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737