UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | CASE NO. 24-01421-FPC11 |
| IDEAL PROPERTY INVESTMENTS LLC, | **DEBTOR'S SECOND AMENDED** |
| Debtor. | **PLAN OF LIQUIDATION** |

Debtor Ideal Property Investments LLC (the "Debtor"), debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case, proposes this Amended Plan of Liquidation (the "Plan") pursuant to Chapter 11 of the Bankruptcy Code.

### ARTICLE I.
### DISCLOSURE STATEMENT

The Debtor has filed Disclosure Statement (the "Disclosure Statement") pursuant to 11 U.S.C. § 1125 and Bankruptcy Rule 3016(c). The Disclosure Statement has been approved by the Bankruptcy Court prior to this Plan being submitted to Creditors. The Disclosure Statement provides useful information to aid and assist Creditors in voting on the Plan. YOU ARE URGED TO READ THE DISCLOSURE STATEMENT WITH CARE IN EVALUATING THE IMPACT OF THE PLAN UPON YOUR CLAIMS.

### ARTICLE II.
### DEFINITION OF TERMS

#### A. Definitions

A term used in this Plan that is not defined below and that is defined in the Bankruptcy Code shall have the meaning ascribed in the Bankruptcy Code. When used in this Plan, the following terms shall have the meanings specified below, unless the context otherwise requires:

DBS|LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

1. **Acquisition Secured Claims**: The asserted Secured Claims of (i) Cadence Bank (2709 Electronic Lane; Dallas, TX 75220); (ii) Cadence Bank (1924 North Ave W.; Missoula, MT 59801; (iii) Jo A. Duke Properties, Inc. (343 Johnny Clark, Road; Longview, TX 75605); (iv) Avatar REIT LLC (730 Middle Tenn Blvd; Murfreesboro, TN 37129); (v) First Security Bank of Nevada (7924 W Arby Ave; Las Vegas, NV 89113). For avoidance of doubt, the First Federal Acquisition Loans are not considered Acquisition Secured Claims.

2. **Administrative Expense Claim**: An Allowed Claim entitled to priority under § 507(a)(2) of the Bankruptcy Code, including (a) Claims incurred by the Debtor since the Petition Date and allowed by the Court of a type described in § 503(b) of the Code; (b) all Allowed Claims of Professional Persons pursuant to §§ 330 and 331 of the Code and Bankruptcy Rule 2016; and (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

3. **Administrative Claims Bar Date**: The deadline for filing requests for payment of Administrative Expense Claims, which: (i) with respect to Administrative Expense Claims other than Professional Fee Claims, shall be thirty (30) days after the Effective Date; and (ii) with respect to Professional Fee Claims, shall be sixty (60) days after the Effective Date.

4. **Affiliate**: An entity as defined in section 101(2) of the Bankruptcy Code when used in reference to the Debtor, and when used in reference to an entity other than the Debtor, means any other entity that is directly or indirectly wholly-owned or controlled by such entity other than a Debtor.

5. **Allowed Claim**: With respect to any Claim against or Interest in the Debtor, (i) any Claim or Interest arising on or before the Effective Date (a) as to which no objection to allowance has been interposed within the time period set forth in this Plan, or (b) as to which any objection has been determined by a Final Order of the Bankruptcy Court to the extent such objection is determined in favor of the respective holder, (ii) any Claim or Interest as to which the liability of the Debtor and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, (iii) any Claim or Interest expressly Allowed under this Plan, or (iv) any Claim that is listed in the Debtor's Schedules as liquidated, non-contingent, and undisputed.

6. **Avoidance Actions**: Any and all actual or potential avoidance, recovery, subordination, or other similar Claims, Causes of Action, or remedies that may be brought by or on behalf of the Debtor or its Estate, or other authorized parties, under the Bankruptcy Code or applicable non-bankruptcy law, including claims, causes of action, or remedies arising under chapter 5 of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes and common law, including fraudulent transfer laws, regardless whether such action has been commenced prior to the Effective Date.

7. **Avoidance Proceeds**: Any proceeds arising from Avoidance Actions, including the proceeds from any settlements thereof.

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

**8.** **Ballot**: The form for acceptance or rejection of the Plan distributed to those Creditors entitled to vote on the Plan. Any Ballot that is executed by the Holder of an Allowed Claim but that does not indicate an acceptance or rejection of the Plan shall be deemed an acceptance of the Plan.

**9.** **Bankruptcy Code or Code**: The Bankruptcy Code enacted November 6, 1978, as set forth in Title 11 of the United States Code, and as amended thereafter.

**10.** **Bankruptcy Court or Court**: The United States Bankruptcy Court for the Eastern District of Washington, at Spokane, before which the Chapter 11 Case is pending, or if that Court ceases to exercise jurisdiction over the Chapter 11 Case, the Court that does exercise jurisdiction.

**11.** **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**12.** **Business Day**: Any day except Saturday, Sunday or a "legal holiday" as defined in Bankruptcy Rule 9006(a)(6).

**13.** **Cash**: Cash or cash equivalents including, but not limited to, bank deposits, wire transfers, checks, and other similar items.

**14.** **Cause(s) of Action**: Any claim, cause of action (including Avoidance Actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, including without limitation claims for consequential or punitive damages, assertable directly or derivatively, whether arising before, on, or after the applicable Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

**15.** **Chapter 11 Case**: The chapter 11 case of the Debtor pending before the Bankruptcy Court under Case No. 24-01421-FPC11.

**16.** **Claim:** A claim, as defined in § 101(5) of the Bankruptcy Code.

**17.** **Claims Bar Date**: The deadline for filing Proofs of Claim in this Chapter 11 Case by any Secured Creditor other than Governmental Units of November 14, 2024, or for any Unsecured Creditor other than Governmental Units by December 9, 2024, and March 4, 2025, the deadline for filing Proofs of Claim by Governmental Units.

**18.** **Claim Objection Deadline**: The first Business Day that is at least 180 calendar days after the Effective Date, which may be extended one or more times by the Bankruptcy Court.

**19.** **Class**: A class of Claims or Interests as defined in Article IV of this Plan.

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

**20. Collateral:** Any property or interest in property of a Debtor or its Estate subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or otherwise.

**21. Committee:** The joint official committee of unsecured creditors of the Debtor initially appointed in the Chapter 11 Case by the U.S. Trustee on October 7, 2024 as described in further detail in the Notice of Appointment of Official Committee of Unsecured Creditors [ECF No. 115], and reconstituted and expanded on November 18, 2024 [ECF No. 274].

**22. Confirmation:** The entry of the Confirmation Order by the Bankruptcy Court

**23. Confirmation Hearing:** means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**24. Confirmation Order:** The order of the Bankruptcy Court that confirms the Plan.

**25. Contingent Claim:** Any Claim that is Scheduled or Filed as contingent.

**26. Contributed Claim:** Any claims of a OpCo Investor has against any person or entity and are related in any way to the Debtor, its predecessors, or its respective affiliates or the Opco Entities, including but not limited to (a) all Causes of Action based on, arising out of, or related to the marketing, sale, and issuance of any investments in the Debtor, including any or guarantees; (b) all Causes of Action for unlawful dividend, fraudulent conveyance, fraudulent transfer, voidable transaction, or other avoidance claims under state or federal law; (c) all Causes of Action based on, arising out of, or related to the misrepresentation of any of the Debtor's financial information, or business operations; (d) all Causes of Action based on, arising out of, or related to any failure to disclose, or actual or attempted cover up of any of the conduct described in the Disclosure Statement, including in respect of any alleged fraud related thereto provided however, that Opco Investors who are borrowers under any loan from a Third Party (except for First Fed) who elect to contribute claims shall not contribute their claims and defenses against any lender relating to such third party financing. Contributed claims shall not include any claims an OpCo Investor may make against applicable policies of insurance for their losses arising from the Debtor's conduct and/or such OpCo Investor's claims in the Chapter 11 case.

**27. Creditor:** A "creditor" within the meaning of § 101(10) of the Bankruptcy Code.

**28. Debtor:** Ideal Property Investments, LLC, the debtor in possession in this Chapter 11 Case.

**29. Disallowed:** With respect to any Claim or Interest, that such Claim or Interest has been determined by a Final Order or specified in a provision of the Plan not to be Allowed.

**30. Disbursing Agent:** The entity or person responsible for making the required disbursement under the Plan following the Effective Date.

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

**31.    Disclosure Statement**: means the disclosure statement relating to this Plan, including, without limitation, all exhibits, schedules, supplements, amendments, and modifications thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**32.    Disputed**: With respect to a Claim or Interest, that (a) is neither Allowed nor Disallowed under the Plan or a Final Order, nor deemed Allowed under sections 502 or 503 of the Bankruptcy Code; or (b) the Debtor or any parties in interest have interposed a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined by a Final Order. If the Debtor, or any parties in interest, dispute only a portion of a Claim, such Claim shall be deemed Allowed in any amount the Debtor, or any parties in interest, do not dispute, and Disputed as to the balance of such Claim.

**33.    Disputed and Contingent Claims Reserve**: Any reserve or account or fund for Claims that are Disputed, contingent, or have not yet been Allowed, or where the Holder is or may be subject to an Avoidance Action or other Retained Cause of action. All Other Secured Claim (Class 2) and any Disputed Claim amounts shall be held in a Disputed and Contingent Claims Reserve.

**34.    Distributable Assets**: Except as provided otherwise in the Plan, all real and personal property of the Debtor and its estate, and any and all proceeds thereof, including all property of the Estate within the scope of Chapter V of the Bankruptcy Code. For the avoidance of doubt, Distributable Assets do not include any amounts in the Professional Fee Reserve except as explicitly provided herein.

**35.    Distribution**: Any initial or subsequent issuance, payment, or transfer of consideration made under the Plan.

**36.    ECF No.**: The identifying number of the relevant document as reflected on the docket for the Chapter 11 Case that is maintained by the Bankruptcy Court.

**37.    Effective Date**: The first Business Day following the effective date of the OpCo Bankruptcy Plan in the OpCo Bankruptcies.

**38.    Entity:** An "entity" as defined in § 101(15) of the Bankruptcy Code.

**39.    Estate:** The Estate created for the Debtor pursuant to § 541 of the Bankruptcy Code.

**40.    Estate Asset**: All of the rights, title, and interests of a Debtor in, and to property of whatever type or nature.

**41.    Exculpated Parties**: Collectively, (1) the Debtor and its Related Parties and (2) the Committee and its Related Parties. For the avoidance of doubt, Exculpated Parties shall not include any Excluded Party.

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

**42.     Excluded Parties**: (1) Any prepetition insider of the Debtor; (2) any non-debtor affiliates of the Debtor or insider of any such non-debtor affiliates, including but not limited the OpCo Entities; (3) any prepetition employee of the Debtor involved in any way in the operations of the Debtor; (4) and any other Person (including any "broker," salesperson, consultant, affiliated entity, or professional) involved in any way in the prepetition operation of the Debtor. For the avoidance of doubt, Excluded Parties shall not include any receiver, or any consultant retained or engaged by the Debtor during the Chapter 11 Case.

**43.     Final Decree**: An order entered pursuant to Bankruptcy Code section 350 and Bankruptcy Rule 3022 closing the Chapter 11 Case.

**44.     Final Fee Applications**: The final requests or applications for payment of Professional Fee Claims.

**45.     Final Order**: An order of any court as to which all appeal rights have either expired or been exhausted.

**46.     First Fed Acquisition Loans**: The secured claims asserted by First Federal Bank related to Debtor's purchase of two separate real properties located in (1) Tualatin, OR (the "Tualatin Loan") and (2) Everett, Washington (the "Beverly Park Loan").

**47.     First Fed Adversary**: The adversary proceeding styled *Ideal Property Investments LLC v. First Fed Bank*, Adv. Case No. 24-8003, initiated by the Debtor against First Fed alleging fraudulent transfers and seeking declaratory and injunctive relief, filed on November 8, 2024, and is currently pending in this Court, the resolution of which is subject to the First Fed Settlement Motion.

**48.     First Fed Blanket Lien Claim**: The secured claim asserted by First Federal against the First Fed Blanket Lien Properties.

**49.     First Fed Blanket Lien Properties**: The Debtor's Real Properties pledged in connection with that that certain Credit Accommodation and Enhancement Agreement dated February 16, 2023, consisting of Real Property with the following address: (1) 27602 40th Ave NW, Stanwood, WA 98292; (2) 27423 40th Ave NW, Stanwood, WA 98292; (3) 7925 W Arby Avenue, Las Vegas, NV 89113; (4) 4237 East Magnolia Street, Phoenix, AZ 85034; (5) 877 Orange Ave W, Tallahassee, FL 32310; (6) 700 S Arizona Blvd, Coolidge, AZ 85128; (7) 1930 N 22nd Avenue, Phoenix, AZ 85009; (8) 653 East 20th St., Yuma, AZ 85365; (9) 530 Opper Street, Escondido, CA 92029; (10) 2709 Electronic Lane, Dallas, TX 75220; (11) 3200 Shoreline Drive, Camano Island, WA 98282; (12) 12 Emery Road, Oroville, WA 98844; and (13) 3811 188th St NE, Arlington, WA.

**50.     First Fed Release:** The release given by each of the Releasing Creditors and the Releasing Parties to First Fed, as set forth in Article XIII of the Plan.

**51.     First Fed Parties:** First Fed Bank and First Northwest Bancorp.

**DBS | LAW**
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

**52.     First Fed Released Parties:** The First Fed Parties and their respective current and former officers, directors, employees, agents, attorneys, insurers, loan participants (including the Main Street SPV), and trustees.

**53.     First Fed Settlement:** The full and final settlement and resolution of all disputes by and between the Debtor, First Fed, the Committee, and the Opco Debtors, as set forth in Article V and Article XIII and the First Fed Settlement Order.

**54.     First Fed Settlement Motion:** The Joint Motion for Entry of an Order (I) Approving the Settlement Among the Debtor, the Committee, the OpCo Debtors, and First Fed and (II) Granting Related Relief. [ECF No. 677]

**55.     First Fed Settlement Order**: The Order approving the First Fed Settlement [ECF ].

**56.     Governmental Unit**: A "governmental unit" as defined in § 101(27) of the Bankruptcy Code.

**57.     Holder:** A holder of a Claim or Interest, as the case may be.

**58.     Impaired:** With respect to any Class, a Class that is impaired as set forth in section 1124 of the Bankruptcy Code.

**59.     General Unsecured Claims:** Any unsecured, non-priority Claim asserted against, or arising from, an original obligation incurred by the Debtor or an OpCo Entity, including the OpCo Investor Claims, or a Claim that (1) arises against  any entity that has merged with an OpCo Entity or (2) is a claim asserted in an interest or property currently being administered by, and subject to, the OpCo Bankruptcies; and is not otherwise secured, subordinated, or entitled to priority in the Chapter 11 Case under the Bankruptcy Code or any Final Order of the Bankruptcy Court.

**60.     Insurance Policies**: All insurance policies that have been issued to, or provide coverage of, any of the Debtor's Assets and all agreements, instruments, or documents relating thereto.

**61.     Interest:**  Any previously issued or granted, and outstanding: common stock, preferred stock, Membership Interests, or other ownership interests in the Debtor outstanding immediately prior to the Effective Date, including restricted stock, treasury stock, and all options, warrants, calls, rights, puts, awards, commitments, appreciation rights, or any other agreements of any character to convert, exchange, exercise for, or otherwise receive any such common stock, preferred stock, Membership Interests, or other ownership interests.

**62.     Lease(s):** An unexpired and enforceable lease of a unit in the Real Property under which the Debtor is the lessor.

**63.     Lessees:** Collectively and at any time, the lessees under Leases.

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

**64.** **Lien**: Any lien, security interest, pledge, title retention agreement, encumbrance, leasehold, charge, mortgage, or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

**65.** **Membership Interests:** Membership interests in the Debtor, including any Merged Subsidiaries of the Debtor.

**66.** **Merged Subsidiaries:** The Entities of 1118 Virginia Street LLC; 343 Johnny Clark LLC; Ideal Murfreesboro LLC; and Ideal Greenleaf LLC, merged into the Debtor pursuant to Court Order on November 12, 2024 [ECF No. 261].

**67.** **Net Distributable Proceeds**: The Distributable proceeds of the Wind Down Debtor from and after the Effective Date once all such assets have been reduced to Cash (including, for the avoidance of doubt, the Net Proceeds from the Sale of the Real Properties and any settlement funds from the settlement of any Cause of Action), *less* (1) amounts necessary to fund the payment of the Professional Fee Claims, (2) amounts as applicable, and except as otherwise agreed by the Holders of Allowed Administrative Claims, (3) amounts as applicable, for the payment of Priority Claims; (4) amounts as applicable, for the payment of the Class 4 Claim; (5) amounts as applicable to effectuate the Wind Down Debtor's Budget; (6) any amounts in a Disputed and Contingent Claims Reserve necessary for the payment of an Allowed Class 2 Claim or Disputed Claim.

**68.** **Net Proceeds**: Gross proceeds actually collected from the disposition of an asset, less all costs incurred in completing such disposition, including without limitation all sales commissions, fees and expenses, and all taxes arising in connection with such disposition.

**69.** **Notice and Hearing**: Proceedings as contemplated under Bankruptcy Code § 102(1).

**70.** **OpCo Assigned Causes of Action**: Causes of Action excluding (1) a Real Property Cause of Action and (2) the First Fed Adversary.

**71.** **OpCo Bankruptcies**: The Chapter 11 Chapter 11 Cases of Creative Technologies, LLC (Case No. 24-01866-FPC11); Water Station Management LLC (Case No. 24-01864-FPC11); and Refreshing USA, LLC (Lead Case No. 24-01863-FPC11), each pending in the United States Bankruptcy Court for the Eastern District of Washington, at Spokane.

**72.** **OpCo Bankruptcy Plan**: The Chapter 11 Bankruptcy Plan of Liquidation to be filed by the OpCo Entities in the OpCo Bankruptcies Lead Case.

**73.** **OpCo Claims**: The Claims asserted by each of the OpCo Entities against the Debtor based on alleged loans to the Debtor, filed by each OpCo Entity in the initial unsecured amount of $31,703,184.11 but as may be amended and expanded by further discovery.

**74.** **OpCo Final Distribution Date**: the date on which the Wind Down Debtor transfers or assigns all remaining Real Property, Retained Causes of Action, and Net Distributable Proceeds

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

to the Opco Liquidation Trust, which will be no later than December 31, 2025, and which will serve as the date of final distribution on the Allowed Claim of Class 5 and Class 6 of the Plan.

75. **OpCo Entities**: Collectively, Creative Technologies, LLC; Water Station Management LLC; and Refreshing USA, LLC.

76. **OpCo Estates**: The Estates created for the OpCo Entities in the OpCo Bankruptcies pursuant to § 541 of the Bankruptcy Code.

77. **OpCo Investor**: A person or entity other than an insider or entity controlled by an insider (as insider is defined in the Code) holding a Claim or Interest as asserted against the Debtor or the OpCo Entities in the OpCo Bankruptcies, based on or related to an investment in the OpCo Entities, or any investment in an asset sold or purportedly sold by the OpCo Entities, or a franchise agreement with any Debtor executed prior to the Petition Date.

78. **OpCo Investor Claim**: A Claim that is Held by an OpCo Investor, who has filed a Proof of Claim against the Debtor.

79. **OpCo Lessee**: A lessee under a Lease that is an OpCo Entity.

80. **OpCo Liquidating Trust**: The proposed Liquidating Trust as set forth in the OpCo Bankruptcy Plan.

81. **Other Secured Claims**: A Secured Claims that are not an Acquisition Lender Secured Claim. For the avoidance of doubt, "Other Secured Claims" shall <u>not</u> include (1) any secured claims filed against the Debtor by any OpCo Investor for purposes of this Plan or (2) any claim by a Class 5 Claim Holder.

82. **Person:** A "person" as defined in § 101(41) of the Bankruptcy Code.

83. **Petition Date**: September 5, 2024, the date upon which the Debtor's Chapter 11 petition was filed with the Bankruptcy Court commencing the Chapter 11 Case.

84. **Post-Effective Date Indemnified Parties**: The Wind Down CRO and the Wind Down Oversight Committee, and their respective accountants, agents, attorneys, bankers, consultants, financial advisors, investment bankers, professional persons, representatives, and successors and assigns, each in their respective capacity as such.

85. **Plan**: The Debtor's Amended Plan of Liquidation, as such may be amended from time to time.

86. **Plan Supplement**: The ancillary documents regarding the implementation and effectuation of the Plan, which will be filed on or before the date that is seven (7) calendar days prior to the Voting Deadline, as such documents may be amended and supplemented prior to the Confirmation Hearing.

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

**87.      Priority Tax Claims**: Allowed Claims of Governmental Units for the principal amount of a tax within the meaning of § 507(a)(8) of the Code, and statutory interest accruing thereon prior to the Petition Date.

**88.      Professional Person**: A Person, including a trustee (if one is appointed), retained or to be compensated pursuant to §§ 326, 327, 328, 330, and/or 1103 of the Bankruptcy Court.

**89.      Professional Fee Claims**: A Claim by a Professional Person seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred from and after the Petition Date through and including the Effective Date, as well as any fees associated with the preparation of Fee Applications after the Effective Date.

**90.      Professional Fee Escrow Account:** An interest-bearing escrow account funded by the Debtor on the Effective Date, or as reasonably soon thereafter, in an amount equal to the Professional Fee Reserve Amount, pursuant to Article III.B of the Plan.

**91.      Professional Fee Reserve Amount**: The total amount of Professional Fee Claims estimated in accordance with Article III.B of the Plan.

**92.      Property Income**: The rents, fees and other income that may be generated by operating the Real Property.

**93.      Pro Rata**: Proportionally, so that the ratio of the amount distributed on account of a particular Allowed Claim to the amount of such Allowed Claim is the same as the ratio of the amount distributed on account of all Allowed Claims in the Class of which such particular Allowed Claim is a member to the total amount of all Allowed Claims in such Class.

**94.      PSA**: Any purchase and sale agreement for any Asset of the Debtor entered into by the Debtor and a third-party after the Petition Date and prior to the Effective Date.

**95.      Real Property(ies):** Real property and improvements owned by the Debtor, comprising warehouses and land for development, as listed herein, and including all architectural plans, engineering plans, surveys, geotech, site plans, developers' agreements, approvals, performance bonds, cash bonds, utilities, landscape plans, environmental plans, special inspections, and permits associated with the Debtor's remaining properties.

**96.      Real Property Causes of Action:** All Causes of Action of the Debtor, including (but not limited to) Avoidance Actions, related to or arising under an asserted secured claim against the Real Properties.

**97.      Rejection Claims:** Any claim for monetary damages as a result of the rejection of any prepetition executory contract or unexpired lease, whether rejected pursuant to the Confirmation Order or otherwise.

**98.      Rejection Claims Bar Date:** To the extent not previously established by prior Order, the first Business Day that is thirty (30) calendar days after the Effective Date.

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

**99.** **Related Parties:** Collectively, all respective accountants, agents, attorneys, consultants, financial advisors, professional persons, representatives, and successors and assigns of the referenced Person, in their capacity in this Chapter 11 Case. For the avoidance of doubt, with respect to each Committee, "Related Parties" shall include the members of such Committee but solely in their capacity as a member of such Committee, each of such member's representatives with respect to the Committee, and their counsel, if any.

**100.** **Released Parties**: The Debtor, the Estate, the Unsecured Creditors' Committee and any of its current and former members (in their capacity as such); the CRO, the Debtor's Independent Director, the Wind Down Debtor, or Wind Down CRO under this Plan, and the preceding's respective Related Parties, and the First Fed Released Parties. For the avoidance of doubt, Released Parties shall not include any Excluded Party.

**101.** **Releasing Creditors**: Unsecured creditors of the Debtor who opt-in to mutual releases with the First Fed Parties and related Released Parties pursuant to Article XIII.B and contribute their Contributed Claims

**102.** **Releasing Parties**: On the one hand, the Debtor, each Additional Collateral Grantor (as defined in in the First Fed Settlement Agreement), any liquidation trustee, Wind Down Debtor, and Wind Down CRO under this Plan, any other entity now or hereafter owned or controlled by the Debtor or a liquidation trustee, Wind Down Debtor, or Wind Down CRO under this Plan, the Committee, and any successors of such parties, and on the other hand, the First Fed Parties and any successors of such parties.

**103.** **Remaining Professional Fee Escrow Amounts**: Any remaining funds held in the Professional Fee Escrow Account after the payment of all Professional Fee Claims Allowed by the Bankruptcy Court pursuant to one or more Final Orders of the Bankruptcy Court.

**104.** **Retained Causes of Action**: The (1) Real Property Causes of Action and (2) the First Fed Adversary Proceeding.

**105.** **Sale Event**: The closing of a sale of Real Property following the Effective Date.

**106.** **Sales Proceeds**: All proceeds of the sale of the Property after payment of Allowed Claims on the Effective Date pursuant to the terms of the Plan.

**107.** **Schedules:** The schedules of assets, liabilities and executory contracts filed on behalf of the Debtor pursuant to § 521 of the Bankruptcy Code, and in accordance with the Bankruptcy Rules, as each has been, or may be, amended and supplemented from time to time.

**108.** **Secured Claim**: A Claim that is secured by a valid and unavoidable lien against property in which an Estate has an interest or that is subject to setoff under Bankruptcy Code § 553. A Claim is a Secured Claim only to the extent of the value of the claimholder's interest in the collateral securing the Claim or to the extent of the amount subject to setoff, whichever is applicable, and as determined under Bankruptcy Code § 506(a).

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

**109.** **Security**: Any security as defined in section 101(49) of the Bankruptcy Code.

**110.** **SOFA:** The Statement of Financial Affairs (Official Form 207), as amended, the Debtor filed in the Chapter 11 Case on October 18, 2024, assigned ECF No. 198.

**111.** **Subordinated Claim:** Collectively, any Claim that is subordinated to General Unsecured Claims and the Class 6 Claim, pursuant to Bankruptcy Code section 510, a Final Order, or by consent of the Holder of such Claim.

**112.** **Third-Party Lessee**: Lessee who is neither one of the OpCo Entities nor related to or an affiliate of a OpCo Entity.

**113.** **Unclassified Claim**: A Claim that is not designated in a Class pursuant to § 1123(a)(1) of the Code, including Administrative Expense Claims and Priority Tax Claims.

**114.** **Unliquidated Claim**: A Claim that is Scheduled as unliquidated or that was filed in an unliquidated amount.

**115.** **Unsecured General Claim**: A Claim that is held by a Creditor who incurred an obligation directly from the Debtor (a) based upon (i) a proof of claim executed and filed in accordance with Bankruptcy Rule 3003(c) prior to the Claims Bar Date, or (ii) the listing of the Claim in the Debtor's schedules of liabilities as other than disputed, contingent or unliquidated, and (b) not a Secured Claim or an Unclassified Claim.

**116.** **Water Station Owner:** "Water Station Owner" shall mean any person or entity other than an insider or entity controlled by an insider (as "insider" is defined under the Bankruptcy Code) that holds a claim against the Debtor in the Chapter 11 Case, which claim asserts a claim based on or related to (i) an investment in any Debtor or any affiliates of the Debtor (including, but not limited to, the OpCo Debtors), (ii) an investment in an asset sold or purportedly sold by the Debtor, or any affiliates of the Debtor (including, but not limited to, the OpCo Debtors) (iii) a franchise agreement with the Debtor, or any affiliates of the Debtor (including, but not limited to, the OpCo Debtors) signed prior to the Petition Date (collectively, "Water Station Owners"), which Water Station Owners are set forth on Schedule 2.b to the Settlement Agreement, Plan Support Agreement and Release among Ideal, First Fed Bank, the OpCo Debtors and the Committee.

**117.** **Wind Down CRO:** A Person selected by the Debtor and reasonably acceptable to the Committee that is appointed as the chief restructuring officer of the Wind Down Debtor to liquidate, complete, and/or sell Real Properties. The identity of the Wind Down CRO will be set forth prior to Confirmation in a Plan Supplement.

**118.** **Wind Down Debtor:** The Ideal Debtor on and after the Effective Date. The Wind Down Debtor shall effectuate the wind down of such Debtor's Estate following the Effective Date, shall hold, manage, and sell the Real Property in accordance with the provisions of the Plan, and make distributions and transfers pursuant to the terms of the Plan.

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 99101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

**119.** **Wind Down Debtor Assets:** Collectively, (a) the Real Property (b) the Retained Causes of Action; (c) all other Estate Assets, including Available Cash as of the Effective Date and Available Cash that is possessed by or turned over to the Wind Down Debtor after the Effective Date; and (d) other non-real-estate-related assets or that may be transferred or otherwise provided, directly or indirectly, to or for the benefit of the Debtor after the Petition Date but before the Effective Date.

**120.** **Wind Down Oversight Committee:** An oversight committee of three (3) members appointed by the Debtor pursuant to Article VIII of the Plan to oversee the Wind Down Debtor's activities in accordance with the Plan. The identities of the Wind Down Oversight Committee shall be the trustees of the OpCo Liquidating Trust and will be set forth in the Plan Supplement prior to the hearing on confirmation of the Plan.

**121.** **Wind Down Debtor Expenses:** Any and all reasonable fees, costs, and expenses incurred by the Wind Down Debtor not inconsistent with the Plan, including, without limitation, (i) the maintenance or disposition of the Real Properties, (ii) the Wind Down Debtor's fees, indemnity reserves, attorneys' fees, fees of professionals, and other Persons retained by the Wind Down CRO, (iii) personnel-related expenses, and (iv) any taxes imposed on the Wind Down Debtor or in respect of the Wind Down Debtor's Assets.

**122.** **Wind Down Amount:** The amount of cash sufficient to satisfy the Wind Down Budget, including for any costs associated with the sale of the Real Properties.

**123.** **Wind Down Budget:** budget for the Wind Down Debtor which will reflect the amount necessary to effectuate the Wind Down, which budget may, after the Effective Date, be amended, modified, or supplemented from time to time by the Wind Down CRO in their reasonable discretion; *provided, that* such budget and any amendment, modifications, or supplements thereto shall be subject to the consent of the Oversight Committee.

**124.** **Wind Down Indemnified Parties**: The Wind Down CRO and any employees retained by the Wind Down CRO after the Effective Date.

**125.** **Wind Down Real Property Sale**: The sale of a Real Property by the Wind Down Debtor.

### B. Rules of Interpretation

The rules of construction set forth in § 102 of the Bankruptcy Code shall apply to the Plan. For purposes of the Plan and unless otherwise specified herein, (i) each term, whether stated in the singular or plural, shall include, in the appropriate context, both the singular and the plural; (ii) each pronoun stated in the masculine, feminine or neuter gender shall include, in the appropriate context, the masculine, feminine, and the neuter gender; (iii) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (iv) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" (v) all references to articles or Articles are references to the Articles hereof; (vi) all captions and headings are inserted for convenience of reference only and are not intended to be a part of, or to

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

affect the interpretation of, the Plan; (vii) any reference to a Person as a Holder of a Claim or Interest includes that Person's successors and assigns; (viii) any reference to an existing document, schedule, or exhibit, whether or not filed, having been filed, or to be filed, shall mean that document, schedule or exhibit, as it may thereafter be amended, restated, modified, or supplemented; (ix) any reference to an event occurring on a specified date, including on the Effective Date, shall mean that the event will occur on that date or as soon thereafter as reasonably practicable; (x) any reference to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions except as specifically provided herein; (xi) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time and as applicable to the Chapter 11 Case; and (xii) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules.

## ARTICLE III.
## UNCLASSIFIED CLAIMS

### A. Administrative Expense Claims

Administrative Expense Claims incurred in the ordinary course of the Debtor's business following the Petition Date shall be paid in the ordinary course of business in accordance with the terms and conditions of the particular agreements governing such obligations (as such terms were modified by any orders approving such agreements), or on such other terms as the Holder of such Claim and the Debtor (prior to the Effective Date) or the Wind Down Debtor (from the Effective Date forward) shall agree to in writing. All other Administrative Expense Claims, including Claims of Professional Persons, shall be paid on the later of the Effective Date or the date each such Claim becomes an Allowed Claim or on such other terms as the Holder of such Claim and the Debtor (prior to the Effective Date) or the Wind Down Debtor (from the Effective Date forward) shall agree to in writing. Claims arising under 28 U.S.C. § 1930 shall be paid as required by that statute.

Except to the extent that a Holder of an Allowed Expense Administrative Claim and Debtor or the Wind Down Debtor, as applicable, agree to less favorable treatment with respect to such Allowed Administrative Claim, to the extent an Allowed Administrative Expense Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Case, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash (a) on the Effective Date or as soon as reasonably practicable thereafter or, if not then due, when such Allowed Administrative Expense Claim becomes due or as soon as reasonably practicable thereafter; (b) if such Administrative Expense Claim is Allowed after the Effective Date, on the date such Administrative Expense Claim is Allowed or as soon as reasonably practicable thereafter or, if not then due, when such Allowed Administrative Expense Claim becomes due or as soon as reasonably practicable

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

thereafter; (c) at such time and upon such terms as may be agreed upon by such Holder and Debtor, or the Wind Down Debtor, as applicable; or (d) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Administrative expense requests asserting Administrative Expense Claims excluding (a) Claims of Professional Persons and (b) claims arising in the ordinary course of business, must be filed no later than 30 days after the notice of the Effective Date is filed with the Bankruptcy Court or such later date as may be established by order of the Bankruptcy Court.

Except as otherwise ordered by the Court, holders of Administrative Expense Claims that are required to, but do not, file and serve a request for payment of such Administrative Claims by the Administrative Expense Claims Bar Date, shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against Debtor or its property, and such Administrative Expense Claims shall be deemed released against Debtor, its Estate, and the Wind Down Debtor as of the Effective Date.

**B. Professional Compensation**

*1. Final Fee Applications*

All Final Fee Applications for compensation or reimbursement of Professional Persons retained in these Chapter 11 Case for services performed and expenses incurred prior to the Effective Date shall be filed and served on: (a) the Debtor or the Wind Down Debtor, as applicable (b) counsel for the Committee (c) the United States Trustee; and (d) such other Persons who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, by no later than sixty (60) days after the Effective Date, unless otherwise agreed by the Debtor or the Wind Down Debtor, as applicable.

Objections to any Final Fee Applications must be filed with the Bankruptcy Court and served on the Debtor or the Wind Down Debtor and the applicable Professional Person no later than fourteen (14) days after service of such Final Fee Application, unless otherwise ordered by the Bankruptcy Court. After Notice and Hearing in accordance with the procedures established by the Bankruptcy Code and any prior orders of the Bankruptcy Court in the Chapter 11 Case, the Allowed amounts of such Claims shall be determined by the Bankruptcy Court and, once approved by the Bankruptcy Court, shall be promptly paid in Cash from the Professional Fee Escrow Account up to their full Allowed amount.

If the Professional Fee Escrow Account is insufficient to fund the full Allowed amounts of Professional Fee Claims, remaining unpaid Allowed Professional Fee Claims shall be promptly paid by the Wind Down Debtor, without any further action or order of the Bankruptcy Court. Obligations to pay Allowed Professional Fee Claims shall not be limited or deemed limited to funds held in the Professional Fee Escrow Account.

**DBS | LAW**
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

2. *Professional Fee Escrow Account*

On the Effective Date, the Debtor shall establish and fund the Professional Fee Escrow Account with Cash equal to the "Professional Fee Reserve Amount" described below. The Professional Fee Escrow Account shall be maintained in trust solely for Professionals Persons. Such funds shall not be considered property of the Estate of the Debtor or of the Wind Down Debtor. The amount of Allowed Professional Fee Claims shall be paid in Cash from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed. After all such Allowed Professional Fee Claims have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be remitted to the Wind Down Debtor without any further action or order of the Bankruptcy Court, at which time it shall become property of the Wind Down Debtor.

No later than five (5) business days prior to the Effective Date, the Debtor shall request from Professional Persons estimates of their unpaid Professional Fee Claims before and as of the Effective Date, and such Professional Persons shall deliver such estimate to the Debtor in writing via email two (2) business days prior to the Effective Date; provided, however, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional Person's Final Fee Application. If a Professional Person does not timely provide an estimate, the Debtor may estimate the unpaid and unbilled fees and expenses of such Professional Person for the purpose of funding the Professional Fee Escrow Account. The totals of the estimates by such Professional Persons and any estimates made by Debtor in accordance with this paragraph shall total the "Professional Fee Reserve Amount".

3. *Post Effective Date Fees and Expenses (Wind Down Debtor)*

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Wind Down Debtor shall, in the ordinary course of business and without any further notice or application to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable, actual, and documented legal, professional, or other fees and expenses related to implementation of the Plan and consummation incurred on or after the Effective Date by the Professional Persons (including any fees related to the preparation of Professional Person's Fee Application). Upon the Effective Date, any requirement that Professional Persons comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Wind Down Debtor may employ and pay any Professional Persons for fees and expenses incurred after the Effective Date in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**C. Priority Tax Claims**

Any Allowed Priority Tax Claims shall be paid, at the Wind Down Debtor's option, as follows: (a) at the closing of a sale of Real Property from the proceeds of sale; (b) Cash equal to the unpaid portion of such Allowed Priority Tax Claim on the later of the Effective Date and thirty (30) calendar days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; (c) in regular installment payments in Cash over a period not exceeding five (5) years after the Petition Date, plus interest on the unpaid portion thereof at the rate determined under applicable nonbankruptcy law as of the calendar month in which the

DBS|LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

Effective Date occurs (provided that such election shall be without prejudice to the right to prepay any such Allowed Priority Tax Claim in full or in part without penalty); or (d) such other treatment as to which the Holder of an Allowed Priority Tax Claim and the Wind Down Debtor shall have agreed upon in writing.

**D.      Statutory Fees**

All fees payable pursuant to 28 U.S.C. § 1930 shall be paid by the Debtor or the Wind Down Debtor (including the submission of all applicable reporting requirements) on or before the Effective Date. Notwithstanding anything to the contrary in the Plan, the U.S. Trustee shall not be required to file any proofs of claim with respect to quarterly fees payable pursuant to 28 U.S.C. § 1930.

**ARTICLE IV.**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

All Claims, as defined in § 101(5) of the Bankruptcy Code, against the Debtor are classified as set forth herein, except for Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims. A Claim is in a particular Class only to the extent it qualifies within the definition of such Class and is in a different Class to the extent it qualifies within the definition of such different Class.

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Acquisition Secured Claims | Impaired | Entitled to Vote |
| 2 | Other Secured Claims | Impaired | Entitled to Vote |
| 3 | First Fed Claim | Impaired | Entitled to Vote |
| 4 | Internal Revenue Service Claim | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | OpCo Claims | Impaired | Entitled to Vote |
| 7 | Section 510 Subordinated Claims | Impaired | Not Entitled to Vote (Presumed to Reject) |
| 8 | Interests | Impaired | Not Entitled to Vote (Presumed to Reject) |

//

//

//

//

//

SECOND AMENDED PLAN OF LIQUIDATION - 17

**DBS | LAW**
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

## ARTICLE V.
## PROVISIONS FOR SATISFYING CLAIMS AND SPECIFYING TREATMENT OF EACH CLASS UNDER THE PLAN

The treatment of all Allowed Claims and Allowed Interests shall be as follows:

A. **Classified Claims and Interests.**

   **Class 1**: Acquisition Secured Claims

   a. Classification. Class 1 consists of all Allowed Acquisition Secured Claims. Class 1 consists of Acquisition Secured Claims asserted by (i) Cadence Bank (2709 Electronic Lane; Dallas, TX 75220); (ii) Cadence Bank (1924 North Ave W.; Missoula, MT 59801); (iii) Cadence Bank (586 West 9320 South; Sandy, UT); (iv) Jo A. Duke Properties, Inc. (343 Johnny Clark, Road; Longview, TX 75605); (v) Avatar REIT LLC (730 Middle Tenn Blvd; Murfreesboro, TN 37129); (vi) First Security Bank of Nevada (7924 W Arby Ave; Las Vegas, NV 89113).

   b. Treatment. The Liens of the Holders of Allowed Class 1 Claims will continue to attach to their respective Collateral and proceeds from such Collateral after the Effective Date. Beginning on the Confirmation Date, interest shall accrue on the Class 1 Claims at either (1) the prepetition non-default rate of interest or (2) a rate that is 2% lower than the rate of interest accruing on the Class 1 Claim, whichever is lower. Notwithstanding the foregoing, the Wind Down CRO or the Liquidation Trustee may elect to surrender and return the Collateral to the Class 1 Claim Holder on or after the Effective Date in full and final satisfaction, compromise, settlement, release, and discharge of its Class 1 Claim.

   c. Voting. Class 1 is Impaired under the Plan. Holders of Class 1 Claims are entitled to vote to accept or reject the Plan.

   **Class 2**: Other Secured Claims.

   a. Classification. Class 2 consists of all Allowed Other Secured Claims.

   b. Treatment. The Liens of the Holders of Allowed Class 2 Claims will continue to attach to their respective Collateral and proceeds from such Collateral after the Effective Date, subject to Avoidance Actions, Causes of Action, and objections to Claims that have been reserved under the Plan. Beginning on the Confirmation date, interest shall accrue on the Class 2 Claims at the prepetition non-default rate of interest for all Class 2 Claims that have been Allowed as of the Confirmation date. No interest shall be paid on Contingent Class 2 Claims, Disputed Class 2 Claims, or Unliquidated Class 2 Claims that later become Allowed Claims.

   If Collateral securing a Class 2 Claim is sold during the pendency of an adversary proceeding or contested matter against an Other Secured Claim Holder or before the

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE CZ | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

Other Secured Claims are otherwise adjudicated, settled, Allowed or Disallowed, the Wind Down Debtor shall reserve sufficient proceeds from such sales (to the extent sufficient proceeds are generated) to satisfy the asserted Class 2 Claim, to be held in a Disputed and Contingent Claim Reserve. To the extent any portion of an Other Secured Claims is Allowed but determined not to be a Secured Claim, such portion shall be classified and afforded the treatment of Class 5 General Unsecured Claims to the extent so Allowed.

Notwithstanding the foregoing, the Wind Down CRO or the Liquidation Trustee may elect to surrender and return the Collateral to the Class 2 Claim Holder on or after the Effective Date in full and final satisfaction, compromise, settlement, release, and discharge of its Class 2 Claim.

c. <u>Voting</u>. Class 2 is Impaired under the Plan. Holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

**Class 3: First Fed Claim.**

a. <u>Classification</u>. Class 3 consists of the First Fed Claim.

b. <u>Treatment</u>. The Holder of the First Fed Claim shall not receive any distribution on account of such Claim, and the Liens asserted thereunder shall be released in accordance with the terms of the First Fed Settlement Agreement as of the Effective Date and will be of no further force or effect. The Class 3 Claim Holder shall be a Released Party pursuant to Article XIII of the Plan and the First Fed Settlement.

c. <u>Voting</u>. Class 3 is Impaired under the Plan. The Class 3 Claim Holder is entitled to vote on the Plan.

**Class 4: Internal Revenue Service Claim.**

a. <u>Classification</u>. Class 4 consists of the Claim of the Internal Revenue Service (POC 1).

b. <u>Treatment</u>. The Holder of the Allowed Class 4 Claim shall receive, on or as soon as practicable after the Effective Date, payment on account of its Claim as Net Distributable Proceeds become available for distribution.

c. <u>Voting</u>. Class 4 is Impaired under the Plan. The Class 4 Claim Holder is entitled to vote to accept or reject the Plan.

**Class 5: General Unsecured Claims**

a. <u>Classification</u>: Class 5 consists of the Allowed General Unsecured Claims.

b. <u>Treatment</u>: Holders of Class 5 Claims shall not receive any direct distribution on account of their Claims, but will be entitled to distributions on account of their Claims from the



DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

OpCo Liquidating Trust, into which a distribution will be made by the Debtor for the benefit of Class 5 and Class 6 Claim Holders in accordance with the Plan.

c. <u>Voting</u>: Class 5 is Impaired under the Plan and entitled to vote on the Plan. Class 5 Ballots will provide an opportunity for Holders of Class 5 Claims to opt-in to the First Fed Settlement. Holders of Class 5 Claims who submit a Ballot voting to opt-in to the First Fed Settlement and contribute their Contributed Claims shall be a Releasing Creditor. Upon the Effective Date, without further action or order of the Bankruptcy Court, each Releasing Creditor shall be deemed to have contributed their Contributed Claims to the Debtor and the OpCo Liquidating Trust and shall be entitled to the benefits of the First Fed mutual release as defined in the First Fed Settlement Agreement.

**<u>Class 6</u>: OpCo Claims**

a. <u>Classification</u>. Class 6 consists of OpCo Claims.

b. <u>Treatment</u>. The OpCo Estates, as Holders of the Class 6 Claims, shall receive the following:

    i. On the Effective Date, the OpCo Liquidating Trust shall be assigned

        1. Contributed Claims;

        2. All OpCo Assigned Causes of Action;

        3. Net Distributable Proceeds over and above the Wind Down Debtor's need to fund the Wind Down Budget.

    ii. On the OpCo Final Distribution Date, the OpCo Liquidating Trust shall receive:

        1. All remaining or undistributed Net Distributable Proceeds;

        2. All Amounts held in a Disputed and Contingent Claim Reserve, subject to any Class 2 Claim;

        3. All unsold Real Property, subject to existing liens, Claims, or encumbrances, or Real Property that is pending sale, the resulting Net Distributable Proceeds (as soon as practicable after the closing of the Real Property sale).

        4. All pending or unresolved Retained Causes of Action that have not otherwise been assigned

The OpCo Liquidating Trust will be the representative of the Estate pursuant to Bankruptcy Code section 1123(b)(3) regarding the OpCo Assigned Causes of Action and Retained Causes of Action as specified herein. The OpCo Liquidating Trust will have the exclusive authority to institute, commence, file, pursue, prosecute, enforce, abandon,

**DBS | LAW**
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

settle, compromise, release, waive, dismiss, or withdraw the OpCo Assigned Causes of Action and Retained Causes of Action.

    c. <u>Voting</u>. Class 6 is Impaired under the Plan. Class 6 is entitled to vote to accept or reject the Plan.

**Class 7: Section 510 Subordinated Claims**

        d. <u>Classification</u>. Class 7 consists of all Section 510 Subordinated Claims.

        e. <u>Treatment</u>. All Allowed Section 510 Claims against any applicable Debtor shall be canceled, released, discharged, subordinated, and extinguished and will be of no further force or effect, and Holders of Section 510 Claims shall not receive or retain any distribution, property, or other value on account of such Section 510 Claims under the Plan.

        f. <u>Voting</u>. Class 7 is impaired under the Plan. Holders of Class 7 Claims are conclusively deemed to reject the Plan, and therefore, are not entitled to vote on the Plan.

**Class 8: Interests.**

    a. <u>Classification</u>. Class 8 consists of all Interests in the Debtor.

    b. <u>Treatment</u>. Interests in the Debtor shall not be entitled to, and shall not, receive or retain any property or interest in property under the Plan on account of such Interest. As of the Effective Date, all Interest in the Debtor shall be deemed void, cancelled, and of no further force and effect.

    c. <u>Voting</u>. Class 8 is impaired under the Plan. Holders of Class 8 Claims are conclusively deemed to reject the Plan, and therefore, are not entitled to vote on the Plan.

## ARTICLE VI.
## COMPREHENSIVE SETTLEMENT OF CLAIMS AND CONTROVERSIES

Pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), and 1123(b)(6), as well as Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all claims and controversies relating to the rights that a Holder of a Claim or Interest may have against the Debtor with respect to any Claim or Interest, or any Distribution on account thereof, as well as of all Causes of Action against the Debtor. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are (i) in the best interest of the Debtor, its Estate, and its respective property and stakeholders; and (ii) fair, equitable, and reasonable. This comprehensive compromise and settlement is a critical component of the Plan and is designed to provide a

**DBS│LAW**
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

resolution of myriad disputed Claims, Liens, and Causes of Action that otherwise could take years to resolve, which would delay and undoubtedly reduce the Distributions that ultimately would be available for all Holders of Claims.

## ARTICLE VII.
## ACCEPTANCE OR REJECTION OF THE PLAN

### A. Impaired Claims Entitled to Vote

The Debtor shall only solicit the votes of Holders of Allowed Claims in Class 1 (Acquisition Claims); Class 2 (Other Secured Claims); Class 3 (First Fed Claim); Class 4 (Internal Revenue Service Claim); Class 5 (General Unsecured Claims); and Class 6 (OpCo Claims).

### B. Acceptance by an Impaired Class

Pursuant to Bankruptcy Code section 1126(c), except as provided in Bankruptcy Code section 1126(e), acceptance of the Plan by Holders of Claims in any Class eligible to vote on it occurs when the Plan receives approval from Holders representing at least two-thirds ($\frac{2}{3}$) in dollar amount and over one-half ($\frac{1}{2}$) in number of the Allowed Claims in that Class who have duly voted to accept or reject the Plan within the stipulated timeframe.

### C. Certain Impaired Classes Deemed to Reject the Plan

Holders of any Claims in Class 7 (Subordinated Claims) and Class 8 (Interests) are not entitled to receive or retain any property or receive any distribution under the Plan. Under Bankruptcy Code section 1126(g), such Holders of Class 7 and Class 8 Claims are deemed to have rejected the Plan, and, therefore, the votes of such Holders shall not be solicited.

### D. Modification of Votes Already Cast

After the Voting Deadline, Holder of Claims eligible to vote on the Plan cannot modify their cast votes or any related elections without obtaining written consent from the Debtor. Such consent is subject to the reasonable discretion of the Debtor.

**E.     Confirmation Pursuant to Bankruptcy Code Section 1129(b).** Because at least one Impaired Class is deemed to have rejected the Plan, the Debtor will, and hereby requests confirmation of the Plan under Bankruptcy Code section 1129(b). The Debtor reserves the right to alter, amend, modify, revoke, or withdraw the Plan (including any schedule or exhibit) including to amend or modify.

**F.     Vacant Classes Eliminated**

Any Class that does not contain a Holder of an Allowed Claim, or a Holder of a Claim that is temporarily allowed under Bankruptcy Rule 3018, measured as of the date on which the Confirmation Hearing begins, shall be deemed deleted from the Plan for the purpose of determining whether the Plan was accepted by that Class pursuant to Bankruptcy Code section 1129(a)(8).

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

## ARTICLE VIII.
## MEANS OF IMPLEMENTATION OF THE PLAN

### A.    Overview

This Plan provides for the disposition of substantially all the Estate Assets and the Distribution of the net proceeds thereof to Holders of Allowed Claims, consistent with the priority provisions of the Bankruptcy Code, and the assignment of all the Debtor's Causes of Action. Debtor will fund the Plan obligations and the ongoing expenses and liabilities from Cash on hand as of the Effective Date and Cash available to Debtor from and after the Effective Date from, among other things, the liquidation of the Real Property and Wind Down Debtor Assets by the Wind Down Debtor.

### B.  Settlement of First Fed Litigation

As part of the general settlement described in Article VIII.B, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the mutual compromises and releases described in the First Fed Settlement Motion, the Plan shall effectuate the First Fed Settlement as set forth in the Order Approving the First Fed Settlement.

### C. The Assignment of Contributed Claims and Causes of Action

On the Effective Date, the Debtor shall assign the OpCo Assigned Causes of Action to the OpCo Liquidating Trust. The failure to specifically identify in the Disclosure Statement or the Plan any potential or existing Avoidance Actions or Causes of Action as a Post-Effective Date Debtor's Cause of Action is not intended to and shall not limit the rights of the OpCo Entities to pursue any such Contributed Claims or Causes of Action.

### D. Post-Effective Date Purpose and Governance of the Wind Down Debtor

The Wind Down Debtor shall (1) hold, manage, and sell the Real Property and any other Estate Assets consistent with the Plan; (2) pursue or liquidate the Wind Down Debtor Assets, and (3) make Distributions on account of Allowed Claims in accordance with the Plan.

On and after the entry of the Plan Confirmation Order, the initial Wind Down CRO shall become and serve as the chief restructuring officer for the Wind Down Debtor. The compensation for the Wind Down CRO shall be set forth in the Plan Supplement. The entry of the Confirmation Order shall constitute authorization for the Debtor and the Wind Down CRO, as applicable, to take or cause to be taken all actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation.

### E.  Vesting of Assets in the Wind Down Debtor

On the Effective Date, the Wind Down Debtor will be automatically vested with all of the Debtor's and the Estate's respective rights, title, and interest in and to Wind Down Debtor

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

Assets. Except as specifically provided in the Plan or the Confirmation Order, the Wind Down Debtor Assets shall automatically vest in the Wind Down Debtor free and clear of all Claims, Liens, or interests, and such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax.

**F. Liquidation of Real Properties**

The Wind Down CRO, with the oversight of and subject to the prior approval of the Wind Down Oversight Committee, will be responsible for preservation and disposition of the Real Properties, unless and until disbursed and/or conveyed to Class 5 and Class 6 via the OpCo Liquidating Trust in accordance with the Plan. Except to the extent necessary to give effect to the treatment of any Holder of an Allowed Acquisition Secured Claim or Allowed Other Secured Claim in Classes 1 and 2 of the Plan, respectively, no pre-petition Claims, Liens, rights and interests shall be asserted against, attach, or otherwise impact the post-Effective Date sale of Real Property. All sales of real property contemplated by the Plan shall be free and clear of all Liens, claims, encumbrances, and/or interests of any kind pursuant to Bankruptcy Code Sections 1123(a)(5)(D) and 1141(c), with the proceeds of such sales being paid pursuant to the terms of the Plan.

The Wind Down CRO shall distribute proceeds from the sale of the Real Property pursuant to the Plan as follows:

*1.    Sales of Real Property – Allowed Class 1 Claims*

After payment of all costs of sale of Real Property subject to Class 1 Claims only, and the payment of Allowed Class 1 Claims, the Wind Down CRO shall (1) fund amounts necessary to fund the payment of the Professional Fee Claims, (2) pay Allowed Administrative Expense Claims, except as otherwise agreed by the Holders of such claims, (3) pay amounts as applicable, for the payment of Priority Claims and Class 4 Claims (4) reserve any amounts as applicable to effectuate the Wind Down Debtor's Budget; and (5) retain any amounts remaining for distribution to OpCo Liquidating Trust.

*2.    Sales of Real Property – Class 2 Claims*

After payment of all costs of sale of Real Property subject to Class 2 Claims, the Wind Down CRO shall (1) pay Allowed Class 2 Claims; (2) reserve, in a Disputed and Contingent Reserve, the larger of (a) the sale proceeds or (b) an amount equal to 120% of a Disputed Class 2 Claim, pending resolution of the Disputed Class 2 Claim; (3) fund amounts necessary to fund the payment of the Professional Fee Claims; (4) pay Allowed Administrative Expense Claims, (5) pay Allowed Priority Claims, and Allowed IRS Claims; (5) reserve any amounts as applicable to effectuate the Wind Down Debtor's Budget; and (6) retain any amounts remaining for distribution to the OpCo Liquidating Trust.

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

### G. Authority to Act on Behalf of Wind Down Debtor

Subject to the supervision and prior approval of the Wind Down Oversight Committee, the Wind Down CRO shall have the authority and right on behalf of the Wind Down Debtor and without the need for Bankruptcy Court approval (in each case, unless otherwise provided in the Plan) to carry out and implement all applicable provisions of the Plan, including to:

(a) retain, compensate, and employ professionals and other Persons to represent the Wind Down Debtor with respect to and in connection with their rights and responsibilities;

(b) review, reconcile, compromise, settle, or object to Claims and resolve such objections as set forth in the Plan, except to any assigned OpCo Assigned Causes of Action after the OpCo Distribution Date;

(c) calculate and make Distributions and calculate and establish reserves under and in accordance with the Plan;

(d) maintain, conserve, pursue, litigate, collect, settle, and protect the Wind Down Debtor Assets (subject to the limitations described herein), including any and all Causes of Action not transferred or assigned pursuant to the Plan;

(e) establish, maintain, and administer documents and accounts of the Wind Down Debtor;

(f) seek and obtain the requisite government approvals and permits necessary to operate the Wind Down Debtor or the Real Properties;

(g) maintain, administer, operate, conserve, supervise, collect, settle, and protect Real Property;

(h) sell, liquidate, transfer, assign, distribute, abandon, or otherwise dispose of Real Properties, or any part thereof or interest therein, upon such terms as are first approved by the Wind Down Debtor Oversight Committee and the Wind Down CRO determines to be necessary, appropriate, or desirable, including the consummation of any sale transaction or disposition for any Real Property as to which an Order was entered before the Effective Date;

(i) negotiate, incur, and pay the Wind Down Debtor's expenses in accordance with the Wind Down Debtor's Budget;

(j) comply with the Plan, exercise the Wind Down CRO's rights, and perform the Wind Down CRO's obligations;

(k) take such actions as are necessary or appropriate to wind down and dissolve the Debtor;

DBS|LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

(l) exercise such other powers as approved by the Wind Down Debtor Oversight Committee and deemed by the Wind Down CRO to be necessary and proper to implement the Plan.

## H. Maintenance of Avoidance Actions and Causes of Action

Except as otherwise provided in the Plan or the Confirmation Order with respect to assignment of Contributed Claims or Causes of Action under the Plan, from and after the Effective Date, the Wind Down CRO will retain all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all of the Retained Causes of Action, subject to the treatment of Classes 5 and 6 under the Plan. The Wind Down CRO, as successor in interest to the Debtor and the Estate may, and will have, (subject to the approval of the Oversight Committee), the exclusive right power, and interest on behalf of itself, the Debtor, and the Estate to, enforce, sue on, settle, and compromise, transfer, or assign (or decline to do any of the foregoing) any or all the Retained Causes of Action without notice to or approval from the Bankruptcy Court. In accordance with the Plan, and pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, from and after the Effective Date, the Wind Down CRO may compromise and settle the Retained Causes of Action.

## I. Transfer to OpCo Entities' Liquidating Trust

The OpCo Entities expect to file a substantively consolidated Plan in the OpCo Bankruptcies that proposes a Liquidation Trust as of the effective date of the proposed OpCo Plan. The Wind Down CRO shall assign or transfer the remaining Wind Down Debtor Assets to the OpCo Liquidation Trust pursuant to the terms of the Plan, on the Effective Date or on the OpCo Final Distribution Date, as applicable.

## J. Resignation of Wind Down CRO and Appointment of Successor

The Wind Down CRO may resign by giving not less than thirty (30) calendar days' prior notice thereof served on the Wind Down Oversight Committee. At any time that the initial Wind Down CRO has resigned or is otherwise no longer able to serve as Wind Down CRO, the Wind Down Oversight Committee shall select a replacement Wind Down CRO.

## K. Termination of the Wind Down CRO

Unless terminated for cause by the Wind Down Oversight Committee, the Wind Down CRO's role as Wind Down CRO shall be terminated following (1) the sale or other disposition of all Real Properties, (2) the satisfaction of all Wind Down Debtor's Expenses, (3) distribution on any remaining Allowed Class 1, Class 2, Class 4, Class 5, or Class 6 Claims; (4) the remittance of all remaining Cash or Net Distributable Proceeds to the OpCo Liquidating Trust; and (5) the assignment of all unresolved Retained Causes of Action and OpCo Assigned Causes of Action.

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

### L. Limitation of Liability

The Wind Down CRO shall enjoy all the rights, powers, immunities, and privileges applicable to a Bankruptcy Code chapter 7 trustee with respect to limitations of liability. The Wind Down CRO may, in connection with the performance of its functions, in its sole and absolute discretion, consult with its attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such Persons, regardless of whether such advice or opinions were in writing, except to the extent that any such act or the failure to take any action constitutes willful misconduct, gross negligence, or fraud. Notwithstanding such authority, the Wind Down CRO shall be under no obligation to consult with any such attorneys, accountants, advisors, or agents, except for the Wind Down Oversight Committee, and its determination not to do so shall not result in the imposition of liability on the Wind Down CRO unless such determination is based on willful misconduct, gross negligence, or fraud. Persons dealing with the Wind Down CRO shall look only to the Wind Down Debtor's Assets to satisfy any liability incurred by the Wind Down CRO to such Person in carrying out the terms of the Plan, and the Wind Down CRO shall have no personal obligation to satisfy such liability.

### M.    Insurance

Up to and including their policy expiration date(s), any and all Insurance Policies in effect as of the Effective Date shall remain in full force and effect according to their terms and the coverage obligations of the insurers and third-party administrators under such Insurance Policies shall continue following the Effective Date (including any obligations to pay, defend, and process insured claims). The Wind Down CRO shall be authorized, but not required, to obtain any insurance coverages deemed to be reasonably necessary for itself and its respective agents, including coverage with respect to the liabilities, duties, and obligations of the Wind Down CRO, which insurance coverage may, at the discretion of the Wind Down CRO and subject to the approval of the Wind Down Oversight Committee, be extended for a reasonable period after the termination of the Wind Down Debtor.

### ARTICLE IX
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. Assumption or Rejection of Executory Contracts and Unexpired Leases

The Debtor asserts that it has no executory contracts or unexpired leases within the meaning of Bankruptcy Code section 365. To the extent any such executory contracts and unexpired leases of the Debtor exist, on Effective Date all executory contracts and unexpired leases of the Debtor shall be rejected. The Debtor does not reject any agreement, obligation, security interest, transaction, or similar undertaking that the Debtor believes is not an executory contract or an unexpired lease, but that is later determined by the Bankruptcy Court, upon motion filed by the applicable counterparty, to be an executory contract or unexpired lease that is subject to assumption or rejection under Bankruptcy Code section 365. For the avoidance of doubt, executory contracts and unexpired leases that have been previously assumed or assumed and assigned pursuant to an order of the Bankruptcy Court shall not be affected by the Plan. The

DBS|LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

Confirmation Order will constitute a Bankruptcy Court Order approving the rejection, on the Effective Date, of the executory contracts and unexpired leases to be rejected under the Plan.

If the Debtor determines such an executory contract or unexpired lease exists prior to the Confirmation Hearing, the Debtor reserves the right to assume any executory contract and unexpired lease, and assign any such executory contract or unexpired lease, to the Wind Down Debtor. The Debtor will provide any executory contract or unexpired lease to be assumed in the Plan Supplement.

The Insurance Policies shall not be considered Executory Contracts for purposes of this provision. As discussed in section Article VIII.L above, the Insurance Policies shall remain in full force and effect following the Effective Date.

### B. Rejection Claims Bar Date

Any Rejection Claim or other Claim for damages arising from the rejection under the Plan of an executory contract or unexpired lease must be Filed and served no later than the Rejection Claims Bar Date. Any such Rejection Claims that are not timely Filed and served will be forever disallowed, barred, and unenforceable, and Persons holding such Claims will not receive and be barred from receiving any Distributions on account of such untimely Claims.

## ARTICLE X
## PROVISIONS GOVERNING DISTRIBUTIONS

### A. Timing of Distributions for Allowed Claims

Except as otherwise provided herein or as ordered by the Bankruptcy Court, all Distributions to Holders of Allowed Claims shall be made as soon as practicable after the Effective Date. Distributions made as soon as reasonably practicable after the Effective Date, or such other date set forth herein shall be deemed to have been made on such date.

### B. Interest and Other Amounts Regarding Claims

Except to the extent provided (i) in Bankruptcy Code section 506(b) and Allowed by a Final Order or otherwise agreed, (ii) in the Plan, or (iii) in the Confirmation Order, postpetition interest shall not accrue or be paid on any Claims, and no Holder of an Allowed Claim shall be entitled to interest, penalties, fees, or late charges accruing or chargeable on any Claim from and after the Petition Date.

### C. Distributions by Wind Down CRO as Disbursing Agent

The Wind Down CRO may serve as the disbursing agent under the Plan with respect to Distributions required pursuant to the Plan. The Wind Down CRO shall not be required to give any bond or surety or other security for the performance of any duties as disbursing agent.

**DBS | LAW**
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

**D. Means of Cash Payment**

Cash payments under the Plan shall be made, at the option and in the sole discretion of the Wind Down CRO, by (i) checks drawn on or (ii) wire transfer, electronic funds transfer, or ACH from a domestic bank. Cash payments to foreign Creditors may be made, at the option and in the sole discretion of the Wind Down CRO by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to the Plan in the form of check shall be null and void if not cashed within 90 calendar days of the date of the issuance thereof. Requests for reissuance of any check within 90 calendar days of the date of the issuance thereof shall be made directly to the Wind Down CRO. If the Holder of a Claim fails to cash a check payable to it within the time period set forth herein, such Holder shall be deemed to have forfeited its right to any reserved and future Distributions under the Plan.

**E. Form of Currency of Distributions**

All Distributions under the Plan shall be made in U.S. Dollars. Where a Claim has been denominated in foreign currency on a proof of claim, the Allowed amount of such Claim shall be calculated in U.S. Dollars based upon the currency conversion rate in place as of the Petition Date and in accordance with Bankruptcy Code section 502(b).

**F. Holdback Distributions and Reserves for Certain Claims**

Notwithstanding anything in the Plan to the contrary, no Distributions or other consideration of any kind shall be made on account of any Contingent Claim, Disputed Claim, or Unliquidated Claim unless and until such Claim becomes an Allowed Claim, and then only to the extent that such Claim becomes an Allowed Claim and as provided under the Plan for such Allowed Claim. The calculation of the amount of an Unliquidated, Contingent, or Disputed Claim, for purposes of establishing the Disputed and Contingent Claim Reserve shall be made by (1) the Wind Down CRO as if such Claim was an Allowed Claim; (2) the Bankruptcy Court, upon the request of the Wind Down CRO for an estimate of the likely portion of such a Claim to be Allowed; or (3) an agreement of the Holder of such Claim and the Wind Down CRO as to the amount or number that would constitute a sufficient reserve for such a Claim.

**G. Distributions upon Resolution of Contingent, Disputed, or Unliquidated Claims**

After an objection to a Disputed Claim is resolved or a Contingent Claim or Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, an amount of Cash held in the applicable Disputed and Contingent Claim Reserve corresponding to the amount of any resulting Allowed Claim shall be transferred, to the Holder of the formerly Contingent Claim, Disputed Claim, or Unliquidated Claim. Upon each such resolution of a Claim and such transfer with respect to any resulting Allowed Claim, any remaining Cash in the applicable Disputed Reserve that had been held with respect to such formerly Contingent Claim, Disputed Claim, or Unliquidated Claim prior to its resolution shall be transferred for payment, allocation, or reserve in accordance with the Plan for (a) unpaid amounts for Wind Down Debtor's Expenses or (b) any post-Confirmation reserve requirements of the Wind Down Debtor in connection with

**DBS | LAW**
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

the Plan, any agreements, or any Bankruptcy Court orders. Any remaining Cash shall be considered a Net Distributable Asset.

If a Disputed Class 1 or Class 2 Claim is not resolved, or a Contingent Class 1 or Class 2 Claim or Unliquidated Class 1 or Class 2 Claim has not been determined in whole or in part by a Final Order or by agreement prior to the Wind Down Real Estate Sale, the Disputed Reserve with respect to that Wind Down Debtor Real Estate property shall be assigned to the OpCo Liquidating Trust to be administered and resolved by the OpCo Liquidating Trust.

## H. Defenses and Setoffs

On and after the Effective Date, the Wind Down Debtor shall have all of the Debtor's and the Estate's rights under Bankruptcy Code section 558. Except as otherwise expressly provided in this Plan, nothing under the Plan shall affect the rights and defenses of the Debtor, the Estate, or the Wind Down Debtor in respect of any Claim, including all rights in respect of legal and equitable objections, defenses, challenges, setoffs, or recoupment against such Claims. Accordingly, and except as otherwise expressly provided in this Plan, the Wind Down CRO may, but shall not be required to, set off against any Claim or any Allowed Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtor, the Estate, or the Wind Down Debtor, as applicable, may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim or rights that may exist against such Holder.

## ARTICLE XI
## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

### A. Objections to and Resolutions of Disputed Claims

From and after the Effective Date, the Wind Down CRO, subject to approval from the Oversight Committee, has the sole authority to compromise, resolve, and Allow any Disputed Claim as necessary and without the need to obtain approval from the Bankruptcy Court, and any agreement entered into by the Wind Down CRO with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim. The Wind Down CRO may, subject to the approval of the Oversight Committee, assign the authority to compromise, resolve, and Allow any Disputed Claim to the OpCo Liquidating Trust at any time prior to the OpCo Final Distribution Date.

### B. Claim Objections

All objections to Claims (other than Professional Fee Claims) shall be filed by the Wind Down Debtor on or before the Claim Objection Deadline (or by the OpCo Liquidating Trust, as applicable), which date may be extended by order of the Bankruptcy Court. If a timely objection has not been filed to a proof of claim, or the Schedules have not been amended with respect to a Claim that was Scheduled by the Debtor but was not Scheduled as contingent, unliquidated, or

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

disputed, then the Claim to which the proof of claim or Scheduled Claim relates will be treated as an Allowed Claim.

### C. Estimation of Claims

The Wind Down Debtor may, at any time, move for a Bankruptcy Court order estimating any Contingent Claim, Disputed Claim, or Unliquidated Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction and power to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. The estimated amount of any Claim so determined by the Bankruptcy Court shall constitute the maximum recovery that the Holder thereof may recover after the ultimate liquidation of its Claim, irrespective of the actual amount that is ultimately allowed.

### D. Distributions Following Allowance of Certain Claims

Once a Contingent Claim, a Disputed Claim, or an Unliquidated Claim becomes an Allowed Claim, in whole or in part, including pursuant to the Plan, the Wind Down CRO (of the OpCo Liquidating Trust, as applicable) shall distribute from the Disputed and Contingent Claim Reserve to the Holder thereof the Distributions if any, to which such Holder is then entitled under the Plan. Such Distributions, if any, shall be within (1) 60 calendar days after the date on which the Claim becomes an Allowed Claim or (2) if no Disputed and Contingent Claim Reserve has been created because an applicable Wind Down Real Property Sale has not yet closed, then 60 calendar days after the closing of a Wind Down Real Property Sale. Unless otherwise specifically provided in the Plan or allowed by a Final Order, no interest shall be paid on Contingent Claims, Disputed Claims, or Unliquidated Claims that later become Allowed Claims.

### ARTICLE XII
### CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

#### A. Conditions Precedent to the Effective Date

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article XII.B of the Plan.

(i)     The Bankruptcy Court shall have entered the Confirmation Order (and such order shall be a Final Order) in form and substance acceptable to Debtor.

(ii)    The Confirmation Order shall not be subject to any stay;

(iii)   The Debtor shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents necessary to implement and effectuate the Plan;

(iv)    The Wind Down CRO and the Wind Down Oversight Committee shall be duly appointed, qualified, and acting in that capacity;



(v)     The entry of an order confirming the OpCo Bankruptcy Plan;

(vi)    The Professional Fee Escrow Account shall have been established and funded with the Professional Fee Reserve Amount; and

(vii)   The Debtor shall have effected or delivered all actions and all agreements, instruments, or other documents necessary to implement the terms and provisions of this Plan.

## B. Waiver of Conditions Precedent to the Effective Date

The conditions to the Effective Date may be waived (1) in writing by the Debtor and the Committee, and any affected Professional Persons, in the reasonable discretion of the Debtor and the Committee, at any time without further order of the Bankruptcy Court; or (2) as otherwise set forth in the Plan Supplement.

## C. Effect of Non-Occurrence of Conditions Precedent to the Effective Date

If any of the conditions to the Effective Date is not satisfied or duly waived in accordance with Article XII.A or XII.B of the Plan, upon notification filed by the Debtor with the Bankruptcy Court, (i) the Confirmation Order shall be vacated; (ii) no Distributions shall be made; (iii) the Debtor, the Estate, and all Creditors shall be restored to the *status quo* as of the day immediately preceding the Confirmation Hearing as though the Confirmation Order was not entered; (iv) all of the Debtor's obligations with respect to Claims shall remain unchanged and nothing contained in the Plan shall constitute a waiver or release of any Causes of Action by or against the Debtor, the Estate, or any other Person or prejudice in any manner the rights, claims, or defenses of the Debtor, the Estate, or any other Person.

## D. Notice of Effective Date, Notice of Certain Deadlines

As soon as practicable after the occurrence of the Effective Date, the Wind Down Debtor shall mail or cause to be mailed to all Creditors a notice that informs such Creditors of (i) entry of the Confirmation Order and the resulting confirmation of the Plan; (ii) the occurrence of the Effective Date; (iii) the deadline established under the Plan for the filing of Administrative Claims; and (iv) such other matters as the Wind Down Debtor deems appropriate to effectuate the Plan.

## ARTICLE XIII
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

## A. Debtor's Releases

To the extent not previously released pursuant to the First Fed Settlement Agreement, the Releasing Parties hereby exchange mutual, global releases of any and all claims, demands, causes of action, suits, liabilities, and obligations of every nature and kind, known or unknown, asserted or unasserted, now existing or hereafter arising, that each Releasing Party may hold against the Released Parties, whether arising at law or in equity, in contract or tort, under federal or state law, including, without limitation, (a) the Adversary Claims, (b) the Equitable Subordination

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

Claims, (c) the Lender Liability Claims, (d) other bankruptcy claims and claims assertable by the Debtors under state law, (e) any claims related to, or asserted, or that could have been asserted in the "State Court Litigation" or "Federal Court Litigation" (as such terms are defined and described in the Disclosure Statements filed by Ideal), or in King County Superior Court lead case no. 24-2-12567-1 SEA, and the cases consolidated therein, or in King County Superior Court case no. 25-2-17253-8 SEA, (f) the Claims, (g) any claim against the First Fed Released Parties now or hereafter assigned to, or acquired by, the Debtors, Committee, or any liquidating trustee or administrator under the Plans of Liquidation, or any other Releasing Party, whether by merger, substantive consolidation, sale, contribution, assignment or other transfer, and (h) any claims arising from or relating to (i) the Credit Accommodation and Enhancement Agreements; (ii) the Security Instruments, (iii) the First Fed Loans; (iv) the First Fed Parties' banking, treasury, lending, credit, business, or other relationship with any of the Debtors, Ryan Wear, Additional Collateral Grantors, or any other affiliate or subsidiary of any Debtor or Ryan Wear, or any officer, employee or agent of such entities or persons, (v) any and all payments received by or on behalf of First Fed, and (vi) the Reserve Account; provided, however, such release from the First Fed Parties shall not include (collectively, the "Releasing Party Reserved Claims") (aa) the First Fed Allowed Claim, (bb) First Fed's secured claims based on its retention of collateral pursuant to Section 6 of the First Fed Settlement Agreement, (cc) any claims against any parties other than the Debtors related to the First Fed Third Party Loans, (dd) any claims First Fed may possess against Ryan Wear, Richard Wear, or Jordan Chirico (ee) any claims First Fed may assert related to any non-Debtor loan, (ff) any claims First Fed may assert against non-Debtor parties related to any unrelated loans, treasury and credit products, (gg) any claims of First Fed against any creditor of the Debtors, other than Releasing Creditors (subject to and only to the extent provided above), or party other than the Debtors and/or their bankruptcy estates, and (hh) any claims now or hereafter in litigation with any non-Party for apportionment or allocation of fault to any Releasing Party, including any Debtor, Additional Collateral Grantor, or any affiliate or subsidiary of any Debtor, or any related affirmative defense based on the fault of such Releasing Party, all of which Releasing Party Reserved Claims are expressly reserved by the First Fed Parties. For the avoidance of doubt, the releases described herein shall not include any claims, demands, causes of action, suits, liabilities, or obligations arising out of or relating to any breach of the Settlement Agreement or the Plan. Capitalized terms used but not defined in this Article 14 shall have the meaning ascribed thereto in the First Fed Settlement Agreement.

Entry of the Confirmation Order shall constitute (i) the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in this Article; and (ii) the Bankruptcy Court's findings that such releases are (1) in exchange for good and valuable consideration provided by the Released Parties (including performance of the terms of the Plan), and a good-faith settlement and compromise of the released claims, (2) in the best interests of the Debtor, the Estate, and any Holders of Claims that are Releasing Parties, (3) fair, equitable, and reasonable, (4) given and made after due notice and opportunity for hearing, and (5) a bar to any of the Releasing Parties asserting any released claim against any of the Released Parties. Notwithstanding anything contained herein to the contrary, the foregoing release does not release any Excluded Party.

**B. First Fed Releases**

Upon a Confirmation Order of this Plan becoming a Final Order, for good and valuable consideration, the adequacy of which is hereby confirmed, the Releasing Creditors globally release the First Fed Released Parties from any and all claims, demands, causes of action, suits, liabilities, and obligations of every nature and kind, known or unknown, asserted or unasserted,

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

now existing or hereafter arising, that any Releasing Creditor may hold against any of the First Fed Released Parties, whether arising at law or in equity, in contract or tort, under federal or state law, including, without limitation, (a) the Lender Liability Claims, (b) any bankruptcy claims and claims assertable by the Releasing Creditors under state law, and any claims released by the Debtors that may be assertable by any Releasing Creditor, (c) any claims related to, or asserted, or that could have been asserted in the "State Court Litigation" or "Federal Court Litigation" (as defined and described in the Disclosure Statements filed by Ideal), or in King County Superior Court lead case no. 24-2-12567-1 SEA, and the cases consolidated therein, or in King County Superior Court case no. 25-2-17253-8 SEA, (d) the Claims, (e) any claim against the First Fed Released Parties now or hereafter assigned to, or acquired by, the Debtors, Committee, or any liquidating trustee or administrator under the Plans of Liquidation, or any other Releasing Party, whether by merger, substantive consolidation, sale, assignment, contribution, or other transfer, (f) any claims arising from or relating to (i) the Credit Accommodation and Enhancement Agreements; (ii) the Security Instruments; (iii) the First Fed Loans; (iv) the First Fed Parties' banking, treasury, lending, credit, business, or other relationship with any of the Debtors, Ryan Wear, Additional Collateral Grantors, or any other affiliate or subsidiary of any Debtor or Ryan Wear, or any officer, employee or agent of such entities or persons, (v) any and all payments received by or on behalf of First Fed, and (vi) the Reserve Account. In addition, upon a Confirmation Order of this Plan becoming a Final Order, for good and valuable consideration, the adequacy of which is hereby confirmed, the First Fed Parties globally release the Releasing Creditors from any and all claims, demands, causes of action, suits, liabilities, and obligations of every nature and kind, known or unknown, asserted or unasserted, now existing or hereafter arising, that it may hold against the Releasing Creditors, whether arising at law or in equity, in contract or tort, under federal or state law; provided, however, such release from the First Fed Released Parties shall not include (collectively, the "Releasing Creditor Reserved Claims") (aa) any claims related to a First Fed Third Party Loan or any non-Debtor loan owing by such Releasing Creditor, (bb) any claims related to any unrelated loans, treasury and credit products, (cc) any claims First Fed may possess against Ryan Wear, Richard Wear, Jordan Chirico or any other insider of the Debtors (as such term is defined in the Bankruptcy Code), (dd) any claims now or hereafter in litigation with any non-Party for apportionment or allocation of fault to any Releasing Creditor, or any related affirmative defense based on the fault of such Releasing Creditor, all of which Releasing Creditor Reserved Claims are expressly reserved by the First Fed Parties.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the First Fed Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the First Fed Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including First Fed's contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the claims or Causes of Action released by the First Fed Release; (e) in the best interests of the Debtor and the Estate; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Creditors asserting any claim or Cause of Action released pursuant to the First Fed Release.

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

## C. Exculpation and Limitation of Liability

The Exculpated Parties will neither have nor incur any liability to any entity for any claims or Causes of Action arising on or after the Petition Date and prior to the Effective Date for any act taken or omitted to be taken in connection with, or related to (i) the Chapter 11 Case, (ii) any sales consummated during the Chapter 11 Case (iii) formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the consummation of this Plan, or any other contract, instrument, release or other agreement or document created or entered into in connection with this Plan, including the Disclosure Statement, (iv) any other postpetition act taken or omitted to be taken in connection with or in contemplation of Confirmation of this Plan, or (v) the approval of the Disclosure Statement and Plan or Confirmation or consummation of the Plan, *provided, however*, that the foregoing provisions will have no effect on the liability of any entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted gross negligence, actual fraud, or willful misconduct.

The Exculpated Parties have, and upon Confirmation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and Distributions pursuant to the Plan, and, therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan.

## D. Injunction

Except as otherwise expressly provided in the Plan, and except in connection with the enforcement of the Plan or any documents provided for or contemplated in the Plan, all Persons who have held, hold, or may hold Claims against or Interests in the Debtor or the Estate that (i) have been released pursuant to this Article XIII of this Plan or (ii) are subject to exculpation pursuant to Article XIII of this Plan, are permanently enjoined from and after the Effective Date from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtor, the Estate, its successors and assignees, or any of their assets and property, with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtor, the Estate, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtor, the Estate, or its successors and assignees, or any of their assets and property, with respect to any such Claim or Interest; (d) asserting, directly or indirectly, any setoff, or recoupment of any kind against any obligation due to the Debtor, the Estate, or its successors and assignees, or any of their assets and property, with respect to any such Claim or Interest, unless approved by the Bankruptcy Court; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Without limiting the foregoing, the automatic stay provided under Bankruptcy Code section 362(a) shall remain in effect until the Chapter 11 Case is closed. Nothing contained in this Article X.III shall prohibit the Holder of a filed proof of Claim from litigating its right to seek to have such Claim

**DBS | LAW**
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Claim or Interest of any of the obligations of the Debtor or Wind Down Debtor under the Plan. The Wind Down Debtor shall be entitled, as liquidated damages, to the payment of any fees and costs incurred by the Wind Down Debtor to address any violation of the injunction contained in this Article XIII.

Furthermore, to the extent any Real Property is sold or transferred pursuant to the terms of this Plan by the Wind Down Debtor or the OpCo Liquidating Trust in an arm's length, good faith transaction, all Persons who have held, hold, or may hold Claims against or Interests in the Debtor or the Estate are permanently enjoined from and after the Effective Date from asserting, directly or indirectly, any kind of obligation due by the Debtor or the Estate against such real property, the transferee, any title or escrow company involved in the sale and/or any other professionals involved in assisting the sale or transfer. The distributions set forth in this Plan shall be the sole remedy for any Claims or Interests. To the extent any party seeks to allege such claim against the real property or any third-party recipient of the Real Property involved in the transfer, the Wind Down Debtor and any other entities or individuals against whom claims are alleged shall be entitled, as liquidated damages, to the payment of any fees and costs incurred to remedy the violation of the injunction contained in this Article.

## ARTICLE XIV
## RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

### A. Scope of Retained Jurisdiction and Power

Pursuant to Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court retains jurisdiction and power over all matters arising in, arising under, or related to the Chapter 11 Case and the Plan to the fullest extent permitted by law, including the jurisdiction and the power to do the following:

(i) Except as otherwise Allowed pursuant to the Plan or in the Confirmation Order, Allow, classify, determine, disallow, establish the priority or secured or unsecured status of, estimate, limit, liquidate, or subordinate any Claim, in whole or in part, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any objections to the allowance or priority of Claims;

(ii) Hear and determine all applications for compensation and reimbursement of expenses of Professional Persons under the Plan or under Bankruptcy Code sections 327, 328, 330, 331, 503(b), 1103, and 1129(a)(4);

(iii) Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any required cure or the liquidation or allowance of any Claims arising therefrom;

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

(iv)     Effectuate performance of and payments under the provisions of the Plan and enforce remedies on any default under the Plan;

(v)     Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case, including the Retained Causes of Action;

(vi)     Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created, executed, or contemplated in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

(vii)     Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, or to maintain the integrity of the Plan following consummation;

(viii)   Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(ix)     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(x)     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(xi)     Hear and determine any matters arising in connection with or relating to the Plan, any Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with any of the foregoing documents and orders;

(xii)     Enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings associated with the Plan or otherwise entered in connection with the Chapter 11 Case (whether or not the Chapter 11 Case has been closed);

(xiii)   Except as otherwise limited herein, recover all Estate Assets, wherever located;

(xiv)   Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(xv)     Enter and enforce any order and related agreements for the sale or transfer of property and obligations thereunder pursuant to, inter alia, Bankruptcy Code sections 363, 1123, or 1146(a);

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

(xvi)   Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, the Bankruptcy Code and title 28 of the United States Code;

(xvii)   Enforce all orders previously entered by the Bankruptcy Court;

(xviii)   Resolve any cases, controversies, suits, or disputes related to the Wind Down Debtor or the Debtor;

(xix)   Hear and determine all matters in connection with the Real Properties, including, without limitation, any disputes with respect to the Wind Down Real Property;

(xx)   Enter a final decree closing the Chapter 11 Case of the Debtor.

**B.  Non-Exercise of Bankruptcy Court Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, the provisions of Article XIV shall have no effect on, and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to, such matter.

**ARTICLE XV**
**MISCELLANEOUS**

**A.  Headings**

The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect meanings of the Plan.

**B.  Modifications and Amendments**

In the Debtor's reasonable discretion, the Debtor may alter, amend, or modify the Plan under Bankruptcy Code section 1127(a) at any time at or prior to the conclusion of the Confirmation Hearing. All alterations, amendments, or modifications to the Plan must comply with Bankruptcy Code section 1127. The Debtor shall provide parties in interest with notice of such amendments or modifications as may be required by the Bankruptcy Code, Bankruptcy Rules, or order of the Bankruptcy Court.

A Creditor that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim of such Creditor.  After entry of the Confirmation Order and prior to substantial consummation (as defined in Bankruptcy Code section 1101(2)) of the Plan, the Debtor or the Wind Down Debtor, as applicable, may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

Plan, the Disclosure Statement approved with respect to the Plan, or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under the Plan. Such proceedings must comply with Bankruptcy Code section 1127. To the extent required, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or an order of the Bankruptcy Court.

## C. Severability of Plan Provisions

If, at or before the Confirmation Hearing, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision. That term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated. The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Article XV.C, is valid and enforceable under its terms.

## D. Wind Down Debtor Settlements

In addition to the authority of the Wind Down Debtor with respect to resolving Disputed, Unliquidated, and Contingent Claims as set forth in Article XI, after the Effective Date, the Wind Down Debtor may compromise and settle disputes about the Retained Causes of Action without any further approval by the Bankruptcy Court. Until the Effective Date, the Debtor expressly reserves the right to compromise and settle (subject to the approval of the Bankruptcy Court) Claims against them or any Avoidance Actions and Causes of Action belonging to the Estate.

## E. SEC Claims

Notwithstanding any provision to the contrary, nothing in the Plan, Disclosure Statement, Plan Supplement or Confirmation Order, or the SEC's abstention from voting on the Plan, shall: (i) release, enjoin or discharge any monetary or non-monetary Claim, obligation, right or cause of action (other than a Claim against the Debtor arising between the Petition Date and the Effective Date) of the SEC, acting in its police and regulatory capacity, against any Person or Entity, including, without limitation, any Released Party or any non-debtor Person or Entity, or (ii) prevent, restrict, limit, enjoin or impair the SEC from commencing or continuing any investigation, action or proceeding, in its police and regulatory capacity (other than a Claim against the Debtor arising between the Petition Date and the Effective Date), against any Person or Entity (other than the Debtor), including, without limitation, any Released Party or any non-Debtor Person or Entity, in any non-bankruptcy forum with jurisdiction.

## F. Binding Effect

Upon the Effective Date, Bankruptcy Code section 1141 shall apply with respect to the Plan and the Plan shall be binding on all persons to the fullest extent permitted by Bankruptcy

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

Code section 1141(a). Confirmation of the Plan binds each Holder of a Claim or Interest to all the terms and conditions of the Plan, whether or not such Holder's Claim or Interest is Allowed, whether or not such Holder holds a Claim or Interest that is in a Class that is Impaired under the Plan, and whether or not such Holder has accepted the Plan.

### G. Entire Agreement

Except as otherwise indicated, the Plan and Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan; provided, however, the terms of any Settlement Agreement between the Debtor and First Fed Parties approved by a Final Order of the Bankruptcy Court prior to the Effective Date shall control the settlement terms as between the parties thereto, including the First Fed Released Parties.

### H. Section 1146 Exemption

Pursuant to Bankruptcy Code section 1146, the vesting of the Debtor's assets in the Wind Down Debtor, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge, or other security interest, or the making or assignment of any lease or sublease, or making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### I. Governing Law

Except to the extent the Bankruptcy Code, the Bankruptcy Rules, or other federal laws are applicable, the laws of the State of Washington govern the construction and implementation of the Plan, and all rights and obligations arising under the Plan.

### J. Computation of Time Periods

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### K. Business Days

If the Effective Date or any other date on which transaction may occur under the Plan shall occur on a day that is not a Business Day, any transactions or other actions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

### L. Good Faith

Confirmation of the Plan shall constitute a conclusive determination that: (a) the Plan, and all the transactions and settlements contemplated thereby, have been proposed in good faith and in compliance with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules; and (b) the solicitation of acceptances or rejections of the Plan has been in good faith and in compliance with all applicable provisions of the Bankruptcy Code, and the Bankruptcy Rules,

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737

and, in each case, that the Debtor and all Related Parties have acted in good faith in connection therewith.

**M. Final Decree**

Upon the Wind Down Debtor's determination that (1) the Wind Down Debtor Assets have been liquidated, abandoned, or otherwise administered; (2) all Claims have been Allowed, Disallowed, expunged, or withdrawn; and (3) all unresolved Retained Causes of Action have been assigned, then the Wind Down Debtor shall move for the entry of the Final Decree with respect to such Debtor and Wind Down Debtor. On entry of the Final Decree, the Wind Down Debtor and its respective Related Parties, in each case to the extent not previously discharged by the Bankruptcy Court, shall be deemed discharged and have no further duties or obligations to any Person with respect to such Debtor or Wind Down Debtor.

**N. Plan Controls**

In the event, and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, or any other instrument or agreement contemplated to be executed pursuant to the Plan, the provisions of the Plan shall control and take precedence.

DATED this 14th day of July 2025.

IDEAL PROPERTY INVESTMENTS LLC

By_____
       Joseph P. Fanelli
       Its Chief Restructuring Officer

DBS | LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY
819 VIRGINIA STREET, SUITE C2 | SEATTLE, WA 98101
PHONE: (206) 489.3802 | FAX: (206) 973.8737